**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

**CERTUSVIEW TECHNOLOGIES, LLC,**

             **Plaintiff,**

**v.**                                                                   **Civil No. 2:13cv346**

**S & N LOCATING SERVICES, LLC,**
**and**
**S & N COMMUNICATIONS, INC.,**

             **Defendants.**

## OPINION AND ORDER

This matter is before the Court on a motion to transfer venue filed by defendants S & N Locating Services, LLC, and S & N Communications, Inc. (collectively "Defendants" or "S & N"). Defendants' motion seeks transfer of this patent infringement action to Defendants' home forum of the Middle District of North Carolina. Plaintiff Certusview Technologies, LLC, ("Plaintiff" or "Certusview") opposes such transfer. For the reasons set forth below, the Court **DENIES** Defendants' motion to transfer venue.

### I. Factual and Procedural Background

Plaintiff filed its complaint in the United States District Court for the Eastern District of Virginia on May 29, 2013. After the Court granted Defendants' unopposed motion to extend the time to file pleadings or a motion in response to the Complaint, Defendants filed the instant motion to transfer venue. The parties again filed a motion requesting additional time, and this Court extended the

briefing schedule on the instant motion. Nearly a month after this matter was fully briefed, Plaintiff filed a motion for leave to file a surreply.

Defendants' motion for leave to file a surreply was fully briefed on November 4, 2013. On November 9, 2013, Magistrate Judge Lawrence Leonard issued an order denying Defendants' request to file a surreply. Accordingly, this matter is ripe for review.

## II. Standard for Discretionary Transfer of Venue

Title 28 of the United States Code, Section 1404, establishes that, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Such statute "is intended to place discretion in the district court to adjudicate motions for transfer of venue according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (quoting Van Dusen v. Barrack, 376 U.S. 612, 622 (1964)); see Brock v. Entre Computer Ctrs., Inc., 933 F.2d 1253, 1257 (4th Cir. 1991) ("Decisions whether to transfer a case pursuant to 28 U.S.C. § 1404 are committed to the discretion of the transferring judge"). In a patent infringement action, such motions to transfer venue pursuant to Section 1404(a) are governed by the law of the

regional circuit in which the Court sits. See Winner Int'l Royalty
Corp. v. Wang, 202 F.3d 1340, 1352 (Fed. Cir. 2000).

To determine whether a transfer of venue to another district
is appropriate under § 1404(a), "a district court must make two
inquiries: (1) whether the claims might have been brought in the
transferee forum, and (2) whether the interest of justice and
convenience of the parties and witnesses justify transfer to that
forum." Koh v. Microtek Int'l, Inc., 250 F. Supp. 2d 627, 630 (E.D.
Va. 2003); see 28 U.S.C. § 1404(a); TechnoSteel, LLC v. Beers Constr.
Co., 271 F.3d 151, 160 (4th Cir. 2001) (indicating that a § 1404(a)
transfer is merely a "discretionary change to another district where
the action could have been brought") (internal citation and quotation
marks omitted). In conducting the second inquiry, the Court
considers several factors to determine whether to transfer venue,
including: "'(1) ease of access to sources of proof; (2) the
convenience of the parties and witnesses; (3) the cost of obtaining
the attendance of witnesses; (4) the availability of compulsory
process; (5) the interest in having local controversies decided at
home; (6) in diversity cases, the court's familiarity with the
applicable law; and (7) the interest of justice.'" One Beacon Ins.
Co. v. JNB Storage Trailer Rental Corp., 312 F. Supp. 2d 824, 828
(E.D. Va. 2004) (quoting BHP Int'l Inv., Inc. v. Online Exch., Inc.,
105 F. Supp. 2d 493, 498 (E.D. Va. 2000)). The principal factors
to consider, however, are: (1) Plaintiff's choice of forum; (2)

3

witness convenience and access to sources of proof; (3) party convenience; and (4) the interest of justice. Koh, 250 F. Supp. 2d at 633; see Pragmatus AV, LLC v. Facebook, Inc., 769 F. Supp. 2d 991, 994-95 (E.D. Va. 2011). Ultimately, the burden of proof is on the movant to show "that transfer does more than merely 'shift the inconvenience to the other party.'" JTH Tax, Inc. v. Lee, 482 F. Supp. 2d 731, 736 (E.D. Va. 2007) (quoting DMP Corp. v. Fruehauf Corp., 617 F. Supp. 76, 77 (W.D.N.C. 1985)).

