**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CERTUSVIEW TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:13-cv-346 (MSD) (TEM) |
| | § | |
| S&N LOCATING SERVICES, LLC and | § | |
| S&N COMMUNICATIONS, INC. | § | |
| | § | Jury Trial Demanded |
| Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR
JUDGMENT ON THE PLEADINGS BASED ON FAILURE TO
CLAIM PATENT-ELIGIBLE SUBJECT MATTER**

Pursuant to Federal Rule of Civil Procedure 12(c), S&N Communications, Inc. and S&N Locating Services, LLC (collectively, "S&N") file this Reply in Support of Defendants' Motion for Judgment on the Pleadings Based on Failure to Claim Patent-Eligible Subject Matter (the "Motion"), and respectfully show the Court as follows:

## I. INTRODUCTION

CertusView's Opposition to Defendants' Motion for Judgment on the Pleadings (the "Opposition") spends 18 pages casting aspersions and mischaracterizing S&N's Motion. (*See,* Pl.'s Opp'n at 1-18, ECF No. 207.) These arguments are each flawed attempts to avoid the merits of S&N's Motion.

As an initial matter, CertusView devotes significant time to disputing S&N's characterization of a "conventional" locate operation. *Id.* at 5-9. In doing so, CertusView attempts to create a factual dispute where there is none. The heart of CertusView's factual contentions are whether, in a conventional locate operation, locate technicians received and marked on images of a dig site. But whether an image of a dig site was ever provided to a locate technician in the past does not change the result that the asserted claims are directed to

1

unpatentable subject matter.[1] Even accepting CertusView's characterization of a "conventional" locate operation as true (which it is not), in no way does receiving a map or marking on a map— or any of the other claim elements attempting to computerize those steps—"transform" the asserted claims into an "inventive concept" under *Alice*. (*See* discussion *infra* Section II.B.2.)

As an attempt to procedurally avoid S&N's Motion, CertusView argues that patent-eligibility is "rarely amenable to a motion to dismiss" and that S&N's Motion improperly circumvents the local rules allowing only one motion for summary judgment. (*See, e.g.,* Pl.'s Opp'n at 10, 15-18, ECF No. 207.) But patent-eligibility under 35 U.S.C. § 101 is a pure question of law, and a growing chorus of courts—including this one—have dismissed patent infringement suits at the pleading stage for lack of patentable subject matter since the Supreme Court issued its decision in *Alice* five months ago. Dismissal is likewise appropriate here, especially given that the primary case CertusView cites was vacated and the Federal Circuit issued its new opinion rendering the claims patent-ineligible one day after CertusView filed its Opposition.[2] As an additional attempt to procedural obstacles, CertusView argues that S&N's Motion relies on material outside the pleadings. (*See, e.g.,* Pl.'s Opp'n at 15-18, ECF No. 207.) But S&N's Motion properly only cites to the Patents-in-Suit, which were attached to CertusView's Complaint, the Court's Claim Construction Order, and a growing body of court decisions applying the two-part test set forth in the *Mayo* and *Alice* Supreme Court decisions (the "*Alice* test").[3] The specifications and claims of the Patents-in-Suit support that the asserted claims are directed to the idea of "recording a locate operation," and CertusView cannot in good faith dispute that "recording a locate operation," is a conventional practice that the utility industry has performed for many years with pen and paper. (*See, e.g.,* '204 Patent, col.2 l.39-43; *see also* Pl.'s Opp'n at 3, ECF No. 207.) As a result, CertusView's claims impermissibly seek to

---

[1] *See Ultramercial, LLC v. Hulu, LLC*, No. 2010-1544, 2014 U.S. App. LEXIS 21633, at *14-15 (Fed. Cir. Nov. 14, 2014) (hereinafter referred to as "*Ultramercial II*") ("That some of the eleven steps were not previously employed in this art is not enough—standing alone—to confer patent eligibility on the claims at issue.").

[2] *See Ultramercial II*, 2014 U.S. App. LEXIS 21633, at *30-32; s*ee also* discussion *infra* Section II.A.1.

[3] *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *Mayo Collaborative Services v. Prometheus Laboratories, Inc.*, 132 S. Ct. 1289 (2012).

patent an "abstract idea" that the Supreme Court has squarely disallowed.

