**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CERTUSVIEW TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:13-cv-346 (MSD) |
| | § | |
| S&N LOCATING SERVICES, LLC and | § | |
| S&N COMMUNICATIONS, INC. | § | |
| | § | Jury Trial Demanded |
| Defendants. | § | |

**RESPONSE TO CERTUSVIEW TECHNOLOGIES, LLC'S MOTION FOR PARTIAL
RECONSIDERATION OF JUDGMENT OF PATENT INELIGIBILITY
UNDER 35 U.S.C. § 101**

S&N Locating Services, LLC and S&N Communications, Inc. (collectively "S&N")

provide the following response to CertusView Technologies, LLC's ("CertusView") Motion for

Partial Reconsideration of Patent Ineligibility Under 35 U.S.C. § 101.

**I.    INTRODUCTION**

CertusView's motion for partial reconsideration should be denied.  The motion argues

two bases for reconsideration:  (1) a recent Federal Circuit decision, *Enfish, LLC v. Microsoft

Corporation*; and (2) evidence from the inequitable conduct trial.  The motion is wholly lacking

in merit as to both bases.

*Enfish* is entirely inapposite to this case and is not "contrary authority" warranting

reconsideration.  *Enfish* was decided under the first step in the *Alice* analysis and is consistent

with *Alice*.  *Enfish* applied the first step in the *Alice* inquiry and asked: "whether the focus of the

claims is on the specific asserted improvement <u>in computer capabilities</u> . . . or, instead, on a

process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool."

*Enfish, LLC v. Microsoft Corporation*, 2016 U.S. App. LEXIS 8699, at \*12 (Fed. Cir. 2016) (emphasis added).  The claims in *Enfish* pertained to software for a "self-referential" database, which allowed the computer to search for data faster and to more effectively store data.  *Id.* at \*6-7.  The Federal Circuit ruled that the *Enfish* patent claims were patentable under *Alice* because they were directed to improving a computer's capabilities, not simply to abstract ides.  "[T]he plain focus of the claims is on an improvement to computer functionality itself…" *Id.* at \*13.  The same cannot be said for the patent claim at issue in CertusView's motion for reconsideration.  In reality, Claim 1 of the '359 Patent is not directed to improving "computer capabilities" or "computer technology," and CertusView does not even so argue.  The argument based on *Enfish* is totally lacking in merit and should be rejected.

CertusView's argument based on trial evidence should similarly be rejected.  The Court's ruling on patentability was one of law, based solely on the pleadings (including the '359 Patent which was an exhibit to the First Amended Complaint).  Moreover, the evidence CertusView asks the court to consider relates to CertusView's ***products*** instead of the intrinsic record of the ***patent***.  CertusView's attempt to substitute a detailed analysis of the '359 Patent with a discussion of the features of its products is telling, as the '359 Patent, and Claim 1 in particular, qualifies as an abstract idea for which computers are invoked merely as a tool.  Tellingly, CertusView does not cite a single case where a court relied on trial evidence to determine patentability under § 101.

CertusView's motion for partial reconsideration does not satisfy any of the limited exceptions for when a court would typically reconsider its prior ruling.  CertusView's attempt at another bite at the apple regarding the invalidity of the '359 Patent and to re-argue trial evidence should be rejected.

## II.   ARGUMENT

### A.   Standard Governing Motions to Reconsider

Where, as here, an order does not dispose of all claims and parties, a motion to reconsider is committed to the discretion of the court. *TomTom, Inc. v. AOT Sys. GmbH*, 17 F. Supp. 3d 545, 546 (E.D. Va. 2014). A court's previous interlocutory rulings, however, are considered law of the case and will not be freely reviewed. *Id.* Rather, the law of the case doctrine, which guides the court's decision, adheres to the principles of "good sense and the desire to protect both court and parties against the burdens of repeated re-argument by indefatigable diehards." 18B Wright, Miller & Cooper, Federal Practice and Procedure:   Jurisdiction § 4478 (2d ed. 2002). Under that standard, motions for reconsideration are not the place for parties to "put a finer point on old arguments and dicker about matters decided adversely." *Evans v. Trinity Indus. Inc.*, No. 2:15-cv-314, 2015 U.S. Dist. LEXIS 164731, at *7 (E.D. Va. Nov. 25, 2015) (quoting *Shanklin v Seals*, No. 3:07-cv-319, 2010 U.S. Dist. LEXIS 43217, at *3 (E.D. Va. May 3, 2010)). Rather, under applicable Fourth Circuit precedent, courts should only depart from a previous ruling if: (1) a controlling authority has since made a contrary decision of law applicable to the case, (2) a subsequent trial produces substantially different evidence, or (3) the prior decision was clearly erroneous and would work a manifest injustice. *Evans*, 2015 U.S. Dist. LEXIS 164731, at *2; *see Bowling v Hasbro*, 403 F.3d 1373, 1374 (Fed. Cir. 2005).

Here, CertusView does not argue that the Court's decision to invalidate the asserted patent claims was clearly erroneous or would work a manifest injustice. Instead, it contends that there has been a change in the law, referring to *Enfish*, and that new evidence adduced at the recent inequitable conduct trial warrants reconsideration of the Court's judgment with respect to one of the asserted claims. (CertusView's Mot. for Partial Recons. at 4, ECF No. 534

S&N's Response to CertusView's Motion for Partial Reconsideration                    Page 3

("Reconsideration . . . is appropriate because of changes in the law and the introduction of new facts.").) It is not true that *Enfish*, a decision of the Federal Circuit, "changed" the Supreme Court's decision in *Alice*. In *Enfish*, the Federal Circuit applied the Supreme Court's holding in *Alice* to hold that claims that improved computer functionality were patentable. CertusView's motion is an improper attempt to 1) rehash arguments that were already made, considered, and rejected by this Court and 2) present evidence that the Court should not consider in determining the validity of patent claims. *See Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983) (holding that "Plaintiff improperly used the motion to reconsider to ask the Court to rethink what the Court had already thought through").

