UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

CERTUSVIEW TECHNOLOGIES, LLC,

      Plaintiff,

v.                                 Civil No. 2:13cv346

S&N LOCATING SERVICES, LLC, and
S&N COMMUNICATIONS, INC.,

      Defendants.

## OPINION AND ORDER

On January 21, 2015, the Court issued an Opinion and Order, ECF No. 250, in this patent infringement case granting Defendants S&N Locating Services, LLC and S&N Communications, Inc.'s ("S&N") Motion for Judgment on the Pleadings, ECF No. 197, and finding that each of the asserted claims of the Patents-in-Suit were invalid because they did not claim patent-eligible subject matter pursuant to 35 U.S.C. § 101 ("Section 101 Opinion and Order"). Plaintiff CertusView Technologies, LLC ("CertusView") now seeks reconsideration and reversal of the portion of such Opinion and Order finding that Claim 1 of United States Patent No. 8,340,359 ("'359 Patent") was patent ineligible. Mot. for Partial Recons. of J. of Patent Ineligibility under 35 U.S.C. § 101, ECF No. 533. CertusView asserts that reconsideration and reversal of such finding is appropriate because: (1) the Court of Appeals for the Federal Circuit's recent decision of <u>Enfish, LLC v. Microsoft</u>

Corporation, 822 F.3d 1327 (Fed. Cir. 2016), alters the controlling test for patent eligibility; and (2) evidence produced during the subsequent bench trial in this matter, addressing S&N's declaratory judgment counterclaim for inequitable conduct, is substantially different from the evidence available at the time the Court decided S&N's Motion for Judgment on the Pleadings. CertusView has filed a request for oral argument on this Motion, which S&N opposes. CertusView's Request for Mot. Hearing, ECF No. 228. After examining the briefs and the record, the Court determines that oral argument is unnecessary because the facts and legal contentions are adequately presented and oral argument would not aid in the decisional process. Fed. R. Civ. P. 78(b); E.D. Va. Loc. Civ. R. 7(J). For the reasons set forth below, the Court **DENIES** CertusView's Motion.

### I. FACTUAL AND PROCEDURAL BACKGROUND[1]

CertusView holds the five related patents, involving technology for prevention of damage to underground infrastructure, at issue in this matter: the '359 Patent, United States Patent No. 8,265,344 ("'344 Patent"), United States Patent No. 8,290,204 ("'204 Patent"), United States Patent No.

---

[1] The Court recites here only those facts which are pertinent to the pending Motion. For a more detailed factual and procedural history, see the Court's August 2, 2016 Opinion and Order, ECF No. 542, May 22, 2015 Opinion and Order, ECF No. 325, and Section 101 Opinion and Order, ECF No. 250.

8,532,341 ("'341 Patent"), and United States Patent No. 8,407,001 ("'001 Patent") (collectively, the "Patents-in-Suit"). August 2, 2016 Op. & Order, 17-18, ECF No. 542. The Patents-in-Suit issued in 2012 and 2013, prior to the United States Supreme Court's seminal 2014 patent-ineligibility decision in Alice Corporation Priority Limited v. CLS Bank International, 134 S. Ct. 2437 (2014).

CertusView's products were developed as a means to improve record-keeping and documentation of "locate operations," id. at 23, that is, "the application of paint, flags, or some other marking object or material to indicate the presence of an underground facility," Joint Claim Construction Chart, 2, ECF No. 101-2. Specifically, the Patents-in-Suit claim inventions related to CertusView's e-Sketch technology. August 2, 2016 Op. & Order at 24. Stated broadly, the e-Sketch technology allows locators to document a locate operation more accurately and to create a searchable electronic record that includes such documentation and additional specific data regarding the locate operation. Id.

The '359 patent is entitled "Electronic Manifest of Underground Facility Locate Marks." Am. Compl. Ex. C, '359 Patent, ECF No. 55-2 [hereinafter "'359 Patent"]. The '359 Patent claims methods and apparatus for generating a searchable electronic record of a locate operation. The only asserted

3

claim from the '359 Patent is Claim 1. Claim 1, an independent method claim, recites:

> A method for generating a searchable electronic record of a locate operation performed by a locate technician, the locate operation comprising identifying, using at least one physical locate mark, a presence or an absence of at least one underground facility within a dig area, wherein at least a portion of the dig area may be excavated or disturbed during excavation activities, the method comprising:
>
>> A) electronically receiving an aerial image of a geographic area comprising the dig area, at least a portion of the received aerial image being displayed on a display device;
>>
>> B) adding to the displayed aerial image at least one digital representation of the at least one physical locate mark, applied to ground, pavement or other surface by the locate technician during the locate operation, so as to generate a marked-up digital image including the at least one digital representation of the at least one physical locate mark; and
>>
>> C) electronically transmitting and/or electronically storing the searchable electronic record of the locate operation, wherein the searchable electronic record comprises the marked-up digital image and a data set, and wherein the data set comprises:
>>
>>> a set of geographic points along a marking path of the at least one underground facility, the set of geographic points including geographical coordinates corresponding to the at least one physical locate mark;
>>>
>>> a property address associated with the at least one physical locate mark;
>>>
>>> a timestamp indicative of when the locate operation occurred;
>>>
>>> a name of the locate technician;
>>>
>>> a name of a company responsible for performing the locate operation; and
>>>
>>> a ticket number associated with the locate operation.