## III. Discussion

### A. Venue in Transferee Forum

"As an initial matter, the court must determine whether the proposed transferee court is one in which the action originally may have been brought." BHP Int'l Inv., 105 F. Supp. 2d at 498. If the claims could have been brought in the transferee court initially, the subsequent decision to transfer venue is within the discretion of the court. One Beacon Ins. Co., 312 F. Supp. 2d at 828 (citing Verosol B.V. v. Hunter Douglas, Inc., 806 F. Supp. 582, 591 (E.D. Va. 1992)).

Under 28 U.S.C. § 1400(b), venue in patent infringement lawsuits is proper in any "district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b) (emphasis added). A corporate defendant resides in any district in which it is subject to personal jurisdiction. 28 U.S.C. § 1391(c).

4

In the instant matter, it is undisputed that Plaintiff's patent infringement action could have initially been filed in the Middle District of North Carolina as Defendants are residents of such district and their corporate headquarters are located therein. Accordingly, the Court finds that venue would have been proper in the proposed transferee court.

### B. Section 1404(a) Convenience and Justice Factors

Although there are various ways to formulate the relevant considerations for determining whether a discretionary transfer is appropriate, the primary considerations are: (1) Plaintiff's choice of forum; (2) witness convenience and access to sources of proof; (3) party convenience; and (4) the interest of justice. Koh, 250 F. Supp. 2d at 633; Lee, 482 F. Supp. 2d at 736.

### 1. Plaintiff's Initial Choice of Venue

"Generally, the first factor - a plaintiff's choice of venue - is given substantial weight as '[i]t is well settled that a court should rarely disturb a plaintiff's choice of forum unless the balance of hardships clearly favor transfer . . . .'" Va. Innovation Scis., Inc. v. Samsung Elecs. Co., 928 F. Supp. 2d 863, 868 (E.D. Va. 2013) (quoting Verizon Online Servs. v. Ralsky, 203 F. Supp. 2d 601, 623-24) (E.D. Va. 2002) (alteration in original); see Akers v. Norfolk & W. Ry. Co., 378 F.2d 78, 80 (4th Cir. 1967) (recognizing "the primary right of the plaintiff to choose his forum, a selection not easily to be overthrown"). However, the "weight given to

5

plaintiff's choice of venue varies with the significance of the contacts between the venue chosen by plaintiff and the underlying cause of action." Bd. of Trs., Sheet Metal Workers Nat'l Fund v. Baylor Heating & Air Conditioning, Inc., 702 F. Supp. 1253, 1256 (E.D. Va. 1988) [hereinafter Baylor Heating]; see Agilent Techs., Inc., 316 F. Supp. 2d at 327 ("[T]he greater the connection between a plaintiff's chosen forum and the plaintiff's cause of action, the more weight a court will give to the plaintiff's choice"). Furthermore, a plaintiff's selection of a foreign forum is typically given less weight than a plaintiff's selection of its home forum. Baylor Heating, 702 F. Supp. at 1256. This is so because "'it is often more difficult for the plaintiff to show why such a forum is more convenient for the plaintiff.'" Koh, 250 F. Supp. 2d at 634 (quoting 17 James Wm. Moore, et al., Moore's Federal Practice § 111.13[1][c] (3d ed. 2002)).