CertusView also argues that S&N's analysis was improper by allegedly not including an element-by-element analysis under both parts of the *Alice* test. (*See, e.g.,* Pl's Opp'n at 18-19, ECF No. 207.) CertusView's argument is flawed because an element-by-element analysis is not required under the first part of the *Alice* test. And, even under the second part of the *Alice* test, courts regularly analyze representative claims when assessing whether any claim elements transform an otherwise "abstract idea" into something patentable. Moreover, in its second part analysis, S&N already addressed each limitation CertusView points to as "further demonstrat[ing]" that the Patents-in-Suit are salvageable under Section 101. (*See, e.g.,* Mem. of Law in Support of Defs.' Mot. for J. on the Pleadings at 3-4, 16-17, ECF No. 198 (arguing that "digital representation" and "input image" are generic computer components added to the conventional practice of recording a locate operation under the second part of the *Alice* test).)

CertusView does not address the merits until page 19 of the Opposition where, due to the complete lack of technical substance in any of the asserted claims, CertusView's arguments fail on the merits under the two-part *Alice* test.

With respect to the first part of the *Alice* test, CertusView admits that the fundamental concept of the asserted claims is "recording a locate operation." (*See* Pl.'s Opp'n. at 2, ECF No. 207.) CertusView argues, though, that the asserted claims include one or more real-world steps. But real-world steps do not necessarily impact an abstract characterization. And courts are not just concerned with monopolizing long-prevalent human activity itself, but also with monopolizing generic computerizations of long-prevalent human activity.

CertusView's only argument for transforming its abstract idea, under the second part of the *Alice* test, is adding digital representations of locate marks to an electronic representation of a dig area. (*See* Pl.'s Opp'n. at 22, ECF No. 207 ("The use of such an image or electronic representation is an inventive concept that would transform the purportedly abstract idea of recording a locate operation into a concrete embodiment eligible for patenting.").) Said simply, CertusView argues that its technical innovation is drawing lines on a computer (specifically,

3

drawing locate marks placed in a dig area on a computer). That is not a patentable invention. Importantly, CertusView can point to no new computer or technological innovation, because the claims only recite generic computer components and acts. As this Court recently explained, "*Alice . . .* categorically establish[ed] a clear rule that had previously been subject to debate: ***mere recitation of a generic computer cannot transform a patent-ineligible abstract idea into a patent-eligible invention*.**" *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, No. 1:10cv910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447 (E.D. Va. Oct. 24, 2014) (internal citation and quotation marks omitted) (emphasis added). That the Patent Office found these claims patentable is hardly persuasive, given the since-changed legal landscape with respect to 35 U.S.C. § 101 and all the post-*Alice* cases involving claims previously allowed by the Patent Office. In view of this authority, as a matter of law, CertusView's claims include nothing "transformational" to conclude patent-eligible subject matter.

For these reasons and the reasons discussed below, the Court should grant S&N's Motion, and dismiss CertusView's claims based on lack of patentable subject matter since they are invalid as a matter of law.

## II.    ARGUMENT AND AUTHORITIES

**A.    S&N's motion for judgment on the pleadings is proper, and S&N met its burden in showing that the asserted claims are invalid under Section 101.**

CertusView's arguments avoiding the merits of S&N's Motion each fail because Section 101 issues are unquestionably amenable to dismissal on the pleadings, S&N's motion for judgment on the pleadings and motion for summary judgment were both filed in accordance with the Federal Rules of Civil Procedure and the Local Rules of this Court, and S&N's analysis on the merits comports with the Supreme Court's *Alice* decision.

**1.    Courts routinely decide patent eligibility issues on the pleadings, and S&N's Rule 12(c) motion was proper.**

The crux of CertusView's opposition is that it is "rare that a patent infringement suit can be dismissed at the pleading stage for lack of patentable subject matter." (Pl.'s Opp'n at 9, ECF No. 207.) But the authority on which CertusView relies for this point (hereinafter referred to as