CertusView relies on *Bancorp Servs., LLC v. Sun Life Assurance Co. of Canada (U.S.)*, 687 F.3d 1266, 1272-73 (Fed. Cir. 2012), to argue that reconsideration is warranted because "the trial evidence concerning the utility industry and nature of CertusView's solution to these problems provides a 'full[er] understanding of the basic character of the claimed subject matter' that (1) was not available at the time of the § 101 Order, and (2) is substantially different than the information that was available to the Court at that time." (*See* CertusView's Mot. for Partial Recons. at 2, ECF No. 534.) But *Bancorp* does not stand for the proposition CertusView argues. *Bancorp* states that *claim construction* (as opposed to trial evidence) can provide a fuller understanding of the patent claims in advance of considering patentability under § 101. *Bancorp Servs., LLC*, 687 F.3d at 1273-74. And, far from being unavailable at the time of the Court's invalidity decision, *Bancorp* is *actually* cited in this Court's ruling. (Op. and Order, ECF No. 250 at 27 (Jan. 21, 2015) (hereinafter the "Section 101 Order").) In this case, the Court permitted a complete claim construction process allowing for briefing, argument, and then provided a written ruling all before it considered patentability under § 101. Thus, *Bancorp* has

no application to CertusView's motion, and does not support reconsideration of the invalidity ruling in this case.

*American Canoe Association v. Murphy Farms, Inc.*, 326 F.3d 505, 514-15 (4th Cir. 2003) cited by CertusView, is also inapposite. (*See* CertusView's Mot. for Partial Recons. at 2, ECF No. 534.) In that case, a motion for reconsideration challenged the district court's Article III subject matter jurisdiction. *Am. Canoe*, 326 F.3d at 509. The Fourth Circuit specifically held that "a district court's otherwise broad discretion to reconsider interlocutory orders is narrowed in the context of motions to reconsider issues going to the court's Article III subject matter jurisdiction." *Id.* at 515. CertusView's motion for reconsideration does not challenge the Court's Article III jurisdiction or anything coming close to such a threshold, jurisdictional question. Thus, *American Canoe* is plainly not applicable to this case. CertusView cannot create an issue that is ripe for reconsideration out of thin air. As the above demonstrates, because CertusView's motion cannot satisfy the standard set for a motion to reconsider, it should be denied.

**B.    The Court's Invalidity Ruling**

On January 21, 2015, the Court issued a well-reasoned, 96-page Opinion and Order holding that all asserted claims of the Patents-in-Suit are invalid for failure to claim patentable subject matter under 35 U.S.C. § 101. (Section 101 Order.) The Court stated that, for purposes of deciding S&N's Motion for Judgment on the Pleadings, "the facts of this case are drawn from Plaintiff's First Amended Complaint and are assumed true, with all reasonable inferences from those facts drawn in Plaintiff's favor." (*Id.* at 2 n.2.) The Court analyzed in detail the background of locate operations and the Patents-in-Suit based on the disclosures of the Patents-in-Suit. (*Id.* at 3-18.) That "the locate operation process described [as prior art] contains flaws"

was specifically considered. (*See, e.g.*, *id.* at 6.) For example, the Court noted CertusView's contention that "[i]naccurate markings of the utility lines, property damage, and/or personal injury . . . can expose the utility line owner to significant legal liability." (*Id.* at 6-7 (citing '001 Patent, col. 1:34-37).) The Court found "no factual disputes that could affect the Court's analysis of the issue of section 101 validity." (Section 101 Order at 29.) The only factual dispute brought to the Court's attention by CertusView in opposition was S&N's characterization of a "conventional" locate operation, but the Court held that, to the extent that the dispute must be resolved, it would be resolved in the light most favorable to the Plaintiff. (*Id.* at 30.) Given "the absence of any other factual disputes that could affect this Court's ruling," it was appropriate to resolve the issue of § 101 invalidity under Rule 12(c). (*Id.* at 30-31.)

In setting forth the standard under § 101 based on *Alice*, the Court also analyzed the Supreme Court's decision in *Bilski v. Kappos*, 561 U.S. 593, 609 (2010), noting that the prohibition against patenting abstract ideas "cannot be circumvented by attempting to limit the use of the formula to a particular technological environment" or adding "insignificant postsolution activity" under that case. (Section 101 Order at 37.) The Court further explained that the Supreme Court has indicated that the "machine-or-transformation test" of *Bilski* remains a "useful and important clue . . . for determining whether some claimed inventions are processes under § 101." (*Id.* at 94 n.17.) Importantly, the invalidity ruling held that even applying the *Bilski* machine-or-transformation test "would not alter the Court's conclusion" invalidating the asserted claims because they "'are not tied to any particular novel machine or apparatus,' only generic computer components configured to implement abstract ideas." (*Id.* at 94-95 n.17.) CertusView's motion does not contend that *Enfish* altered (or even "explained") the holding of the Supreme Court's decision in *Bilski,* nor does it argue that this Court's invalidity

determination based on *Bilski* should be reconsidered.

As to the '359 Patent, the Court applied its claim constructions and held that all elements of claim 1 "embrace the abstract process of receiving information, in the form of the aerial image, adding additional information to it, in the form of the digital representation of the physical locate mark, and then storing such combined information in a computer readable file with other information related to the locate operation." (Section 101 Order at 71-72.) Under step two of *Alice*, the Court analyzed Claim 1 of the '359 Patent and held that the elements, individually and as an ordered combination, fail to transform the claim into the patent-eligible application of the abstract idea to which Claim 1 is directed. (*Id.* at 73.) Although CertusView's motion seeks reconsideration of the Court's ruling on Claim 1 of the '359 Patent, the motion does not meaningfully discuss the section of the ruling addressing that claim, nor does it explain why what the Court said as to that claim was incorrect or needs to be reconsidered.

### C. No Controlling Authority Has Issued a Contrary Decision of Law Since This Court's Invalidity Ruling.

To justify a motion for reconsideration, there must an intervening *contrary decision of law* from a controlling authority. *Evans*, 2015 U.S. Dist. LEXIS 164731, at *2. CertusView argues that the Federal Circuit's decision in *Enfish, LLC v. Microsoft Corporation* is "applicable to step one" of the *Mayo/Alice* test that was applied by this Court. (CertusView's Mot. for Partial Recons. at 4, ECF No. 534.) When comparing the holdings of *Alice* and *Enfish*, it is clear the latter does not in any way constitute a change in the law or a contrary decision of law that would warrant reconsideration. Notably, since it was decided, no court has reconsidered its § 101 invalidity ruling based on the holding in *Enfish*. This Court should not be the first to do so.