'359 Patent, Col. 17:53-18:21.

4

On May 29, 2013, CertusView filed a patent infringement action against S&N. Compl. ECF No. 1. On December 6, 2013, CertusView filed an amended complaint, alleging infringement of the five Patents-in-Suit. See Am. Compl., ECF No. 55. On December 23, 2013, S&N filed an Answer denying CertusView's allegations of infringement and asserting counterclaims against CertusView, seeking declaratory judgments of non-infringement and invalidity regarding all five Patents-in-Suit. S&N's Answer, Affirmative Defenses, and Countercls., ECF No. 61.[2] After the Supreme Court issued its June 2014 Alice decision, on October 28, 2014, following a Markman hearing, issuance of a claim construction order, and a limitation on the number of asserted patent claims, S&N filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), contending that the Patents-in-Suit were invalid as they did not claim patentable subject matter under 35 U.S.C. § 101. ECF No. 197. On January 21, 2015, the Court granted S&N's Motion for Judgment on the Pleadings and found that all of the asserted claims of the Patents-in-Suit were invalid for failure to claim patentable subject matter under 35 U.S.C. § 101, including Claim 1 of the '359 Patent. Sect. 101 Op. & Order, ECF No. 250.

---

[2] S&N's Answer was amended two additional times after the Court issued its Section 101 Opinion and Order. See S&N's First Am. Answer, Affirmative Defenses, and Countercls., ECF No. 253; S&N's Second Am. Answer, Affirmative Defenses, and Countercls., ECF No. 336.

On March 8, 2016, the matter proceeded to a five-day bench trial on S&N's declaratory judgment counterclaim against CertusView for inequitable conduct. On June 15, 2016, after the conclusion of the bench trial, CertusView filed its Motion for Partial Reconsideration of Judgment of Patent Ineligibility under 35 U.S.C. § 101. ECF No. 533. On June 30, 2016, S&N filed its Response in Opposition to CertusView's Motion for Partial Reconsideration. ECF No. 536. Finally, on July 15, 2016, CertusView filed its Rebuttal Brief in Support of its Motion for Partial Reconsideration. ECF No. 540. Therefore, CertusView's Motion for Partial Reconsideration is ripe for review.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 54(b)

CertusView moves for reconsideration under Federal Rule of Civil Procedure 54(b), which governs reconsideration of interlocutory orders or decisions.[3] Under Rule 54(b), a district court "'retains the power to reconsider and modify its interlocutory orders . . . at any time prior to final judgment.'" TomTom, Inc. v. AOT Sys. GmbH, 17 F. Supp. 3d 545,

---

[3] The Court's Section 101 Opinion and Order is considered an interlocutory order in this matter because it did not address S&N's declaratory judgment counterclaim for inequitable conduct and was not a "final decision." See CertusView Techs., LLC v. S&N Locating Servs., LLC, Order, No. 15-1404, Doc. No. 15 (Fed. Cir. July 9, 2015) (citing Nystrom v. TREX Co., Inc., 339* F.3d 1347, 1350 (Fed. Cir. 2003)).

546 (E.D. Va. 2014) (quoting Am. Canoe Ass'n v. Murphy Farms, Inc., 326 F.3d 505, 514-15 (4th Cir. 2003)).[4] The power to grant relief under Rule 54(b) "is committed to the discretion of the district court." Am. Canoe Ass'n, 326 F.3d at 515 (citing Moses H. Cone Mem. Hosp. v. Mercury Const. Corp., 460 U.S. 1, 12 (1983)). However the law of the case doctrine, among others, has "evolved as a means of guiding that discretion." Id. The Court of Appeals for the Fourth Circuit has found that, when applying the law of the case doctrine, a court generally may not depart from its previous ruling unless "'(1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'" Sejman v. Warner-Lambert Co., 845 F.2d 66, 69 (4th Cir. 1988) (quoting EEOC v. Int'l Longshoremen's Assoc., 623 F.2d 1054 (5th Cir. 1980)); accord Am. Canoe Ass'n, 326 F.3d at 515 (citing Sejman, 845 F.3d at 69); Evans v. Trinity Indus., Inc., 148 F. Supp. 3d 542, 544 (E.D. Va. 2015) (listing cases in support). "Absent a

---

[4] On procedural issues not unique to the Federal Circuit's exclusive jurisdiction, the Federal Circuit will apply the precedent of the regional circuit, which in this case is the Fourth Circuit. See Del. Valley Floral Grp., Inc. v. Shaw Rose Nets, LLC, 597 F.3d 1374, 1379 (Fed. Cir. 2010) ("We review a district court's decision to exclude evidence and to deny a motion for reconsideration under the law of the pertinent regional circuit." (citing Minton v. Nat'l Ass'n Sec. Dealers, Inc., 336 F.3d 1373, 1378 (Fed. Cir. 2003); Micro Chem., Inc. v. Lextron, Inc., 317 F.3d 1387, 1390-91 (Fed. Cir. 2003))).

significant change in the law or the facts since the original submission to the court, granting a motion for reconsideration is only appropriate where, for example, the court 'has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension.'" Evans, 148 F. Supp. 3d at 544 (citation omitted). "Such problems 'rarely arise and the motion to reconsider should be equally rare.'" TomTom, Inc., 17 F. Supp. 3d at 546 (quoting Above the Belt, Inc. v. Mel Bohannan Roofing, Inc., 99 F.R.D. 99, 101 (E.D. Va. 1983)). Motions to reconsider asking a court to "'rethink what the [c]ourt had already thought through—rightly or wrongly' should not be granted." Id. (quoting Above the Belt, Inc., 99 F.R.D. at 101).