Here, it is undisputed that Plaintiff's "home forum" is in Florida, not the Eastern District of Virginia. Accordingly, to determine whether substantial weight should be given to Plaintiff's chosen forum, this Court's inquiry focuses on the degree of connection between Plaintiff's cause of action and the Eastern District of Virginia.

The parties present vastly divergent pictures of the connection between the instant dispute and the Eastern District of Virginia. Plaintiff contends that Defendants are engaged in large-scale

6

infringement of Plaintiff's various patents almost exclusively in the Commonwealth of Virginia. Plaintiff seeks to justify its allegation by explaining that the disputed technology involves electronic mapping of underground utilities and that the Commonwealth of Virginia, through several of its largest utility companies, is at the forefront of adopting electronic mapping methods. In contrast, Plaintiff asserts that it is unaware of any utility companies in North Carolina that are utilizing such electronic mapping services.

In response, Defendants note that Plaintiff's alleged unawareness of sales by Defendants of their products or services in North Carolina is "irrelevant" and indicate that they perform electronic mapping services in several states, including Virginia, North Carolina, Maryland, and Ohio. Although Defendants are correct that the facts-not Plaintiff's knowledge or lack thereof-should drive the inquiry, curiously, Defendants offer no sales data or other information to refute Plaintiff's suggestion that the vast majority of all (purported) infringement is occurring in Virginia. Cf. Koh, 250 F. Supp. 2d at 635-36 (considering the percentage of domestic sales in Virginia in determining the "relation between this district and the claims against [the defendants]"). Defendants' efforts to refute Plaintiff's claim that the instant suit bears substantial ties to Virginia falls flat because: 1) prior to discovery, Defendants are the sole possessors of any such evidence; 2) Defendants have

submitted no such data or evidence; and 3) Defendants bear the burden of proving that venue should be transferred.

The Court further notes that Defendants seek to demonstrate the lack of a connection to Virginia by citing case law indicating that "[f]ederal courts are not solicitous of plaintiffs claiming substantial weight for their forum choice where the connection with the forum is limited to sales activity without more." Original Creatine Patent Co. v. Met-Rx USA, Inc., 387 F. Supp. 2d 564, 568 (E.D. Va. 2005) (quoting Acterna, L.L.C. v. Adtech, Inc., 129 F. Supp. 2d 936, 938 (E.D. Va. 2001)). However, the instant facts, as presented to this Court by Plaintiff, involve infringement that is occurring almost exclusively in Virginia. At least based on the information before the Court at this time, this is not a case where an infringing physical device is designed and manufactured in one state and the connection to the state in which suit is filed is merely claimed retail sales. See, e.g., GTE Wireless, Inc. v. Qualcomm, Inc., 71 F. Supp. 2d 517, 519 (E.D. Va. 1999) (transferring the case to California where "the central issues concerning the accused activity revolve around the cellular phones which are designed and manufactured in San Diego") (emphasis added). Rather, it appears that Plaintiff's primary allegation of infringement is that Defendants are currently, on a daily basis, infringing Plaintiff's patent in Virginia by using Plaintiff's patented method of creating electronic maps of utility lines in Virginia, and that such

8

electronic maps are specific to land surveyed in Virginia. Cf. Intercarrier Commc'ns v. Glympse, Inc., No. 3:12-CV-767, 2013 U.S. Dist. LEXIS 113572, at *8 (E.D. Va. Aug. 12, 2013) (declining to give substantial weight to foreign plaintiff's choice of venue in Virginia where "nothing demonstrates that Virginia residents use this software proportionately more than residents of any other state"). It is also notable that Defendants have more than ten offices in Virginia which, according to Defendants, support both the accused purportedly infringing activities, as well as unrelated clearly non-infringing construction activities.[1]