"*Ultramercial I*") was vacated and remanded by the Supreme Court in view of *Alice*. And, the day after CertusView's filed its Opposition, the Federal Circuit issued a decision upholding the district court's dismissal of patent claims at the pleading stage for lack of patentable subject matter on remand. *See Ultramercial, LLC v. Hulu, LLC*, No. 2010-1544, 2014 U.S. App. LEXIS 21633, at *7-15 (Fed. Cir. Nov. 14, 2014) (hereinafter referred to as "*Ultramercial II*") (affirming the district court's dismissal of patent claims at the pleading stage for lack of patentable subject matter, and explaining that "adding a computer to otherwise conventional steps does not make an invention patent-eligible"). Similarly, in a cascade of cases since *Alice*, numerous courts, including this one, have reached the same result and dismissed patent claims at the pleading stage.[4] *See, e.g.*, *Amdocs (Israel) Limited v. Openet Telecom, Inc.*, No. 1:10-cv-910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447, at *3 (E.D. Va. Oct. 24, 2014) (dismissing claims for lack of patentable subject matter at the pleadings stage, and explaining that, "Section 101 patent eligibility is a question of law. Accordingly, a court may invalidate patent claims directed to non-eligible subject matter on the pleadings.") (internal citation omitted).

---

[4]*See also Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527 (C.D. Cal. Oct. 28, 2014) (granting defendant's Rule 12(c) motion and dismissing claims directed to "the abstract idea of providing event photographs organized by participant, as applied using the internet" and to "the abstract idea of distributing free or reduced-price digital event photographs with embedded advertisements," applied using generic computers); *Cogent Medicine, Inc. v. Elsevier, Inc.*, No. C-13-4479-RMW, -4483, -4486, 2014 U.S. Dist. LEXIS 139856 (N.D. Cal. Sept. 30, 2014) (granting defendant's Rule 12(c) motion and dismissing claims directed to "maintaining and searching a library of information" as invalid under § 101); *McRO, Inc. v. Namco Bandai Games Am., Inc.*, No. CV 12-10322-GW (FFMx), 2014 U.S. Dist. LEXIS 135212 (C.D. Cal. Sept. 22, 2014) (granting defendant's Rule 12(c) motion and dismissing claims directed to using rules to automate the process of generating keyframes as invalid under § 101); *Open Text S.A. v. Alfresco Software Ltd.*, No. 13-cv-4843-JD, 2014 U.S. Dist. LEXIS 132080 (N.D. Cal. Sept. 19, 2014) (granting defendant's Rule 12(b)(6) motion and dismissing claims directed to interacting with customers for marketing purposes as invalid under § 101); *Eclipse IP LLC v. McKinley Equip. Corp.*, No. CV 14-154-GW (AJWx), 2014 U.S. Dist. LEXIS 125395 (C.D. Cal. Sept. 4, 2014) (granting defendant's Rule 12(b)(6) motion and dismissing claims directed to response systems and methods for communications in connection with an automated computer-based notification system as invalid under § 101); *Tuxis Techs. v. Amazon*, No. 13-1771-RGA, 2014 U.S. Dist. LEXIS 122457 (D. Del. Sept. 3, 2014) (granting defendant's Rule 12(b)(6) motion and dismissing claims directed to methods and apparatuses for effecting commercial transactions at remote locations over communications networks as invalid under § 101); *Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc.*, No. 2:13-CV-655, 2014 U.S. Dist. LEXIS 122244 (E.D. Tex. Sept. 3, 2014) (granting defendant's Rule 12(c) motion and dismissing claims directed to the conversion of loyalty award points of one vendor into loyalty award points of another as invalid under § 101); *Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings*, No. 12-1736-LPS-CJB, 2014 U.S. Dist. LEXIS 122780 (D. Del. Sept. 3, 2014) (granting Rule 12(b)(6) motion and dismissing claims directed to a method of predicting human performance based on genetic testing as invalid under § 101).

Rather than address this considerable volume of authority , CertusView attempts to recast S&N's Motion as "an attempt to circumvent the Local Rules, which only permit one summary judgment motion." (Pl.'s Opp'n at 16-17, ECF No. 207.) According to CertusView, "[b]ecause S&N relies on material outside of the pleadings, the motion must be treated as one for summary judgment under Fed. R. Civ. P. 12(d)." (Pl.'s Opp'n at 16, ECF No. 207 (internal quotation omitted).) CertusView's statements are baseless.