**1.    The Supreme Court's holding in *Alice* was not altered by the Federal Circuit's opinion in *Enfish*.**

The Supreme Court in *Alice* largely reiterated the same principles and test for determining patent eligibility that, in the Court's words, have been in place "for more than 150 years." *Alice Corp. v. CLS Bank Int'l.*, 134 S. Ct. 2347, 2354 (2014). Consistent with its long-standing precedent, the Supreme Court held that patent eligibility under § 101 involves a two-part test: (1) are the claims at issue directed to a patent-ineligible concept; and, if so, (2) do the elements of the claims at issue contain an inventive concept sufficient to transform the claimed abstract idea into a patent-eligible application. *Id.* at 2355, 2357.

To answer the first element of the test, the Court looks to the patent claims to determine the concept to which they are drawn, and then asks whether that concept is drawn to laws of nature, natural phenomena, and/or abstract ideas. *Id.* at 2355-56. Methods of organizing human activity are generally considered drawn to abstract ideas, and the addition of merely novel or non-routine components does not turn the abstract idea into something patent-eligible. *Id.* at 2356. Similarly, if the patent claims are drawn to ineligible abstract ideas, merely implementing the claimed method using generic computer equipment does not transform the abstract idea into a patent-eligible application. *Id.* at 2357. Thus, the Supreme Court held that claims drawn to the concept of intermediated settlement were abstract, and implementing that concept on a general purpose computer did not constitute an inventive concept worthy of patent protection. *Id.* at 2355-57. The asserted claims in *Alice* failed, in part, because they did not "purport to improve the functioning of the computer itself." *Id.* at 2359.

**2.    The instant case is nothing like *Enfish*.**

The Federal Circuit in *Enfish* did not change the law, but, rather, simply followed the same test laid out by the Supreme Court. *Enfish LLC v. Microsoft Corp.*, No. 2015-1244, 2016

U.S. App. LEXIS 8699, at *9-11 (Fed. Cir. May 12, 2016).  The Federal Circuit applied the *Alice* two-part test to the particular claims at issue, and determined, in that instance, that the claims were drawn to patent-eligible subject matter.  *Id.* at *22.  In doing so, the Federal Circuit clarified that the first step when evaluating computer-related terms is "to ask whether the claims are directed to an improvement to computer functionality versus being directed to an abstract idea."  *See id.* at *12.  The Federal Circuit contrasted claims "directed to an improvement in the functioning of a computer" with claims "simply adding conventional computer components to well-known business practices" or "generalized steps to be performed on a computer using conventional computer activity."  *Id.* at *18-20.

The claimed invention in *Enfish* was directed to an improvement in computer functionality.  Indeed, in that case, the patents were "directed to an innovative logical model for a computer database."  *See Enfish*, 2016 U.S. App. LEXIS 8699, at *2.  Specifically, the patented model claimed in *Enfish* included all data entities in a single table, with column definitions provided by rows in that same table—*i.e.*, a "self-referential table."  *Id.* at *2-3.  In contrast to what had previously existed, the self-referential table improved existing computer technology by storing all entity types in a single table, and by defining the table's columns by rows in that same table.  *Id.* at *4.  The self-referential table improved computer functionality—resulting in "faster searching of data than would be possible with the prior art method,"  and "more effective storage of data."  *Id.* at *6.  The *Enfish* court specifically found that the claims were "directed to a specific improvement in the way computers operate, embodied in a self-referential table."  *Id.* at *13.  That holding is entirely consistent with, not contrary to, the Supreme Court's decision in *Alice.*  The Federal Circuit, in fact, expressly quoted and relied upon *Alice* when making its determination under step 1.  *Id.* at *12-22.  Very recently, the Federal Circuit re-emphasized that

the claims in *Enfish* "were unambiguously directed to an improvement in computer capabilities." *BASCOM Global Internet Servs. v. AT&T Mobility LLC*, 2016 U.S. App. LEXIS 11687 (Fed. Cir. 2016).

By contrast, the invention Claim 1 of the '359 Patent does not purport to improve computer functionality and, therefore, fails under step one of the application of *Alice* in *Enfish*: "whether the focus of the claims is on the specific asserted improvement in computer capabilities . . . or, instead, on a process that qualifies as an 'abstract idea' for which computers are invoked merely as a tool." *Enfish*, 2016 U.S. App. LEXIS 8699, at *12. As discussed in further below, Claim 1 of the '359 Patent only invokes computers as a tool to the well-known business practice of receiving, adding information to, and storing information about a physical locate mark, which had long been done by hand.[1] There is no improvement in computer technology offered by Claim 1 of the '359 Patent.

In its effort to fit a square peg in a round hole, CertusView misquotes *Enfish*, suggesting that "patent claims that 'improv[e] an existing technological process' satisfy step 1 and are therefore patent eligible." (CertusView's Mot. for Partial Recons. at 1, ECF No. 534 (citing *Enfish*, 2016 WL 2756255, at *4).) CertusView incorrectly attributes this quote to *Enfish* and characterizes it as "new authority" which warrants reconsideration. (CertusView's Mot. for Partial Recons. at 1, ECF No. 53.) However, the quoted language is actually from *Alice*, was later quoted in *Enfish*, and is in no way new authority. *See Enfish*, 2016 U.S. App. LEXIS 8699, at *11 ("The Supreme Court has suggested that claims 'purport[ing] to improve the functioning of the computer itself,' or 'improv[ing] an existing technological process' might not succumb to

---

[1] The specification of the '359 Patent states, for example, that "[c]urrently, locate marks are generally documented using a sketching process, which results in the creation of a paper manifest." ('359 Patent, col. 2:35-41.)

the abstract idea exception.") (quoting *Alice*, 134 S. Ct. at 2358-59).

At bottom, *Enfish* does not constitute a change in the law, nor is it a contrary decision by a controlling authority. *Enfish* simply applied the legal constructs applied in *Alice*, the first step thereof, to reach its conclusions on invalidity. *Compare Enfish LLC*, 2016 U.S. App. LEXIS 8699 at \*12-22 *with* Section 101 Order at 31-38. Moreover, that the Federal Circuit found the asserted claims to be patent eligible in *Enfish* was the result of a specific inquiry into the claims at issue, not a change in the law. CertusView improperly uses *Enfish* as a vehicle to re-argue S&N's Motion for Judgment on the Pleadings over 17 months after it was decided. Such a basis is not permitted and CertusView's arguments should, therefore, be rejected. *See Evans*, 2015 U.S. Dist. LEXIS 164731, at \*7.

### 3. Even considering the substance of CertusView's arguments in view of the *Enfish* opinion, a different result is not warranted.