## B. Patent Eligibility under 35 U.S.C. § 101

Congress has defined the subject matter eligible for patent protection by providing that "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor, subject to the conditions and requirements of this title." 35 U.S.C. § 101. However, as the Supreme Court stated in Alice Corporation Proprietary Limited v. CLS Bank International, "'[w]e have long held that this provision contains an implicit exception: [l]aws of nature, natural

8

phenomena, and abstract ideas are not patentable.'" 134 S. Ct. 2347, 2354 (2014) (quoting Ass'n for Molecular Pathology v. Myriad Genetics, 133 S. Ct. 2107, 2116 (2013)). Accordingly, an invention claims patent-eligible subject matter if it is directed to a "process, machine, manufacture, or composition of matter" and does not constitute an attempt to patent a law of nature, natural phenomenon, or abstract idea.

In determining that Claim 1 of the '359 Patent, and all other asserted claims of the Patents-in-Suit, did not claim patent-eligible subject matter, this Court applied the two-step framework that the Supreme Court set forth in Alice. See Sect. 101 Op. & Order at 34-37.

> First, the Court must "determine whether the claims at issue are directed to one of [the] patent-ineligible concepts," that is, laws of nature, natural phenomena, and abstract ideas. Alice, 134 S. Ct. at 2355 (citing Mayo Collaborative Servs. v. Prometheus Labs., Inc., 132 S. Ct. 1289, 1296-97 (2012)). To determine whether a claim is directed to a patent-ineligible abstract idea, "a court must evaluate the claims '[o]n their face' to determine to which 'concept' the claims are 'drawn.'" [Amdocs (Israel) Ltd. V. Openet Telecom, Inc., 56 F. Supp. 3d 813, 817 (E.D. Va. 2014) (quoting Alice, 134 S. Ct. at 2356) (citing Bilski v. Kappos, 561 U.S. 593, 609 (2010))]. In other words, a court "must identify the purpose of the claim . . . what the claimed invention is trying to achieve . . . and ask whether the purpose is abstract." [Cal. Inst. of Tech. v. Hughes Commc'ns Inc., 59 F. Supp. 3d 974, 991 (C.D. Cal. 2014) (citing Alice, 134 S. Ct. at 2359; Mayo, 132 S. Ct. at 1296)].
>
> Importantly, though the Supreme Court has not "delimit[ed] the precise contours of the 'abstract ideas' category" of patent ineligible subject matter,

_Alice_, 134 S. Ct. at 2357, the Court has indicated that such category _is not limited_ simply to "preexisting, fundamental truth[s] that exist in principle apart from any human action," _id._ at 2356 (alteration in original) (citation and internal quotation marks omitted). Indeed, the Supreme Court has suggested that a "method of organizing human activity" or "fundamental economic practice" can fall within the patent-ineligible category of abstract ideas. See _id._ Furthermore, the Federal Circuit has rejected the notion that "the addition of merely novel or non-routine components to the claimed idea necessarily turns an abstraction into something concrete." [_Ultramercial, Inc. v. Hulu, LLC_, 772 F.3d 709, 715 (Fed. Cir. 2014)]. At step one, prior art plays no role in a court's analysis.[5] [See, e.g., _Enfish, LLC v. Microsoft Corp._, 56 F. Supp. 3d 1167, 1173-74 (C.D. Cal. 2014), _aff'd in part, vacated in part, rev'd in part_, 822 F.3d 1327 (Fed. Cir. 2016). But see _McRO, Inc. v. Valve Corp._, No. 13-1874, 2014 WL 4772200, at *9 (C.D. Cal. Sept. 22, 2014) (unpublished)].

If an invention is directed toward a patent-ineligible abstract idea, second, the Court must "consider the elements of each claim both individually and 'as an ordered combination' to determine whether the additional elements 'transform the nature of the claim' into a patent eligible application." _Alice_, 134 S. Ct. at 2355 (quoting _Mayo_, 132 S. Ct. at 1297-98). Those additional elements "must be more than 'well-understood, routine, conventional activity.'"

---

[5] The _Enfish_ district court's statement that "[a]t step one, prior art plays no role in the analysis," must be read in light of the following sentences in the same paragraph of that opinion: "At step one, prior art plays no role in the analysis. The court does not filter out claim elements found in prior art and evaluate the remaining elements for abstractness [(citations omitted)]. Using prior art to filter out elements revives the point-of-novelty approach of _Parker v. Flook_, 437 U.S. 584 (1978), which was rejected by [_Diamond v. Diehr_, 450 U.S. 175 (1981)]." _Enfish_, 56 F. Supp. 3d at 1173-74 (citing _Diehr_, 450 U.S. at 189, for the proposition that "novelty 'is of no relevance' when determining patentability"). Thus, the Court understands the _Enfish_ district court opinion to stand for the proposition that review of prior art, and the distinctions between prior art and the claimed inventions, is not necessary in determining whether a claim is "directed to" patent-eligible subject matter.