Although Defendants' filings suggest that the claimed infringement stems from Defendants' "product" - the "SN LocSys System" - which was designed and created in North Carolina, Defendants fail to articulate the type of product (i.e., software or hardware) and fail to effectively refute Plaintiff's assertion that the focus of the instant suit is on "method" claims being infringed in Virginia, rather than an infringing apparatus being designed and manufactured in one state and merely being sold in another. For example, in Beam Laser Sys., Inc. v. Cox Commc'ns, Inc., 117 F. Supp. 2d 515, 518-19 (E.D. Va. 2000), another Judge of this Court rejected the defendants' attempts to demonstrate a lack of significant ties to the Eastern District of Virginia. The Court

---

[1] It appears at this time that, in addition to their corporate headquarters, Defendants have, at most, one additional location in North Carolina.

began by noting that "[u]nder patent law, 'whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent.'" Id. at 518 (quoting 35 U.S.C. § 271(a)). Although in some cases, the "hub of activity" where an infringing product is designed and manufactured will have the strongest ties to the cause of action, such is true when the "patent infringement action alleg[es] violation of the 'makes' prong of the statute." Id. at 518-19. In contrast, the "center of the accused activity" in Beam Laser Systems was the Eastern District of Virginia, where the plaintiffs had asserted large-scale use of the purportedly "infringing . . . system." Id. at 519.

Considering the above, as in Beam Laser Systems, the Court finds that Plaintiff has advanced "significant ties" to the Eastern District of Virginia such that Plaintiff's choice of forum should be given substantial weight. Although various factors lead to such conclusion, most notable is the fact that the alleged infringement involves the use of a method (and/or apparatus) within the Eastern District of Virginia in order to map underground utility lines located within Virginia. Furthermore, Defendants fail to present any sales data or other evidence to refute Plaintiff's assertion that Virginia is at the forefront of adopting the disputed technology and is the primary locus of the use of the patented method to electronically map underground utilities. Accordingly, the Court

10

finds that Plaintiff has demonstrated sufficient ties to this district to afford "substantial weight" to its selection of forum for litigating the instant lawsuit.

## 2. Parties/Witness Convenience and Access

The Court next performs a combined analysis of considering the convenience to the parties and witnesses in litigating in the instant venue rather than the proposed transferee venue. Assessment of this factor requires the court to consider, among other things, the "ease of access to sources of proof, the costs of obtaining witnesses, and the availability of compulsory process." Lycos, Inc. v. TiVo, Inc., 499 F. Supp. 2d 685, 693 (E.D. Va. 2007) (quoting Samsung Elecs. Co. v. Rambus, Inc., 386 F. Supp. 2d 708, 717 n.13 (E.D. Va 2005)).

A party asserting witness inconvenience "has the burden to proffer, by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony to enable the court to assess the materiality of evidence and the degree of inconvenience." Koh, 250 F. Supp. 2d at 636. Additionally, "the convenience of non-party witnesses should be afforded greater weight [than the convenience of party witnesses] in deciding a motion to transfer." Rambus, 386 F. Supp. 2d at 718. As the moving party, Defendants must demonstrate that the Eastern District of Virginia is "an inconvenient forum in which to litigate, not simply that the [Middle District of North Carolina] would be more convenient." Id. at 718 n.15.

Here, Defendants motion and memoranda at best demonstrate why

11

the Middle District of North Carolina would be more convenient for its witnesses and provide for easier access to Defendants' corporate files.   Defendants do not, however, demonstrate why this Court, which is only 235 miles from the Middle District of North Carolina, Greensboro  Division,  is  an  "inconvenient  forum."    Notably, Defendants do not proffer, by affidavit or other evidence, sufficient details regarding the potential testimony of its proposed witnesses such that the Court can assess the materiality of such testimony and/or the extent of the inconvenience.   Rather, Defendants focus primarily on the number of miles that need to be driven by Defendants' potential witnesses, as well as the assumed expense of meals and lodging.   Furthermore, not only do Defendants fail to identify a single witness who is located more than 250 miles from this courthouse, but four of the eleven S & N witnesses identified by Defendants are actually closer to this courthouse than to the courthouse in Greensboro, North Carolina.   Defs.' Reply at 14, ECF No. 41.   As to the seven potential witnesses who are far closer to Greensboro, Defendants broadly assert that those individuals have "relevant knowledge . . . regarding the development, maintenance, advertising, and/or sales" of the accused technology.   Defs.' Aff. ¶ 5, ECF. No. 36-2.   As the parties asserting inconvenience, Defendants' broad statements fall far short of the requirement that they "proffer by affidavit or otherwise, sufficient details respecting the witnesses and their potential testimony" to permit