First and foremost, S&N's Motion does not rely upon impermissible facts outside of the pleadings. In fact, in its Motion, S&N properly only references and cites to CertusView's Complaint, the Patents-in-Suit, attached as exhibits to the Complaint (and therefore incorporated therein), and the Court's Opinion and Order following the *Markman* hearing. (Mem. of Law in Support of Defs.' Mot. for J. on the Pleadings, ECF No. 198.) As a matter of law, and as ample authority demonstrates, courts can and should rely upon all of these sources in deciding a Rule 12(c) motion. *See, e.g., Wolf v. Capstone Photography, Inc.*, No. 2:13-CV-09573, 2014 U.S. Dist. LEXIS 156527, at *10-11 (C.D. Cal. Oct. 28, 2014) ("A court may, however, consider exhibits submitted with or alleged in the complaint and matters that may be judicially noticed pursuant to Federal Rule of Evidence 201."); *see also McRO*, 2014 U.S. Dist. LEXIS 135212, at *13; *Loyalty Conversion Sys.*, 2014 U.S. Dist. LEXIS 122244, at *14 ("A motion under Rule 12(c) 'is designed to dispose of cases where material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticeable facts.") (internal citation and quotation marks omitted).

Nor is S&N's Rule 12(c) motion an "attempt to circumvent the Local Rules." (Pl.'s Opp'n at 16-17, ECF No. 207.) CertusView cites no caselaw in support of its claim that the timing of S&N's motion was somehow improper. CertusView's silence on this point is understandable, given that Rule 12(c) expressly provides that a motion for judgment on the pleadings can be filed *at any time* "after the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). Indeed, a Rule 12(c) motion can even be filed *after* a summary judgment motion, and certainly in addition to such a motion. *See, e.g., Amdocs (Israel) Limited*

6

*v. Openet Telecom, Inc.*, No. 1:10-cv-910 (LMB/TRJ), 2014 U.S. Dist. LEXIS 152447, at *10-11 (E.D. Va. Oct. 24, 2014).  For example, in *Amdocs*, this Court recently granted a defendant's Rule 12(c) motion and dismissed the plaintiff's claims for lack of patentable subject matter, even though the defendant filed its Rule 12(c) motion *after* the court denied its summary judgment motion on the very same issue.  *Id.*  At bottom, CertusView provides no reason for the Court to consider S&N's Rule 12(c) motion as a summary judgment motion, especially since S&N does not seek to apply the summary judgment standard or ask the Court to consider facts beyond those that are properly the subject of a Rule 12(c) motion, and CertusView's arguments to the contrary should be disregarded.

Given that this is purely an issue of law to be decided by the Court, out of an abundance of caution, S&N indeed reasserted under Rule 56 that the asserted claims are not directed to patent-eligible subject matter.  (Defs.' Mot. for Summary J., ECF No. 216.)  S&N's Rule 56 motion spans several pages and is a separate motion that provides undisputed facts through the testimony of CertusView inventors.  It is a separate basis for Section 101 invalidity.

**2.    S&N met its burden in showing that the asserted claims are invalid under Section 101.**

S&N has established that CertusView's asserted claims are invalid under Section 101 as a matter of law.  *Alice*, 134 S. Ct. 2347, 2352-60 (2014).  In response, CertusView argues that S&N improperly analyzed the claims and failed to conduct an element-by-element analysis for each asserted claim of the Patents-in-Suit.  (Pl.'s Opp'n at 15, 18-19, ECF No. 207.) CertusView's argument is wrong for several reasons.  First, determining whether the claims are directed to an "abstract idea" is the first part analysis of the *Alice* test, which does not require an element-by-element approach.  *Id.* at 2355 ("[T]he Court must first determine whether the claims at issue are directed to a patent-ineligible concept.) (internal citations omitted); *Enfish, LLC v. Microsoft Corp.*, No. 2:12-cv-07360-MRP-MRW, 2014 U.S. Dist. LEXIS 156760, at *13 (C.D. Cal. Nov. 3, 2014) ("Step one is sort of a 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility.").  Thus, CertusView wrongly conflates the two-part *Alice*

7

test when it argues that S&N "utterly fail[ed] to address [a] number of limitations."  (Pl.'s Opp'n at 18-19, ECF No. 207.)