Even before turning to the two-part test for determining patent eligibility, CertusView's arguments are fatally flawed because, among other reasons, it has misapplied the *Enfish* holding. Specifically, CertusView, throughout its motion, contends that claim 1 from the '359 Patent "satisfies step 1 of the *Mayo/Alice* test and is eligible for patenting because it is 'directed to a specific implementation of a solution to a problem in the [utility industry].'" (CertusView's Mot. for Partial Recons. at 1, ECF No. 534) (inserted text in the original).) Significantly, CertusView repeatedly inserts the terms "utility industry" when quoting *Enfish*, arguing that solving a problem in a particular industry is somehow all that is necessary for patentability under the Federal Circuit's holding. (*Id.*) The Federal Circuit, however, did not make such a ruling. *See Enfish LLC*, 2016 U.S. App. LEXIS 8699, at \*20-21.

Contrary to CertusView's assertions concerning *Enfish*, the Federal Circuit actually held that the specific claims at issue in that matter were "directed to a specific implementation of a

solution to a problem in the *software arts*." *Id.* at 21 (emphasis added). Thus, the real question posed by *Enfish* is whether the claims involve **software that improves a computer's capabilities**, not an application that solves a problem in a particular industry, such as the locate industry, as CertusView represents. Courts that have considered the *Enfish* ruling since its issuance have agreed. *See Papst Licensing GmbH & Co. v. Xilinx, Inc.*, No. 16-cv-00925-LHK, 2016 U.S. Dist. LEXIS 76061, at *49-50 (N.D. Cal. June 9, 2016) ("Plaintiff's argument is not persuasive, however, because unlike the claims at issue in *Enfish* and *DDR Holdings*, the asserted claims of the Papst Patents are not directed to any improvement of the computer or technology itself.") (emphasis supplied). The same is true in this case. CertusView's patent claim is not directed to any "improvement in the computer or technology itself." *See also BASCOM Global Internet Servs.*, 2016 U.S. App. LEXIS 11687, at *18 (emphasizing that the *Enfish* claims were "unambiguously directed to an improvement in computer capabilities").

Moreover, CertusView's contention that allegedly solving a problem in the utility industry renders claim 1 of the '359 Patent eligible under § 101 has already been considered and rejected by the Court. (Section 101 Order at 39-40.) In its order granting S&N's Motion for Judgment on the Pleadings, the Court expressly held that "[t]he mere fact that Claim 1 involves information specific to a locate operation does not, without more, alter the Court's conclusion that it is directed towards an abstract idea because 'the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment.'" (*Id.* at 39-40, 70-71 (citing *Bilski v. Kappos*, 561 U.S. 593, 610 (2010)).) Thus, CertusView has not presented any legal or factual argument that actually implicates the holding in *Enfish*. Instead, CertusView's motion again improperly raises, without justification, old arguments that have already been rejected. *See Evans*, 2015 U.S. Dist. LEXIS

164731, at \*7.

> ### a.   For the same reasons set forth in this Court's ruling, Claim 1 of the '359 Patent is drawn to an abstract idea.

As set forth above, the Federal Circuit in *Enfish* determined that claims drawn to the functional improvement of a computer itself could withstand a § 101 challenge. *See Enfish LLC*, 2016 U.S. App. LEXIS 8699 at \*12. The holding in *Enfish* is inapposite to this matter, however, because claim 1 of the '359 Patent ("Claim 1") is not drawn to improving any computer or software component. *See Papst Licensing GmbH & Co.*, 2016 U.S. Dist. LEXIS 76061, at \*48-49. CertusView has made no credible argument to the contrary.

Rather, CertusView contends that Claim 1 is not abstract because it allegedly requires the use of a geocoded or a high-resolution aerial image and the recording of geographic coordinates corresponding to at least one locate mark. (CertusView's Mot. for Partial Recons. at 9-11, ECF No. 534.) That contention is contrary to the law and the plain language of the '359 Patent. First, while CertusView contends that Claim 1 requires a geocoded or high-resolution aerial image, that contention is not supported by the claim or the specification. The claim simply requires the receipt of an "aerial image," nothing more. ('359 Patent, col. 17:60-63.) Further the specification provides that "[a]s used herein an 'aerial image' is ***intended to be broadly interpreted as any image*** taken from above the earth's surface, such as, for example, images generated using a satellite, airplane, helicopter or other moving or fixed device." (('359 Patent, col. 4:39-43) (emphasis added).) Thus, CertusView's attempt to narrow the scope of Claim 1 is wholly unsupported and irrelevant.

CertusView's argument concerning the purported specificity of the aerial image required is also irrelevant to a § 101 determination. CertusView cannot claim to have invented the aerial image, regardless of its resolution. Further, there is no evidence in the '359 Patent, or otherwise,

supporting the contention that the simple receipt and marking up of an aerial image is an improvement to the functionality of a computer or other technical process. *See Papst Licensing GmbH & Co.*, 2016 U.S. Dist. LEXIS 76061, at *50 (distinguishing and rejecting a patentee's reliance on *Enfish* by holding that the patents at issue were "directed to methods of verifying and optimizing memory tests, not improving the computer or software components used to carry out those methods"). As a result, the receipt of an aerial image, regardless of its resolution is still an unpatentable abstract idea. *See Art+Com InnovationPool GmbH v. Google, Inc.*, No. 14-217-RGA, 2016 U.S. Dist. LEXIS 56498, at *9-10 (D. Del. Apr. 28, 2016) (holding that storing maps, atlases, and photographs, which may contain image data with varying levels of specificity and detail, is an "undisputedly well-known practice that humans have always performed," rendering the claim drawn to an abstract idea).

The same is true for the claim limitation of Claim 1 requiring that geographic coordinates corresponding to one locate mark be part of the data set that makes up the searchable electronic record. Again, CertusView does not argue that it invented a method for gathering or recording geographic coordinates. Further, while CertusView represents in its motion that the specification explains that the "geographic coordinate data set is generated two ways," the column and lines cited do not support that contention. Rather, the specification makes clear that the geographic coordinates can be gathered in any number of ways, including by manual entry:

> Still referring to block 640, information about the approximate location of the underground facility locate marks *may* also be received directly from a GPS-enabled device, such as the GPS-enabled locating device or marking device used in block 630 and overlaid on the retrieved image. The user *may* use a combination of received GPS information *and manual entries* to create an electronic manifest of the underground facility locate marks. ('359 Patent col. 12:19-27 (emphasis added).)