Ultramercial, 772 F.3d at 715 (quoting Mayo, 132 S. Ct. at 1298). This second step is "a search for an 'inventive concept'—i.e., an element or combination of elements that is 'sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself.'" Id. (alteration and emphasis in original) (quoting Mayo, 132 S. Ct. at 1294). Yet, "transformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" Alice, 134 S. Ct. at 2357 (alterations in original) (quoting Mayo, 132 S. Ct. at 1294). Moreover, "the prohibition against patenting abstract ideas 'cannot be circumvented by attempting to limit the use of the formula to a particular technological environment' or adding 'insignificant postsolution activity,'" Bilski, 561 U.S. at 610-11 (quoting Diamond v. Diehr, 450 U.S. 175, 191-92 (1981)), and the narrowness of an abstract idea does not render patentable an otherwise patent-ineligible idea, [see buySAFE, Inc. v. Google, Inc., 765 F.3d 1350, 1353 (Fed. Cir. 2014) (citing Mayo, 132 S. Ct. at 1303)]. Nor does "the mere recitation of a generic computer . . . transform a patent-ineligible abstract idea into a patent-eligible invention."[7] Alice, 134 S. Ct. at 2358.

Sect. 101 Op. & Order at 34-37 (internal footnotes omitted).

### III. DISCUSSION

CertusView asserts that reconsideration and reversal of the Court's patent ineligibility judgment, as to Claim 1 of the '359 Patent, is appropriate because: (1) the Federal Circuit has recently issued new controlling authority regarding the first step of the test for patent eligibility, Enfish v. Microsoft Corporation, 822 F.3d 1327 (Fed. Cir. 2016); and (2) subsequent evidence produced during the inequitable conduct trial was substantially different than the evidence available at the time

the Court considered S&N's Motion for Judgment on the Pleadings. CertusView's Br. in Supp. of Mot. for Partial Recons., 1-2, ECF No. 534. With respect to the Enfish decision, S&N argues in response that CertusView has not demonstrated that such decision constitutes a "contrary decision of law," such that reconsideration is warranted, and that, even if the Court were to reconsider its ruling regarding Claim 1 of the '359 Patent, Enfish does not compel the Court to reach a different resolution of S&N's Motion for Judgment on the Pleadings. See Resp. to CertusView's Mot. for Partial Recons., 8-12, ECF No. 536. Further, with respect to the bench trial evidence, S&N argues that such evidence is irrelevant to reconsideration of S&N's prior Motion for Judgment on the Pleadings and that the evidence presented at trial is not "substantially different" from the evidence available at the time the Court considered such Motion. Id. at 20-22. The Court will consider each of CertusView's arguments in favor of reconsideration in turn.

### A. New Legal Authority

As noted above, CertusView argues that reconsideration of the Court's judgment of patent ineligibility for Claim 1 of the '359 Patent is warranted due to the Federal Circuit's recent decision in Enfish. CertusView, however, has not demonstrated that reconsideration is warranted because a "controlling authority has [] made a contrary decision of law applicable to

12

the issue." Sejman, 845 F.2d at 69. Further, even if the Court were to reconsider its patent ineligibility ruling on Claim 1 of the '359 Patent, CertusView has not demonstrated that the Enfish decision dictates a different result.

The Federal Circuit issued its ruling in Enfish on May 12, 2016, finding that Enfish's patent claiming a "self-referential" database, a logical model database that can store and define the relevant information within a single table, was eligible for patenting. Enfish, 822 F.3d at 1332, 1339. In determining that such patent claimed patent-eligible subject matter, the Federal Circuit applied the two-step Alice framework. However, in discussing step one, the Federal Circuit clarifies the distinction between patent claims which are directed to patent-eligible subject matter, that is, claims which are "directed to a specific improvement to the way computers operate," and patent claims which are directed to an "abstract idea" "for which computers are invoked merely as a tool. Id. at 1336.

With respect to such "directed to" inquiry, the Federal Circuit stated:

> The "directed to" inquiry, therefore, cannot simply ask whether the claims involve a patent-ineligible concept, because essentially every routinely patent-eligible claim involving physical products and actions involves a law of nature and/or natural phenomenon—after all, they take place in the physical world. Rather, the "directed to" inquiry applies a stage-one filter to claims, considered in light of the specification, based on whether "their character as a

13

whole is directed to excluded subject matter."
[(quoting Internet Patents Corp. v. Active Network,
Inc., 790 F.3d 1343, 1346 (Fed. Cir. 2015)) (citing
Genetic Techs. Ltd. v. Merial L.L.C., 818 F.3d 1369,
1375 (Fed. Cir. 2016))].

The Supreme Court has suggested that claims
"purport[ing] to improve the functioning of the
computer itself," or "improv[ing] an existing
technological process" might not succumb to the
abstract idea exception. [citing (Alice, 134 S. Ct. at
2358-59)]. . . .

We do not read Alice to broadly hold that all
improvements in computer-related technology are
inherently abstract and, therefore, must be considered
at step two. Indeed, some improvements in computer-
related technology when appropriately claimed are
undoubtedly not abstract, such as a chip architecture,
an LED display, and the like. Nor do we think that
claims directed to software, as opposed to hardware,
are inherently abstract and therefore only properly
analyzed at the second step of the Alice analysis.
Software can make non-abstract improvements to
computer technology just as hardware improvements can,
and sometimes the improvements can be accomplished
through either route. We thus see no reason to
conclude that all claims directed to improvements in
computer-related technology, including those directed
to software, are abstract and necessarily analyzed at
the second step of Alice, nor do we believe that Alice
so directs. Therefore, we find it relevant to ask
whether the claims are directed to an improvement to
computer functionality versus being directed to an
abstract idea, even at the first step of the Alice
analysis.