12

the Court to assess whether such testimony is "central to a claim,"
as well as whether it is "merely cumulative" to testimony offered
by other witnesses. Rambus, 386 F. Supp. 2d at 718.[2]

Although Defendants have identified one third-party witness
located 90 miles from the Greensboro courthouse and 240 miles from
this Court, Defendants have not included an affidavit from that
witness suggesting that traveling to Norfolk would be
"inconvenient." Defendants vaguely identify additional
third-party witnesses who live in Roanoke, Virginia (which is
actually closer to Greensboro, North Carolina than to Norfolk,
Virginia); however, Defendants' own facts suggest that one or more
of those witnesses live more than 100 miles from Greensboro and would
thus be outside the subpoena power of the Greensboro Court, but would
still be within the subpoena power of this Court. Finally,
Defendants do not persuasively demonstrate that air travel from

---

[2] Curiously, Defendants attack Plaintiff's affidavits submitted in
opposition to the pending motion to transfer as being "self-serving," when
Defendants themselves primarily rely on a similarly "self-serving"
affidavit from S & N's vice president. Moreover, Defendants' affidavit
does not even include a sworn assertion that "it would be inconvenient"
for S & N, or its vice president, to appear in Norfolk. Rather, the
affidavit includes numerous facts attempting to demonstrate that
Greensboro would be "more convenient and less expensive" than Norfolk for
S & N and many of its potential party witnesses. Defs.' Aff. ¶ 7, ECF No.
36-2 (emphasis added). However, the affidavit acknowledges that the S &
N employees responsible for advertising and selling the purportedly
infringing products and services are located either in Kernersville, North
Carolina, Troy, Virginia, or Louisa, Virginia. Id. ¶ 5. Notably,
Defendants do not include affidavits from such party witnesses with an
individualized explanation as to any inconvenience that each would
purportedly suffer. Furthermore, although Defendants contend that the
claimed inconvenience to third parties should garner greater weight than
the inconvenience to party witnesses, Defendants do not submit an affidavit
from a single third-party witness or potential party witness.

13

Florida to Greensboro, North Carolina, as compared to air travel from Florida to Norfolk, Virginia, is any different in length of travel, price, or inconvenience.[3]

Regarding "access to sources of proof," Defendants also assert that "S & N related documents" are housed in North Carolina and would need to be transported to Virginia. However, Defendants fail to identify such documents with any degree of particularity, fail to quantify the scope of the relevant documents, and fail to indicate whether the documents are paper or electronic.[4] Furthermore, Defendants fail to provide any evidence rebutting Plaintiff's assertion that the bulk of the alleged infringement is occurring in Virginia, or that Defendants have more than ten offices in Virginia.

Considering the above information, the Court finds that the instant prong, at best, slightly favors transfer to the Middle District of North Carolina. That said, the limited information provided by Defendants does little to distinguish the facts of this case from almost any other lawsuit because transferring a case to a defendant's home forum is almost always more convenient for that

---

[3] Defendants submitted numerous exhibits consisting of Internet printouts of flights from Florida into the Greensboro, North Carolina airport and the Norfolk, Virginia airport. Such exhibits demonstrate that on the day of such searches, the frequently-changing price of air travel resulted in a higher fare of only $80 to fly to Norfolk.