Second, even under the second part of the *Alice* test, courts regularly analyze representative claims when assessing whether any claim limitations transform the nature of the claim into a patent-eligible application.  *See, e.g., Alice*, 134 S. Ct. at 2352 n.2, 2360 (analyzing one representative method claim, and explaining that "[b]ecause petitioner's system and media claims add nothing of substance to the underlying abstract idea, . . . they too are patent ineligible under § 101");  *see also Ultramercial II*, 2014 U.S. App. LEXIS 21633, at *3-5 ("Claim 1 . . . is representative . . . .   As the other claims of the patent are drawn to a similar process, they suffer from the same infirmity as claim 1 and need not be considered further.");  *Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *12 ("Both Amdocs and Openet only present arguments regarding claim 1;  this accords with *Alice*, *Mayo*, and *Bilski*, in which the Supreme Court found that various claim types (method, system, etc.) directed to the same invention should rise and fall together.") (citing *Alice*, 134 S. Ct. at 2360).  Like the claims in *Alice*, the asserted system and computer-readable media claims in this case are "no different from the method claims in substance." *Alice*, 134 S. Ct. at 2360.   Moreover, CertusView's asserted dependent claims "add nothing of substance to the underlying abstract idea," making them likewise patent-ineligible. *Id.*

Third, CertusView asserts that S&N failed to address the "digital representations of physical locate marks" and "input image" aspects of the asserted claims, but S&N *did* address these claim limitations.  Specifically, S&N argued that "digital representation" and "input image" are generic computer components added to the conventional practice of recording a locate operation.  (Mem. of Law in Support of Defs.' Mot. for J. on the Pleadings at 3-4, 16-17, ECF No. 198 (citing *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1299 (U.S. 2012);  *SiRF Tech., Inc. v. Int'l Trade Comm'n*, 601 F.3d 1319, 601 F.3d 1319, 1333 (Fed. Cir. 2010)).)  CertusView does not point to any limitations or authority that would change S&N's analysis and salvage CertusView's claims.

**B.    S&N has established that the asserted claims are invalid under Section 101 as a**

**matter of law.**

With respect to the merits under Section 101, the asserted claims are directed to "recording a locate operation," which is an abstract idea, and the various generic computer claim elements do not transform this abstract idea into an "innovative concept" under the two-part *Alice* test.

> **1.    CertusView does not dispute that the asserted claims are directed to "recording a locate operation," and CertusView's argument that this is not an "abstract idea" is based on an incorrect interpretation of Supreme Court precedent.**

In its opposition to S&N's motion, CertusView admits that the asserted claims relate to the idea of "recording a locate operation."[5] (Pl.'s Opp'n at 2, ECF No. 207 ("[T]he claims . . . 'relate' to recording a locate operation in the general sense.").) But CertusView disagrees with S&N's conclusion that a "recording a locate operation" is an unpatentable abstract idea. (Pl.'s Opp'n at 19-20, ECF No. 207.) According to CertusView, the asserted claims are not directed to an abstract idea because: (1) they do not preempt recording locate operations; and (2) they recite real-world steps. (Pl.'s Opp'n at 19-21, ECF No. 207.) These arguments miss the mark.

With respect to preemption, courts have held that patents claiming the performance of a long-prevalent practice on a computer cannot be sustained because they would "effectively grant a monopoly over an abstract idea." *See, e.g.*, *DietGoal Innovations LLC v. Bravo Media LLC*, No. 13 Civ. 8391 (PAE), 2014 U.S. Dist. LEXIS 92484, at *30 (S.D.N.Y. July 8, 2014). For example, in *DietGoal Innovations*, the patent at issue claimed "a process for computerized meal

---

[5]A review of the Patents-in-Suit, which were attached CertusView's Complaint, makes clear that claim 1 of the '359 Patent and claim 13 of the '344 Patent recite a "method for generating a searchable electronic record of a locate operation." ('359 Patent, claim 1.) Claim 1 of the '204 Patent similarly recites a "method for generating a searchable electronic record of a locate operation." ('204 Patent, claim 1.) Claim 1 of the '341 Patent similarly recites a "method . . . to document the locate operation." ('341 Patent, claim 1.) The remaining asserted claims of the '359, '344, '204, and '341 Patents mirror the above language by reciting an apparatus, system, or computer-readable medium for performing the same methods. ('344 Patent, claims 1, 4, 13, 17; '204 Patent, claims 2, 19, 21; '341 Patent, claims 7, 16, 17, 28.) Claim 1 of the '001 Patent similarly recites a "system for electronically displaying information relating to the use of a marking system or marking tool . . . comprising an electronic representation of an area that is marked and includes the location of the underground utility." ('001 Patent, claim 1.) At CertusView's urging, the claimed "marking system or marking tool" has not been interpreted to require structure for physically dispensing markers. As a result, like the Asserted Claims of the '359, '204, '341, and '344 Patents, claim 1 of the '001 Patent discloses nothing more than recording a locate operation.