> In block 650, if necessary, information about the location of the underground facility locate marks *may* be converted to GPS coordinates. In block 660, the

> retrieved aerial image and information about the location of the underground facility locate marks *may* be stored in memory as a single combined image or electronic manifest.  The electronic manifest *may* be stored as, for example, a digital image or an interactive electronic map.  Additionally or alternatively, in block 670, the geographic coordinates of the underground facility locate marks may be stored in memory, such as memory 330 (Fig. 3), as a separate data set.  The data set *may* be compiled as, for example, a database of GPS coordinates.  ('359 Patent col 12:41-52 (emphasis added).)

> In one implementation, the geographic location information *may* include a set of geographic points along the marking path of the located underground facility.  The geographic location information in underground facility location field 730 is shown in Fig & as N38 51.40748, W077 20.27798; . . . ; N38 51.40784, W077 20.27865, although *any type of geographic location information may be used.*

('359 Patent, col. 13:14-21 (emphasis added).) Consistent with the above text, which does not explain how the coordinates would be gathered from a technical perspective, the specification further states that, "[i]t will be apparent that aspects, as described above, may be implemented in many different forms of software, firmware, and hardware in the implementations illustrated in the figures."  ('359 Patent, col. 17:27-29.)  Thus, again, the limitation requiring that geographic coordinates be included in the data set is not directed to improving the function of computer or software components, and as a result, *Enfish* simply does not apply.  *See Visual Memory LLC v. Nvidia Corp.*, No. 15-789-RGA, 2016 U.S. Dist. LEXIS 69543, at *10-14 (D. Del. May 27, 2016).

CertusView's reliance on *Sophos v. Rpost Holdings, Inc.* is similarly misplaced.  (CertusView's Mot. for Partial Recons. at 15-16, 21, ECF No. 534.)  In that case, the claims at issue involved a system and method for verifying delivery and content of an electronic message and, more particularly, to a system and method of later providing proof regarding the delivery and content of an e-mail message.  *Sophos, Inc. v. Rpost Holdings, Inc.*, No. 13-12856-DJC, 2016 U.S. Dist. LEXIS 72699, at *36-37 (D. Mass. June 3, 2016).  The court further noted that the system claimed by the patents at issue included the use of an intermediate server between the

sender and receiver of an electronic message to address the problem of providing reliable proof of the content and delivery of electronic messages. In view of those specific claims, the Court held that they, like the claims at issue in *DDR Holdings, LLC v. Hotels.com L.P.* 773 F.3d 1245, 1257 (Fed. Cir. 2014), were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Sophos*, 2016 U.S. Dist. LEXIS 72699, at *36. As a result, the claims at issue in *Sophos* were dedicated to solving problems associated with and improving the performance of the computer technology itself.

The same cannot be said in this case. As CertusView states, the problems allegedly solved by Claim 1 are "improving public safety and reducing liability risk for utility services." (CertusView's Mot. for Partial Recons. at 14, ECF No. 534.) Those are not solutions rooted in computer technology for the purpose of improving the operation of the computer components themselves. Rather, as this Court has already considered and held, the elements of Claim 1, individually and collectively, "embrace the abstract process of receiving information, in the form of an aerial image, adding additional information to it, in the form of the digital representation of the physical locate mark, and then storing such combined information in a computer readable file with other information related to the locate operation." (Section 101 Order at 72.) CertusView has not presented any argument that should cause the Court to alter that ruling, which has also been reached routinely by other courts that have encountered similar claims. *See In re TLI Communs. LLC Patent Litig.*, No. 2015-1372, 2016 U.S. App. LEXIS 8970, at *3 (Fed. Cir. May 17, 2016) (claims directed to classifying and storing digital images in an organized manner are abstract); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014) (claims directed to collecting, recognizing, and storing data are abstract); *Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 991-92 (Fed. Cir. 2014)

(holding that using categories to organize, store, and transmit information is an abstract idea); *Cloud Satchel, LLC v. Amazon.com, Inc.*, 76 F. Supp. 3d 553, 562-64 (D. Del. 2014) (finding that the claims were directed to the abstract idea of cataloguing documents to facilitate their retrieval from storage in the field of remote computing).

**b.**   **As this Court has already determined, nothing in Claim 1 of the '359 Patent transforms the abstract idea into an inventive concept.**

**i.**   **CertusView presents no basis for the Court to reconsider its determination that Claim 1 does not transform the abstract idea to which it is directed.**

While CertusView contends, albeit incorrectly, that *Enfish* represents a contrary decision of law regarding the first step of the *Alice/Mayo* test, it cannot claim that there has been an intervening, contrary decision regarding a court's determination under that test's second step. As set forth below, CertusView has not presented any "new" evidence that warrants reconsideration of the Court's previous invalidity ruling. Consequently, the arguments from pages 19-25 of CertusView's motion are nothing more than an attempt to rehash arguments briefed and decided over 17 months ago. Once again, CertusView's motion is an abuse of Rule 54(b) and should be denied. *See Above the Belt, Inc.*, 99 F.R.D. at 101.

**ii.**   **CertusView's cites no legal authority or claim elements that justify reconsideration.**

To support its contention that Claim 1 transforms an abstract idea into an inventive concept, CertusView principally relies on two cases, one from the Federal Circuit and one from Delaware, *DDR Holdings LLC v. Hotels.com L.P.,* and *Art+Com InnovationPool GmbH v. Google Inc.*, respectively. Neither warrants reconsideration here.

Reliance on *DDR Holdings* is particularly inappropriate because that case was decided before this Court's invalidity ruling and was discussed and distinguished in detail in this court's

opinion. (Section 101 Order at 59 n.15.) As the Court noted in its ruling, the claims in *DDR Holdings* were "necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks." *Id*. quoting *DDR Holdings,* 773 F.3d at 1257. In contrast, this Court noted that the claims asserted in this case (including Claim 1 of the '359 patent), "do not solve any problem unique to computing." (Section 101 Order at 59 n.15) In spite of this, CertusView cites *DDR Holdings* repeatedly as a basis for reconsideration, ignoring this Court's treatment of it in its ruling. *DDR Holdings* is not new—far from it—and therefore cannot be a basis for reconsideration.