For that reason, the first step in the Alice inquiry
in this case asks whether the focus of the claims is
on the specific asserted improvement in computer
capabilities (i.e., the self-referential table for a
computer database) or, instead, on a process that
qualifies as an "abstract idea" for which computers
are invoked merely as a tool. As noted infra, in
Bilski and Alice and virtually all of the computer-
related § 101 cases we have issued in light of those
Supreme Court decisions, it was clear that the claims

> were of the latter type—requiring that the analysis
> proceed to the second step of the Alice inquiry, which
> asks if nevertheless there is some inventive concept
> in the application of the abstract idea. [(citing
> Alice, 134 S. Ct. at 2355, 2357-59)]. In this case,
> however, the plain focus of the claims is on an
> improvement to computer functionality itself, not on
> economic or other tasks for which a computer is used
> in its ordinary capacity.

Id. at 1335-36. Based on this application of step one of the

Alice framework, the Federal Circuit found that the Enfish

patent claims were not "directed to" an abstract idea, because

such claims did not present a "situation where general-purpose

computer components were added post-hoc to a fundamental

economic practice or mathematical equation." Id. at 1339.

Instead, the Federal Circuit found that the Enfish patent

claimed patent-eligible subject matter because it was "directed

to a specific improvement to the way computers operate, embodied

in the self-referential table."[6] Id. at 1336.

---

[6] CertusView argues that such language creates a new standard for
determining whether a patent claim satisfies the first step of the
Alice framework. That is, CertusView argues, a claim satisfies the
first step of the Alice framework if such claim "is 'directed to a
specific implementation of a solution to a problem in the [utility
industry]'" and "it 'improve[s] an existing technological process.'"
CertusView's Br. in Supp. of Mot. for Partial Recons. at 9 (quoting
Enfish, 822 F.3d at 1335, 1339). CertusView's argument captures part
of the Enfish holding, but only goes so far. First, as discussed
below, while Enfish clarifies how a court should consider prior art,
the Enfish decision does not support the proposition that "improv[ing]
an existing technological process" is always sufficient to satisfy
step one of the Alice framework. See Enfish, 822 F.3d at 1339
(explaining that "there may be close calls about how to characterize
what the claims are directed to," and "[i]n such cases, an analysis of
whether there are arguably concrete improvements in the recited
computer technology could take place under step two"). Further, the
language "improv[ing] an existing technological process" is drawn from

15

The Enfish decision, and other recent decisions from the Federal Circuit, have also clarified how a court might consider prior art, and a claimed invention's improvement to prior art, during step one of the Alice framework.   As described above, this Court determined in its Section 101 Opinion and Order that review of prior art is not necessary for a determination that a claim is "directed to" patent-eligible subject matter. Nonetheless, the Federal Circuit stated in Enfish that review of prior art may "bolster" such conclusion.   See Enfish, 822 F.3d at 1337 ("[O]ur conclusion that the claims are directed to an improvement of an existing technology is bolstered by the

___

the Alice decision, 134 S. Ct. at 2358, and the Diehr decision, 450 U.S. at 178, both of which the Court considered in determining that the asserted claims of the Patents-in-Suit were directed to patent-ineligible subject matter.   Sect. 101 Op. & Order at 34-37.   Second, the Enfish decision specifically addresses improvements to computer functionality and such opinion cannot be stretched to support CertusView's suggestion that patent claims "directed to a specific implementation of a solution to a problem in [any industry]" are sufficient to satisfy step one of the Alice framework.   See Elec. Power Grp., LLC v. Alstom S.A., ___ F.3d ___, No. 15-1778, 2016 WL 4073318, at *4 (Fed. Cir. Aug. 1, 2016) (explaining that the claims at issue in Enfish "focused not on asserted advances in uses to which existing computer capabilities could be put, but on a specific improvement—a particular database technique—in how computers could carry out one of their basic functions of storage and retrieval of data" (citing Enfish, 822 F.3d at 1335-36)); Visual Memory LLC v. NVIDIA Corp., No. 1:15-cv-789, 2016 WL 3041847, at *4 (D. Del. May 27, 2016) (unpublished) ("Enfish is thus best understood as a case which cautions against oversimplification during step one of Mayo/Alice, rather than a case which exempts from § 101 scrutiny all patents which purport to improve the functioning of a computer." (citing In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 613 (Fed. Cir. 2016))).   As discussed below, consideration of prior art, and specific claim limitations which address problems in prior art, are of limited relevance during step one of the Alice framework.