[4] Although it has no bearing on this Court's ruling, the fact that Defendants' counsel are based outside of North Carolina suggests that this case does not involve an unwieldy number of documents or other difficulty in transferring physical evidence that can only be effectively managed in the twenty miles between Defendants' corporate office in Kernersville, North Carolina and the Greensboro courthouse.

14

defendant's witnesses.

### 3. Interest of Justice

"The interest of justice category is 'designedly broad,'" and "is intended to encompass all those factors bearing on transfer that are unrelated to convenience of witnesses and parties." Baylor Heating, 702 F. Supp. at 1260. To place a more practical framework on such a designedly broad test, district courts generally consider the following eight factors: (1) the pendency of a related action, (2) the court's familiarity with the applicable law, (3) docket conditions, (4) access to premises that might have to be viewed, (5) the possibility of an unfair trial, (6) the ability to join other parties, (7) the possibility of harassment, and (8) the interest of having local controversies decided at home. Pragmatus AV, 769 F. Supp. 2d at 996; Rambus, 386 F. Supp. 2d at 721. Ultimately, the interest-of-justice factor "encompasses public interest factors aimed at 'systemic integrity and fairness,'" with the most prominent considerations being "judicial economy and the avoidance of inconsistent judgments." Byerson v. Equifax Info. Servs., LLC, 467 F. Supp. 2d 627, 635 (E.D. Va. 2006) (quoting Rambus, 386 F. Supp. 2d at 721).

Here, Defendants focus solely on factor eight (local controversies decided at home), asserting that the other factors are "not at issue" in this case.[5] The central dispute is which state has

---

[5] Defendant asserts that the "docket conditions" factor cannot be

15

a "local" interest in the matter. Defendants assert that North Carolina has a "local" interest in this matter solely because Defendants are headquartered there and because the allegedly infringing technology was researched, designed, and developed there. Plaintiff offers an effective counterargument, however, asserting that, regardless of Defendants' physical location, Defendants are engaging in large-scale infringement in Virginia as they utilize patented technology on a daily basis to create electronic maps of underground utilities located in Virginia for large utility companies in Virginia. In other words, although Defendants may be headquartered in North Carolina, their alleged infringement is occurring in Virginia.

Defendants attempt to counter Plaintiff's point by vaguely asserting that they perform services in other states as well, including North Carolina, but Defendants fail to quantify in any way their activities in other states. It appears to this Court that the state with the most direct interest in the instant action is the state

addressed because statistics for median time to trial are not available for the Middle District of North Carolina. In response, Plaintiff highlights that statistics are available for median time from filing to disposition in a civil case, and that such period is approximately twice as long (10 months as compared to 5 months) in the Middle District of North Carolina than in this Court. This Court further notes that the same statistics cited by the parties reveal that there are slightly more civil cases filed in the last year per judgeship in the Middle District of North Carolina than in this Court, and that there are substantially more pending cases in that Court per Judgeship as compared to this Court. Accordingly, to the extent that this Court considers docket conditions, the interest of justice would not favor the transfer of venue that Defendants seek. See Federal Court Management Statistics: District Courts - June 2013, http://www.uscourts.gov/Statistics/FederalCourtManagementStatistics/district-courts-june-2013.aspx (last visited Dec. 9, 2013).

where its utility companies rely daily on the services of an alleged infringer rather than the state where such infringer has its home office. Accordingly, the interest-of-justice factor slightly favors Plaintiff.

In sum, Defendants have failed to demonstrate that transfer to the Middle District of North Carolina is warranted, based on the relevant factors present in this case. As detailed above, a transfer to the Middle District of North Carolina would simply shift the inconvenience from Defendants to Plaintiff, and Defendants have failed to demonstrate that "the interest of justice and convenience of the parties and witnesses justify transfer to" the Middle District of North Carolina. Koh, 250 F. Supp. 2d at 630. Accordingly, Defendants' motion to transfer venue is **DENIED**.

### III. Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' motion to transfer venue.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s Mark S. Davis

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
December 12 , 2013

17