planning." *Id.* at *30.  Though the patent owner "attempt[ed] to dress up the claims as a computerized process for 'behavior analysis' and 'training,'" the court held that the claims recited "nothing more than the abstract concept of selecting meals for the day, according to one's particular dietary goals and food preferences." *Id.* at *31.  According to the court, meal planning is "surely a 'long-prevalent' practice," and the court reasoned that sustaining the patent, even though it was "computer-implemented by virtue of the patent application," would "effectively grant a monopoly over an abstract idea." *Id.*  Similar to the unpatentable claims in *DietGoal Innovations*, CertusView's claims recite nothing more than the abstract concept of recording a locate operation, which CertusView's own patents admit is a long-prevalent practice.  (*See, e.g.,* '204 Patent, col.2 l.39-43;  *see also* Pl.'s Opp'n at 3, ECF No. 207.)  As a result, even though this abstract idea may be "computer-implemented by virtue of the patent application," like the patents in *DietGoal Innovation*s, sustaining CertusView's patent would "effectively grant a monopoly over this abstract idea." *Id.*

Moreover, whether CertusView's claims recite real-world steps has no bearing on the "abstract idea" inquiry.  CertusView argues that (1) performing a locate operation, and (2) adding a digital representation of a physical locate mark to an input image, are "real world" steps and, thus, the asserted claims cannot be abstract. (Pl.'s Opp'n at 21, ECF No. 207.)  Tellingly, CertusView cites no authority to support its proposition.  (Pl.'s Opp'n at 21, ECF No. 207.)  And that is probably because courts, including the Supreme Court, have invalidated patent claims under Section 101 even though the claims recited the performance of real-world steps. *See, e.g., Alice*, 134 S. Ct. at 2355-56;  *Wolf*, 2014 U.S. Dist. LEXIS 156527, at *7.  For example, the claims at issue in the *Wolf* case recited concrete, real-world steps, such as "taking photographs of at least one participant of a sporting event along at least one point of a course or field thereof." *Id*.  The claims in *Wolf* also involved several computer steps requiring human interaction, such as "accessing the server at a location other than the sporting event and searching for a photograph of a particular sporting event participant utilizing the identifying data" and "displaying the photograph of the sporting event participant for inspection and ordering." *Id*. at

10

*3. The patentee in *Wolf* relied on the since-vacated *Ultramercial I* case, which defined an abstract idea as one that "is not concrete," and argued that the abstract idea should be narrowly defined as "a method for providing event photographs." *Id.* at *33. However, the *Wolf* court noted that "defendants accurately point out that previously invalidated claims could similarly be argued to have had similarly 'concrete' elements," such as the claims in *Alice*. *Id.* at *34. Thus, even though the claims at issue in *Wolf* included concrete steps like "taking photographs," and human-computer interaction steps like "accessing the server . . . and searching for a photograph," and "displaying the photograph . . . for inspection and ordering," the court concluded that they were directed to the abstract idea of "providing event photographs organized by participants." *Id.* The steps of performing a locate operation and adding a digital representation of a physical locate mark to an input image are analogous to the *Wolf* steps and do not save the abstract nature of CertusView's claims.