*Art+Com Innovationpool GmbH v. Google Inc.* does not warrant reconsideration because, as a case from the District of Delaware, it is not "controlling authority." Moreover, it is not "contrary authority." It is readily distinguishable. In *Art+Com*, the claims were found to be "something more" than an abstract concept. No. 14-217-RGA, 2016 U.S. Dist. LEXIS 56498, at *17-18 (D. Del. Apr. 28, 2016). Specifically, they included software allowing for a "pictorial representation of space related data, particularly geographical data of flat or physical objects." *Id.* at *2. While the court held that the claims were drawn to the longstanding abstract human practice of storing "maps, atlases, and photographs, which may contain image data with varying levels of specificity and detail," they were, nevertheless, patentable because they expressed other transformative concepts under step 2 of the *Alice/Mayo* test. *Id.* at 10. In making that determination, the court found the claims "described a process whereby distributed data sources supply requested data by repeatedly dividing each of the one or more sections having image resolutions below a desired image resolution into a plurality of smaller sections, prior to requesting higher resolution space-related data for each of the smaller sections." *Id.* at *16. Those elements, combined with other unique display techniques, led the court to conclude that

these claims were transformative and subject to patent protection. *Id.* at *17.

Claim 1 does not contain any of the inventive aspects present in *DDR Holdings LLC* or *Art+Com InnovationPool GmbH* and is not in any way directed to "internet-centric challenges." Rather, as this Court held, Claim 1, at its core, "claims the abstract idea of creating a computer-readable file to store information, as applied in the particular technological environment of conducting a locate operation because Claim 1 merely recites a method for creating a computer-readable file that stores much of the information pertinent to a locate operation." (Section 101 Order at 72; *see Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014) (examining the "heart" of the claims when assessing claimed subject matter in response to a § 101 challenge).) Unlike the claims in *Enfish* and *DDR Holdings LLC*, Claim 1 is not directed to improving the function of a computer or software component itself, but rather, is directed to a longstanding practice of organizing human activity, *i.e.*, storing information electronically that used to be stored by hand. *See Papst Licensing GmbH*, 2016 U.S. Dist. LEXIS 76061, at *50-51.

Similarly, Claim 1 contains no transformative elements remotely similar to those present in *Art-Com InnovationPool GmbH*. CertusView contends that, because Claim 1 requires the use of aerial images and the inclusion of geographic coordinates, those elements alone transform it into patent-eligible subject matter. (CertusView's Mot. for Partial Recons. at 19-22, ECF No. 534.) But CertusView's own authority makes clear that merely storing such information, including high-resolution images, is nothing more than longstanding human activity that cannot be patented. *See Art+Com InnovationPool GmbH*, 2016 U.S. Dist. LEXIS 56498, at *9-10. Further, as the court in *Art+Com InnovationPool GmbH* noted, a claim that merely describes the storing, requesting, and/or displaying of that abstract data, does not contain the "significantly more" that is required to defeat a § 101 challenge. *Id.* at *11-17. Indeed, this principle was

established by the Supreme Court in *Alice* and a litany of other courts determining this issue, including this Court. *See Alice Corp.*, 134 S. Ct. at 2357 ("method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention"); *Bilski*, 561 U.S. at 610-11 ("the prohibition against patenting abstract ideas cannot be circumvented by attempting to limit the use of the formula to a particular technological environment") (citations omitted); *buySafe Inc. v. Google, Inc.*, 765 F.3d 1350, 1353 (Fed. Cir. 2014) (holding that the narrowness of the abstract idea does not render patentable an otherwise patent-ineligible idea); *see also* Section 101 Order at 37.)

Other than the abstract ideas themselves, Claim 1 does not describe anything more than electronically sending information over a network for storage and/or display. As this and other courts have held, such a concept falls woefully short of transforming an abstract idea into a patentable invention. (*See* Section 101 Order at 43-60, 73-76.) Moreover, it should be noted that CertusView's previous briefing made the exact same arguments concerning the use of an images and geographic coordinates in an effort to satisfy step two of the *Alice/Mayo* test, which were rejected by the Court. (Section 101 Order at 52-55, 70-71, 73-76.) CertusView has not presented any legal or factual argument that would warrant departing from the law of the case.

## D.    The Evidence Presented at Trial Does Not Support Reconsideration

The evidence cited by CertusView is not "substantially different" such that reconsideration is appropriate here. First and foremost, CertusView seeks reconsideration of a judgment based *solely on the pleadings* under Federal Rule of Civil Procedure 12(c). By definition, evidence outside of the pleadings is not considered in a judgment on the pleadings. *See Dobson v. Cent. Carolina Bank & Trust Co.*, 240 F. Supp. 2d 516, 519 (M.D.N.C. Jan. 22, 2003) ("In a judgment on the pleadings setting, a court is strictly constrained to base its decision

solely on information obtained from the pleadings.") (citing *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)).

CertusView cites *Bancorp* for the proposition that trial evidence can be relied upon to provide a fuller understanding of the claims. (CertusView's Mot. for Partial Recons. at 2, ECF No. 534.)  As discussed above, such an argument distorts *Bancorp.*, which held that claim construction (as opposed to trial evidence) can be helpful to understand the claims prior to ruling on § 101 patent ineligibility. *See Bancorp Servs., LLC*, 687 F.3d at 1274.  CertusView also cites *Accenture Global Servs., GMBH v. Guidewire Software, Inc.*, 728 F.3d 1336 (Fed. Cir. 2013), for the proposition that issues of § 101 eligibility may be based on underlying factual issues. (CertusView's Mot. for Partial Recons. at 4, 6, ECF No. 534.)  While *Accenture* acknowledges that patentability under § 101 can contain underlying factual issues, its ruling was based solely on claim language and the specification.  *Accenture*, 728 F.3d at 1340-46.  There was no reliance on "trial evidence" in *Accenture.* The other cases CertusView cites for reliance on trial evidence on the issue of § 101 eligibility are completely off the mark because none of them even pertain to patent law, much less the narrow issue of what can be considered in determining § 101 eligibility. [2]  Indeed, CertusView does not cite a single case where a court relied on "trial evidence," outside of the claims themselves, the specification, or file history in ruling on § 101 eligibility.

---

[2] *American Canoe Association v. Murphy Farms, Inc.*, 326 F.3d 505 (4th Cir. 2003), pertains to a claim for violation of the Clean Water Act.  *Colley & Colley Coal Co. v. Breeding*, 59 Fed. Appx. 563 (4th Cir. 2003), is an appeal from a determination of total disability of a coal miner due to pneumoconiosis.  *Sejman v. Warner-Lambert Co.*, 845 F.2d 66 (4th Cir. 1988), pertains to preemption of a claim of employment benefits under ERISA.  *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983), is an action for water damage caused by faulty repairs to a roof.