specification's teachings that the claimed invention achieves other benefits over conventional databases, such as increased flexibility, faster search times, and smaller memory requirements."). However, "'in other cases involving computer-related claims, there may be close calls about how to characterize what the claims are directed to,'" and in such cases, "'an analysis of whether there are arguably concrete improvements in the recited computer technology could take place under step two.'" Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC, ___ F.3d ___, No. 15-1763, 2016 WL 3514158, *5 (Fed. Cir. June 27, 2016) (quoting Enfish, 822 F.3d at 1339). While the Federal Circuit "sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed," consideration of the specific claim limitations should be deferred to the Alice step two analysis when "the claims and their specific limitations do not readily lend themselves to a step[ ]one finding that they are directed to a nonabstract idea." Id. (citing Enfish, 822 F.3d at 1339, as an example of a case that did not present a "close call[] about how to characterize what the claims are directed to"). Thus, while Enfish and other recent cases explain how consideration of prior art and specific claim limitations may be part of the Alice step one analysis, such consideration is not always necessary for a finding of patent-eligibility. Further, both the Federal

17

Circuit and the Supreme Court have "found it sufficient to compare claims at issue to those claims already found to be directed to an abstract idea in previous cases" to determine patent eligibility. Enfish, 822 F.3d at 1334 (citing Alice, 134 S. Ct. 2357; OIP Techs., Inc. v. Amazon.com, Inc., 788 F.3d 1359, 1362 (Fed. Cir. 2015)); accord Elec. Power Group, LLC v. Alstom S.A., ___ F.3d ___, No. 15-1778, 2016 WL 4073318, *4-5 (Fed. Cir. Aug. 1, 2016); Grp. Lending Tree, LLC v. Zillow, Inc., ___ F. App'x ___, No. 14-1435, 2016 WL 3974203, *3 (Fed. Cir. July 25, 2016) (unpublished); In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 613 (Fed. Cir. 2016).

Thus, the Court finds that the Enfish decision is not a "contrary decision of law," warranting reconsideration of the Court's Section 101 Opinion and Order. Instead, the Enfish decision merely applies step one of the Alice framework to patent claims addressing computer functionality and explains the difference between patent-eligible claims directed to technological improvements of computer functionality and patent-ineligible claims directed to "abstract ideas" which employ computers as only a tool.

However, even if the Court were to reconsider its earlier ruling regarding patent eligibility, the Enfish decision does not suggest the Court should alter such ruling. Claim 1 of the '359 Patent is directed to a method for generating a "searchable

electronic record of a locate operation," that is, "one or more computer-readable files that include some or all of the information regarding a locate operation," Markman Opinion and Order at 58, "performed by a locate technician." See '359 Patent, Col. 17:53-55.  As detailed in the Court's Section 101 Opinion and Order, the elements in Claim 1, distilled to their simplest form, recite:

> A) electronically receiving an aerial image of the dig area, with such image displayed, at least in part on a display device; B) adding to such image a digital representation of a physical locate mark; and C) electronically transmitting and/or storing a computer readable file that includes some or all of the information regarding a locate operation, with such computer readable file comprising the aerial image to which at least one digital representation of a physical locate mark has been added and a data set including a set of geographic points, along a marking path, including geographical coordinates responding to physical locate marks, the property address associated with the physical locate marks, a timestamp of when the locate operation occurred, the name of the locate technician, the name of the company that performed the locate operation, and a ticket number associated with such operation.

Sect. 101 Op. & Order at 71-72 (citing '359 Patent, Col. 17:53-18:21).  Considering carefully the specific language of the elements, Claim 1 of the '359 Patent details the "process of receiving information, in the form of the aerial image, adding additional information to it, in the form of the digital representation of the physical locate mark, and then storing

19

such combined information in a computer readable file with other information related to the locate operation." Id. at 72.

In contrast to the patent claims at issue in Enfish, that were "directed to a specific improvement to computer functionality," Claim 1 of the '359 Patent is closer to the kind of patent-ineligible claims that merely "add conventional computer components to well-known business practices," and "recite[s] generalized steps to be performed on a computer using conventional computer activity." Enfish, 822 F.3d at 1338 (citations omitted). Generally, claims that recite generalized steps to be performed on a computer using conventional computer activity, Enfish explains, are directed to abstract ideas. Id. at 1337-38; accord Elec. Power Grp., LLC, 2016 WL 4073318 at *3-4 ("Information as such is an intangible," thus, "collecting information" is "within the realm of abstract ideas"; further "merely presenting the results of abstract processes of collecting and analyzing information, without more (such as identifying a particular tool for presentation), is abstract as an ancillary part of such collection and analysis" (internal citations and quotations omitted)). Further, unlike the patent-eligible claims at issue in Enfish, which were "directed to specific implementation of a solution to a problem in the software arts," Enfish, 822 F.3d at 1339, Claim 1 of the '359 Patent is directed to patent-ineligible subject matter because

the technological solution such claim purports to advance is the process of gathering and saving information of a specified kind, related to a locate operation, and "not any particular assertedly inventive technology for performing those functions." Elec. Power Grp., 2016 WL 4073318 at *4; accord In re TLI Commc'ns LLC Patent Litig., 823 F.3d 607, 612 (Fed. Cir. 2016) (finding patent claiming "a method for recording, communicating and administering [a] digital image" to be directed to an abstract concept because such claims are "directed to the use of conventional or generic technology in a nascent but well-known environment, without any claim that the invention reflects an inventive solution to any problem presented by combining the two" (citing Enfish, 822 F.3d at 1335)). Therefore, the Court's finding that Claim 1 of the '359 patent "is directed towards the abstract idea of creating a computer-readable file to store information, as applied in the particular technological environment of conducting a locate operation," Sect. 101 Op. & Order at 71, is unchanged by the Enfish decision.[7]