In fact, CertusView's claims are directed to an abstract idea because the purpose of these claims is "recording a locate operation." *See supra* note 2; *see also Cal Inst. of Tech.*, 2014 U.S. Dist. LEXIS 156763, at *41 (explaining that to identify whether a claim is directed to an abstract idea, "the court must identify the purpose of the claim—in other words, what the claimed invention is trying to achieve—and ask whether this purpose is abstract"); *Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *4 ("[C]laims which are not so purely abstract [as a fundamental truth, an original cause, or a motive] have also been invalidated under § 101."). Indeed, as CertusView's own patents admit, "recording a locate operation" is an "age-old idea" and a fundamental practice with a long history in the utility industry. *Cal Inst. of Tech.*, 2014 U.S. Dist. LEXIS 156763, at *40 (explaining that "[a]ge-old ideas are likely abstract," and that "a claim is more likely to be abstract if it stands for a fundamental practice with a long history[.]"); *Enfish*, 2014 U.S. Dist. LEXIS 156760, at *16 ("Recent precedents have suggested longstanding, fundamental practices may be abstract."); ('204 Patent, col.2 l.39-43.) The idea of "recording a locate operation" "existed long before the patents and [was] well known in the field," and, as a result, is an "abstract idea" under the first part of the *Alice* test. *Cal Inst. of Tech.*, 2014 U.S.

11

Dist. LEXIS 156763, at *47;  ('204 Patent, col.2 l.39-43.)

>    **2.       CertusView's claims simply recite this abstract idea on a generic computer.**

In an attempt to salvage its patent-ineligible claims, CertusView argues that adding *digital* representations of locate marks to *electronic* representations of a dig area is "transformative." (Pl.'s Opp'n at 22-24, ECF No. 207.)  But this argument also misses the mark.  Generic computer terminology, like "digital" and "electronic," are no more transformative than other generic computer components, such as a "processor," "display device," and "communication interface," which are precisely what the Supreme Court held to be unpatentable in *Alice*.  *Alice*, 134 S. Ct. at 2358-60 (quoting *Mayo*, 132 S. Ct. at 1301) ("[I]f a patent's recitation of a computer amounts to a mere instruction to 'implemen[t]' an abstract idea 'on . . . a computer,' . . . that addition cannot impart patent eligibility.");  *see also Enfish*, 2014 U.S. Dist. LEXIS 156760, at *21-22 ("Humans engaged in this sort of indexing long before this patent, and the claim does not put forth an innovative and unconventional method of indexing. . . .  [T]he recitation of computer memory does nothing more than limit the abstract idea to a technological environment.  This is not enough to make an abstract idea patentable."); *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011).  CertusView's claims contain no new hardware or components.  CertusView's patents disclose a system or method where, instead of using a pen or pencil to sketch marks on paper, a locate technician can, for example, use a computer to sketch lines on a digital map.  This is hardly "transformative," and saying it is does not make it so.  Rather, it is simply using off-the-shelf technology with a generic computer to perform what had been long done by hand.  The combination of such generic computerized elements in CertusView's claims does not, and cannot, transform this abstract idea into an "inventive concept." *Alice*, 134 S. Ct. at 2358-60.  Rather, like the claims in *Amdocs*, which this Court recently held to be unpatentable under Section 101 at the pleading stage, CertusView's claims are directed to "a computer functioning in a generic way," and do not "add any specific implementation beyond the abstract idea that information [regarding a locate operation is recorded]." *Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *21-22 (explaining that, like the claims

12

in *Alice*, claims directed to "[c]ollecting, filtering, aggregating, and completing network information amount[] to 'electronic recordkeeping,' which is 'one of the most basic functions of a computer'").

In addition, the primary case that CertusView relies on to support its argument that "the combination of the claim elements provides a new and useful process and/or system" is readily distinguishable from this case. (Pl.'s Opp'n at 24, ECF No. 207 (citing *Cal. Inst. of Tech.*, 2014 U.S. Dist. LEXIS 156763.)  In the *CalTech* case, the court determined that, like CertusView's claims, the claims at issue were directed to an abstract idea. *Id.*, at * 45-47.  The court concluded that the *CalTech* claims were nonetheless patentable under the second part of the *Alice* test because they were directed to an "inventive concept." *Cal. Inst. of Tech.*, 2014 U.S. Dist. LEXIS 156763, at *47-61.  However, the *CalTech* court explained that the claims recited "generating a parity bit by accumulating two values:  (i) the value of the previous parity bit and (ii) the sum of a number of randomly chosen irregular repeats of message bits," and found these claim limitations transformative because the claimed error correction codes "were not conventional activity that humans engaged in before computers." *Id.* at *50.  CertusView's claims, on the other hand, are directed to recording a locate operation, which CertusView's own patents admit is activity long done by hand.  ('204 Patent, col.2 l.39-43.)  That activity is precisely the type of "conventional activity that humans engaged in before computers." *Cal. Inst. of Tech*, 2014 U.S. Dist. LEXIS 156763, at *51.