**1. The Court's judgment of § 101 invalidity of Claim 1 of the '359 Patent was appropriately based solely on the pleadings.**

The Court's judgment finding Claim 1 of the '359 Patent invalid under § 101 was based on the pleadings under Federal Rule of Civil Procedure 12(c). (Section 101 Order at 95; *see also* Fed. R. Civ. P. 12(c).) The Court determined that S&N's Rule 12(c) motion was appropriate for determination on the pleadings given that "'[s]ection 101 patent eligibility is a question of law." (Section 101 Order at 29.) In fact, the Court explicitly "reject[ed] Plaintiff's contention that the Court cannot resolve this motion on the pleadings," and declined to consider matters outside the pleadings. (*Id*. at 29-30.) Emphasizing the "claim-centric issue of section 101 validity, the Court [found] that it need not rely on any factual matter other than that presented in the specifications of the patents-in-suit themselves." (*Id*. at 28-29.) "Importantly, the Court further conclude[d] that there are no factual disputes that *could* affect the Court's analysis of the issue of section 101 validity." (*Id*. at 29 (emphasis added).)

The Court already "concluded that it is appropriate for the Court to resolve, under Rule 12(c), whether the patents-in-suit claim patent-eligible subject matter," and declined to consider matters outside the pleadings. *Id*. at 31. Undeterred by the Court's ruling, CertusView's motion relies almost entirely on matters outside of the pleadings—namely, trial testimony and trial exhibits.[3] For example, CertusView cites: (1) a paper manifest introduced as an exhibit during trial (PX-95.0005); (2) trial testimony from Jeffrey Farr of CertusView regarding paper manifests (*see, e.g.*, Trial Tr. at 744:23-745:2, 745:7-16), CertusView's products and software (*see, e.g.*, Trial Tr. at 732:10-733:5, 746:21-747:11, 754:19-22), and the functionality of

---

[3]Moreover, any consideration of facts outside the pleadings would necessitate conversion of the underlying motion into a summary judgment motion, and S&N would be entitled to have a reasonable opportunity to present all material that is pertinent to such a motion. *See* Fed. R. Civ. P. 12(d).

TelDig's software product (*see, e.g.*, Trial Tr. at 799:24-801); (3) trial testimony from Steven Nielsen of CertusView regarding paper manifests and a desire to increase quality (*see, e.g.*, Trial Tr. at 826:1-9, 826:25-827:4, 820:4-821:17), to which the Court even inquired as to its relevance; (4) trial testimony from Curtis Chambers of CertusView regarding paper manifests (*see, e.g.*, Trial Tr. at 179:17-21); and (5) several PowerPoint presentations dated after the priority date of the '359 Patent (*see, e.g.*, PX-59, PX-95).

CertusView's reliance on this kind of "evidence" is inappropriate, and CertusView's motion for reconsideration of the Court's judgment on the pleadings should be denied on that basis alone.  Fed. R. Civ. P. 12(c)-(d); *see also Dobson v. Cent. Carolina Bank & Trust Co.*, 240 F. Supp. 2d 516, 519 (M.D.N.C. Jan. 22, 2003) ("In a judgment on the pleadings setting, a court is strictly constrained to base its decision solely on information obtained from the pleadings.") (citing *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1550 (9th Cir. 1990)).

### 2. Even if CertusView's trial testimony and exhibits are considered, the Court's Judgment on the Pleadings should nonetheless be upheld.

CertusView's motion for reconsideration must also fail because the trial testimony and exhibits it cites are irrelevant and are <u>not</u> the type of substantive evidence courts consider when determining patent claim eligibility under § 101.  Also, evidence proffered on the issue of CertusView's inequitable conduct is not "substantially new evidence" as to the issue of patent eligibility under § 101.

### a. CertusView's trial testimony and trial exhibits do not have any bearing on the claim-centric question of whether claim 1 of the '359 Patent are patent-eligible subject matter under 35 U.S.C. § 101.

"Section 101 eligibility is a question of law . . . that hinges on the claims of the patents-in-suit[.]"  (Section 101 Order at 28 (citing *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335

(Fed. Cir. 2014); *Alice*, 134 S. Ct. at 2355) (emphasizing that *Alice*'s "section 101 analysis involves two steps, both of which require a consideration of the patent claims at issue"); *see also Accenture Global Servs., GmbH v. Guideware Software, Inc.*, 728 F.3d 1336, 1345 (Fed. Cir. 2013) ("The important inquiry for a § 101 analysis is to look at the claim.").)  The Federal Circuit's decision in *Enfish* did not change the claim-centric nature of the § 101 analysis.  *See Enfish*, 2016 U.S. App. LEXIS 8699 at *12 ("Therefore, we find it relevant to ask whether ***the claims are directed to*** an improvement to computer functionality versus being directed to an abstract idea[.]") (emphasis added).

As provided above, the "substantially new evidence" CertusView cites includes testimony and documents outside of the '359 Patent relating to paper manifests, CertusView's products and software, third-party software products, locate industry-specific information, and CertusView PowerPoint presentations post-dating the priority date of the '359 Patent by several years.  *See* discussion *supra* Section II.D.2.a.  None of this evidence has any bearing on the claim language in Claim 1 of the '359 Patent.  None of the testimony or exhibits discusses the claim language or the '359 Patent, and none of the images cited by CertusView come from the '359 Patent.

> i.  **Paper manifests (PX-95.0005), third-party software products, locate industry-specific information, and related testimony**

Regarding the paper manifests, third-party software, and location industry-specific information, the cited evidence relates to purported specificity, detail, and resolution as improvements to industry problems in the conventional approach to documenting locate operations.  But Claim 1 of the '359 Patent is silent with respect to precision, specificity, detail, resolution, or *how* the method carries out such purported improvements over the paper manifests or third-party software.  *See* PX-03 at PX0003.0022; *see also Papst Licensing GMBH & Co. KG*

*v. Xilinx Inc.*, 2016 U.S. Dist. LEXIS 76061, at *51 (N.D. Ca. June 9, 2016) (distinguishing the asserted claims from the claims in *Enfish* because the *Enfish* **claims** were directed to implementations of the self-referential tables that provided the purported improvement).