---

[7] CertusView also argues that, as a result of the Enfish decision, the Court should reconsider its patent-ineligibility ruling regarding Claim 1 of the '359 Patent under step two of the Alice framework. See CertusView's Br. in Supp. of Mot. for Partial Recons. at 19-25. However, as Enfish did not discuss step two of the Alice framework, and CertusView cites no "controlling authority [that] has since made a contrary decision of law" applicable to step two of the Alice framework, the Court need not revisit its ruling that Claim 1 of the '359 Patent does not claim patent-eligible subject matter under step two of the Alice framework. See Evans, 148 F. Supp. 3d at 544 ("[T]he court should not reevaluate the basis upon which it made a prior

21

### B. Trial Evidence

CertusView also argues that reconsideration of the Court's judgment of patent ineligibility regarding Claim 1 of the '359 Patent is warranted due to new evidence heard during the bench trial of S&N's inequitable conduct counterclaim.  However, CertusView has not demonstrated that such evidence is relevant to reconsideration of the Court's ruling on S&N's Motion for Judgment on the Pleadings.  Further, CertusView has not demonstrated that reconsideration is warranted on the grounds that the subsequent bench trial in this case produced evidence that was "substantially different" from the evidence available at the time the Court resolved S&N's Motion for Judgment on the Pleadings. Sejman, 845 F.2d at 69.

S&N filed its Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), seeking a finding of patent ineligibility as to the asserted claims of the Patents-in-Suit.  "On a motion for judgment on the pleadings made pursuant to Rule 12(c), only the pleadings are considered," and the exhibits which are part of such pleadings. A. S. Abell Co. v. Balt. Typographical Union No. 12, 338 F.2d 190, 193 (4th Cir. 1964); accord Thomas Daniels Agency, Inc. v. Nationwide Ins. Co. of Am., 122 F. Supp. 3d 448, 451 (D.S.C. 2015)

---

ruling, if the moving party merely seeks to reargue a previous claim." (citation omitted)).

(citations omitted); Dobson v. Cent. Carolina Bank & Trust Co.,
240 F. Supp. 2d 516, 519 (M.D.N.C. 2003) (citations omitted).
As the Court explained in its Section 101 Opinion and Order
"[s]ection 101 [patent] eligibility is a question of law" that
"hinges on the claims of the Patents-in-Suit." Sect. 101 Op. &
Order at 28 (citing Alice, 134 S. Ct. at 2355; In re Roslin
Inst. (Edinburgh), 750 F.3d 1333, 1335 (Fed. Cir. 2014)).  In
such Opinion and Order, the Court also recognized that certain
patent-eligibility determinations may not be appropriate for
resolution in a motion for judgment on the pleadings, such as
when a motion for judgment on the pleadings is raised prior to
claim construction or when such motion relies on resolution of a
factual dispute.  Id. at 27 (citing Bancorp Servs., LLC v. Sun
Life Assurance Co. of Can., 687 F.3d 1266, 1273 (Fed. Cir.
2012); Loyalty Conversion Sys. Corp. v. Am. Airlines, Inc., 66
F. Supp. 3d 829, 834 (E.D. Tex. 2014)).  However, the Court
found that because claim construction had already taken place in
this case, and because "it need not rely on any factual matter
other than that presented in the specifications of the Patents-
in-Suit," which were attached as exhibits to the First Amended
Complaint, S&N's Motion for Judgment on the Pleadings was the
appropriate vehicle to determine the legal issue of patent
eligibility. Id. at 29-30.

     CertusView has not demonstrated that the bench trial

produced any evidence, regarding Claim 1 of the '359 Patent,
that would be relevant to the Court's resolution of S&N's Motion
for Judgment on the Pleadings regarding patent eligibility and
that the Court did not have at the time it considered such
Motion.[8]   Instead, the trial evidence that CertusView relies upon
in support of reconsideration addresses the differences between
CertusView's       e-Sketch       invention       and       CertusView's
characterization of the prior art--a factual dispute that the
Court specifically noted, and found to be irrelevant, in the
following discussion contained in its ruling on S&N's Motion for
Judgment on the Pleadings:

> Importantly, the Court further concludes that there
> are no factual disputes that could affect the Court's
> analysis of the issue of section 101 validity.   The
> only factual dispute that Plaintiff has brought to the
> Court's attention in opposition to Defendants' motion
> concerns    Defendants'    characterization    of    a
> "conventional" locate operation, including Defendants'
> chart comparing such an operation to Claim 1 of the
> '204 Patent.   However, the Court need not resolve the
> factual dispute between the parties over how locate
> technicians conduct "conventional" locate operations

---

[8] As S&N notes in its Response to CertusView's Motion for Partial
Reconsideration, CertusView has not provided the Court with any case
where a court has granted a motion to reconsider a finding of patent
ineligibility due to the presentation of additional evidence at trial.
Resp. to CertusView's Mot. for Partial Recons. at 20-21.   Instead, the
primary case cited by CertusView recognizes merely, as the Court does
above, that claim construction can be helpful to understanding patent
claims prior to ruling on section 101 patent ineligibility.   See
Bancorp Servs., LLC, 687 F.3d at 1274.   However, as the trial evidence
cited by CertusView was considered by the Court during resolution of
S&N's Motion for Judgment on the Pleadings, the Court need not address
whether any trial evidence may serve as the basis for reconsideration
of a determination of patent eligibility.