Additionally, CertusView's argument that "the Patent Office has expressly found that these concepts are patentable beyond the conventional method," is inapt because the Patent Office the Supreme Court decided *Alice* after each of the Patents-in-Suit issued.[6] *Alice*, 134 S. Ct. at 2347-60.  Claims that were deemed patentable before *Alice*—such as the claims in the

_____

[6]Further, although the Patent Office issued preliminary examination instructions in view of *Alice*, they later solicited comments from the public on the preliminary examination instructions and, to the best of S&N's knowledge, have not yet issued final instructions to examiners on applying *Alice*. *See* USPTO Commissioner for Patents, Peggy Focarino, *Update on USPTO's Implementation of Alice v. CLS Bank*, Director's Forum: A Blog from USPTO's Leadership (Aug. 4, 2014), http://www.uspto.gov/blog/director/entry/update_on_uspto_s_implementation. Thus CertusView's arguments that applications similar to the Patents-in-Suit issued after *Alice* is of no moment.

*Ultramercial I* case that CertusView so heavily relies on in its Opposition, and the claims in the *Amdocs* case from this Court—were deemed unpatentable after *Alice*. *See Ultramercial II*, 2014 U.S. App. LEXIS 21633, at *9-17; *Amdocs*, 2014 U.S. Dist. LEXIS 152447, at *10-29.  Indeed, this is a throwaway argument because in every case in which a court has invalidated patents— whether pre- or post-*Alice*, whether under Section 101, 102, 103, or 112—the Patent Office had previously issued those same patents.

### III.    CONCLUSION

Accordingly, because CertusView's claims fail to transform the abstract idea of "recording a locate operation" into a patent-eligible inventive concept, the Court should grant S&N's motion for judgment on the pleadings and invalidate CertusView's claims as a matter of law.  For the reasons set forth above, and for the reasons set forth in the Memorandum in support of S&N's motion for judgment on the pleadings, Defendants respectfully request that the Court grant their Motion for Judgment on the Pleadings Based on Failure to Claim Patent-Eligible Subject Matter pursuant to Rule 12(c).

Dated:  November 20, 2014                    Respectfully submitted,

                                             /s/ Brian L. Whisler

                                             _____

                                             Brian L. Whisler (Lead Counsel)
                                             Virginia Bar No. 30435
                                             E-mail: brian.whisler@bakermckenzie.com
                                             BAKER & MCKENZIE LLP
                                             815 Connecticut Avenue, NW
                                             Washington, D.C. 20006
                                             Telephone:  (202) 452-7019
                                             Facsimile:  (202) 416-6937

                                             Michael A. Duffy
                                             E-mail: michael.duffy@bakermckenzie.com
                                             BAKER & MCKENZIE LLP
                                             300 East Randolph Street, Suite 5000
                                             Chicago, Illinois 60601
                                             Telephone:  (312) 861-8000
                                             Facsimile:  (312) 861-2899

                                             John G. Flaim
                                             E-mail: john.flaim@bakermckenzie.com
                                             W. Bart Rankin
                                             E-mail: bart.rankin@bakermckenzie.com
                                             Mackenzie DeWerff
                                             E-mail: mackenzie.dewerff@bakermckenzie.com
                                             BAKER & MCKENZIE LLP
                                             2300 Trammell Crow Center
                                             2001 Ross Avenue
                                             Dallas, TX  75201
                                             Telephone:  (214) 978-3000
                                             Facsimile:  (214) 978-3099

                                             ATTORNEYS FOR DEFENDANTS,
                                             S&N LOCATING SERVICES LLC AND
                                             S&N COMMUNICATIONS, INC.

15

## CERTIFICATE OF SERVICE

I hereby certify that on the 20th day of November 2014, a true and correct copy of Reply in Support of Defendants' Motion for Judgment on the Pleadings Based on Failure to Claim Patent-Eligible Subject Matter was served on Plaintiff's counsel of record at the following e-mail address: MLockerby@foley.com.


/s/ Brian L. Whisler