Moreover, the paper manifests referenced in CertusView's briefs are not images from the '359 Patent, and thus are not relevant to an interpretation of the '359 Patent in the context of § 101. *See American Well Corp. v. Teladoc, Inc.*, 2016 U.S. Dist. LEXIS 76591, at *25-26 n.8 (D. Mass. June 13, 2016) (discounting evidence directed to features not recited in the claims). Similarly, the testimony about TelDig's products has nothing to do with the scope of claim 1 of the '359 Patent. TelDig's software was not cited during prosecution of the '359 Patent and is not part of the file history, and consequently also has no bearing on the scope of the claims.

Additionally, as acknowledged by CertusView, the Court already "recognize[d] that some of the information, for example, the geographical coordinates corresponding to physical locate marks, included in element C in the data set [of claim 1] . . . contains greater detail than, *or might otherwise be absent from, paper manifests* created during the conventional method of documenting a locate operation." (Section 101 Order at 76 (emphasis added).) Nevertheless, the Court found that such information did not transform claim 1 of the '359 Patent into a patent-eligible idea because such information is the "same *sort* of information" that ordinarily would be included in a paper manifest. *Id.* (emphasis added). Therefore, the Court's judgment did not hinge on a misunderstanding of a paper manifest or conventional locates. To the contrary, the Court already acknowledged that geographic coordinates *may* be absent but that Claim 1 of the '359 Patent is nevertheless directed to unpatentable subject matter under § 101. *Id.* CertusView's discussion regarding the absence of geographic coordinates in a paper manifest was already before the Court and does not require reconsideration. *See United States v. Jackson*,

No. 98-4520, 1999 U.S. App. LEXIS 11763, at *6-7 (4th Cir. June 7, 1999) ("Because the evidence from the suppression hearing and trial was in substantial accord, Jackson's claim that the evidence adduced at trial differed from this court's portrayal of the facts is merely an attempt to relitigate the direct appeal of the suppression issue.").

Finally, CertusView's assertion that using geographic coordinate data "was a key point of novelty in CertusView's inventions" is misplaced. Indeed, it is well-settled that "the addition of merely novel or non-routine components to the claimed idea [does not turn] an abstraction into something concrete." *See American Well Corp.*, 2016 U.S. Dist. LEXIS 76591, at *19 (quoting *Ultramercial, Inc. v. Hulu LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014)). And so CertusView's evidence relating to the purported novelty of using geographic coordinates in its products is also irrelevant. *Id.*

### ii. CertusView's products, software, and PowerPoint presentations are irrelevant.

Regarding CertusView's products and software, the testimony and exhibits relating to the purported success and precision of these products, are also immaterial to the patent eligibility of Claim 1 of the '359 Patent. As explained by Judge Koh in *Papst Licensing GmbH & Co. KG v. Xilinx Inc.*, the fact that a system might have advantages "in real world use," is irrelevant if those complexities are not reflected in the actual claims at issue. 2016 U.S. Dist. LEXIS 76061, at *57-58 (citing *Planet Bingo, LLC v. VKGS LLC*, 576 F. App'x 1005, 1008 (Fed. Cir. 2014)). As discussed above, none of the purported improvements in specificity, detail, and resolution allegedly achieved by CertusView's products and software are recited in Claim 1 of the '359 Patent, and so CertusView's cited testimony and exhibits relating to those products are irrelevant. *Id*.

CertusView's PowerPoint presentations are also immaterial to patentability and post-date the priority date of the '359 Patent by several years.  As a result, they do not provide any sort of contemporaneous evidence as to how the claims should be interpreted.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1313 (Fed. Cir. 2005) ("We have made clear, moreover, that the ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question *at the time of the invention*.")  (emphasis added)); *see also Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1399 (Fed. Cir. 2003) (refusing to consider non-contemporaneous references).  And, the images and information contained in the presentations are not from the '359 Patent and do not contain information which can determine or are even relevant to the scope of the claim.  The PowerPoint presentations are CertusView's own marketing material about its products—and are just as irrelevant as the products themselves, if not more.  *Papst Licensing GmbH & Co. KG*, 2016 U.S. Dist. LEXIS 76061, at *57-58 (finding that advantages in "real world use" are irrelevant if those complexities are not reflected in the claims).

Because none of this "substantially new evidence"—testimony and documents outside of the '359 Patent relating to paper manifests, CertusView's products and software, third-party software products, locate industry-specific information, and CertusView PowerPoint presentations post-dating the priority date of the '359 Patent by several years—pertains to Claim 1 of the '359 Patent, CertusView has failed to establish that reconsideration of the Court's judgment on § 101 eligibility is warranted.  (Section 101 Order at 28 (citing *In re Roslin Inst. (Edinburgh)*, 750 F.3d at 1335) (emphasizing the claim-centric nature of the § 101 analysis); *see also Accenture Global Servs., GmbH*, 728 F.3d at 1345 ("The important inquiry for a § 101 analysis is to look at the claim."); *see also Enfish*, 2016 U.S. App. LEXIS 8699 at *12

("Therefore, we find it relevant to ask whether ***the claims are directed to*** an improvement to computer functionality versus being directed to an abstract idea[.]") (emphasis added).)

## III.   CONCLUSION

For the reasons set forth herein, S&N respectfully requests that the Court deny CertusView's Motion for Partial Reconsideration in its entirety and grant S&N all other relief to which it is entitled.

Dated:  June 30, 2016                              Respectfully submitted,


/s/ Brian Whisler
Brian L. Whisler (Lead Counsel)
Virginia Bar No. 30435
E-mail: brian.whisler@bakermckenzie.com
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone: (202) 452-7019
Facsimile: (202) 416-6937

Daniel J. O'Connor
E-mail: Daniel.O'Connor@bakermckenzie.com
Michael A. Duffy
E-mail: michael.duffy@bakermckenzie.com

John G. Flaim
E-mail: john.flaim@bakermckenzie.com
W. Bart Rankin
E-mail: bart.rankin@bakermckenzie.com
Mackenzie Martin
E-mail: mackenzie.martin@bakermckenzie.com
Benjamin B. Kelly
E-mail: ben.kelly@bakermckenzie.com
Erin M. Choi
E-mail: erin.choi@bakermckenzie.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of June 2016, a true and correct copy of the foregoing document was served on Plaintiff's counsel of record via the Court's electronic filing system.

/s/  Brian Whisler