because that dispute does not affect the Court's conclusion that the Patents-in-Suit do not claim patent-eligible subject matter. Therefore, the Court will decline to exercise its discretion to consider matters outside the pleadings in resolving this Rule 12(c) motion. The Court finds that such decision is appropriate because the issue of section 101 validity is adequately presented—and the Court can adequately resolve it—without considering the disputed facts outside the pleadings. To the extent that Defendants' briefs rely on factual information outside the pleadings, including the chart contained in Defendants' memorandum in support of its motion, the Court will not consider such materials in resolving this motion. Rather, to the extent the Court considers the matter at all, the Court will view the facts regarding such "conventional" locate operations in the light most favorable to the Plaintiff based on the facts presented in Plaintiff's pleadings and the specifications of the patents-in-suit that Plaintiff has incorporated therein.

Sect. 101 Op. & Order at 29-30. Therefore, CertusView has not demonstrated that the bench trial in this matter presented any new evidence relevant to the Court's resolution, or its reconsideration, of S&N's Motion for Judgment on the Pleadings.

Further, even if the Court were to consider new evidence presented at the bench trial in this matter, CertusView has not demonstrated that such trial "produce[d] substantially different evidence" from that which was available when the Court determined that Claim 1 of the '359 Patent was ineligible for patenting. CertusView highlights two particular factual issues adduced at trial that it argues are "substantially different" from the evidence that the Court previously considered. First, CertusView argues that the evidence presented during the bench

25

trial demonstrated that a conventional paper manifest of a locate operation did not include geographical coordinates, and thus, such information is not, as the Court found in its Section 101 Opinion and Order, "the same sort of information that ordinarily would be included in a paper manifest." Sect. 101 Op. & Order at 76. However, contrary to CertusView's assertion, the Court considered in its Opinion and Order the presence or absence of geographical coordinates in conventional paper manifests of a locate operation and found that such evidence did not affect the Court's decision. Specifically, the Court noted that "some of the information, for example <u>the geographic coordinates corresponding to physical locate marks</u>, included in element C in the data set stored in the computer-readable file contains greater detail than, or <u>might otherwise be absent from</u>, paper manifests created during the conventional method of documenting a locate operation." Sect. 101 Op. & Order at 76 (emphasis added). However, even considering this additional information that CertusView's e-Sketch invention might document and save, the Court found that "such additional information does not transform the method of Claim 1 [of the '359 Patent] from an attempt to claim the abstract idea of creating a computer-readable file to store information, as applied in the particular technological environment of conducting a locate operation, because such information is the same sort of information that

ordinarily would be included in a paper manifest." Id. at 76. Thus, evidence regarding a conventional paper manifest, as introduced at trial, is not "substantially different" from the evidence that the Court considered in resolving S&N's Motion for Judgment on the Pleadings.

Second, CertusView argues that the evidence presented during the bench trial demonstrated that the e-Sketch product improved documentation and record-keeping of locate operations. Again, CertusView does not prove that such trial evidence is "substantially different" from the evidence that the Court considered in resolving S&N's Motion for Judgment on the Pleadings. In its Section 101 Opinion and Order, the Court reviewed the state of conventional, prior art, locate operations and the flaws of documenting and recording a conventional locate operation, as discussed in the specifications of the Patents-in-Suit. Sect. 101 Op. & Order at 5-7. The evidence adduced during the bench trial perhaps elucidates the conventional locate operation procedures, and the goals of the e-Sketch product in improving on such procedures, but such evidence does not contradict nor differ substantially from the evidence that the Court considered and discussed in its Section 101 Opinion and Order. Further, as the Court explained in a footnote of its Opinion and Order, while the asserted claims of the Patents-in-Suit may well have value as an improvement to the locate

27

operation industry, "this Court does not inquire into the value or effect of the claimed invention to determine whether such invention is patent-eligible. <u>Even if the invention claimed</u> <u>represents the development of a new process that solves a</u> <u>problem existing in the art, that, alone does not render it</u> <u>patent eligible</u>." <u>Id.</u> at 50 n.11 (emphasis added) (citing <u>Amdocs</u>, 56 F. Supp. 3d at 825).

Therefore, CertusView has not demonstrated that additional evidence adduced at the bench trial in this matter is relevant to the Court's prior determination that Claim 1 of the '359 Patent is ineligible for patenting under 35 U.S.C. § 101 or to reconsideration of such ruling. Further, even if evidence presented during the bench trial were relevant, CertusView has not demonstrated that the bench trial in this matter adduced "substantially different" evidence such that reconsideration of the Court's § 101 ruling is warranted.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Reconsideration of the Court's Judgment of Patent Ineligibility under 35 U.S.C. § 101, ECF No. 533, is **DENIED**.

As no pertinent issues remain for resolution on Plaintiff's First Amended Complaint, ECF No. 55, and as the Court has previously entered judgment on Defendants' declaratory judgment counterclaim for inequitable conduct, <u>see</u> ECF No. 542, the Clerk

is **REQUESTED** to enter final judgment in Defendants' favor on Plaintiff's First Amended Complaint pursuant to Rule 58 of the Federal Rules of Civil Procedure.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED**.

/s/ _____

Mark S. Davis
United States District Judge

Norfolk, Virginia
August 10 , 2016