**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CERTUSVIEW TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:13-cv-346 (MSD) (TEM) |
| | § | |
| S&N LOCATING SERVICES, LLC and | § | |
| S&N COMMUNICATIONS, INC. | § | |
| | § | Jury Trial Demanded |
| Defendants. | § | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' RENEWED MOTION
FOR EXCEPTIONAL CASE FINDING AND ATTORNEYS' FEES**

Pursuant to Federal Rule of Civil Procedure 54(d)(2) and 35 U.S.C. § 285, S&N

Communications, Inc. and S&N Locating Services, LLC ("S&N" or "Defendants") file this

Memorandum of Law in Support of Defendants' Renewed Motion for Exceptional Case Finding

and Attorneys' Fees (the "Motion") against CertusView Technologies, LLC ("CertusView"), and

respectfully state as follows:

## I.      INTRODUCTION

A case is "exceptional" under 35 U.S.C. § 285 when a party (1) asserts objectively

unreasonable patent claims or (2) conducts litigation in an unreasonable manner.   Here,

CertusView did both of these things, making this a case that truly stands out from others.  *Octane*

*Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).

CertusView knowingly filed and maintained this action for infringement of patent claims

drawn to the abstract idea of documenting a locate operation—a process that has long been

performed by hand—even though its claims were facially ineligible from the outset.

CertusView's claimed invention in each of the asserted patents is to simply implement that

abstract idea using generic computer components for their intended purpose. Before this lawsuit was filed, controlling authority made clear that such claims were not eligible for patent protection.[1] Since filing this action, it was made even more clear that such claims are directed to unpatentable subject matter.[2] As a result, CertusView's continued assertion of the claims-in-suit in the face of such authority was objectively unreasonable. CertusView had an untenable legal position *ab initio*. In fact, during oral argument on appeal, one of the Federal Circuit judges remarked that he did not see how the concept of putting information on a map as recited in CertusView's claims was eligible "under any of our precedent, under any of the Supreme Court precedent[.]" (Oral Argument Tr. 13:21-13:55, available at http://www.cafc.uscourts.gov/oral-argument-recordings (emphasis added).) Tellingly, the Federal Circuit affirmed this Court's § 101 order without an opinion the very next day after oral argument.

CertusView also knowingly drove up fees during the pendency of this case by asserting an inordinate number of largely redundant claims and failing to timely reduce them. This is consistent with a shameful strategy touted by CertusView's prior counsel in this case in a published article:

> Savvy plaintiffs can leverage the complexity of a large number of patents which may themselves have a large number of claims . . . to ***drastically increase the costs of litigation***. ***This can often be the case even when the scope of the asserted claims is largely redundant.***

(Ruben J. Rodrigues, *Limiting Patent Claims and Prior Art (with or without a Model Order*, ECF No. 258-1 (emphasis added).)

---

[1] ECF No. 250 at 94-95 n.17, citing *Bilski v. Kappos,* 561 U.S. 593 (2010).
[2] *Alice Corp. v CLS Bank Int'l.*, 134 S. Ct. 2347 (2014).

In view of CertusView's baseless infringement claims and its litigation misconduct, which has been fully briefed to this Court in previous motion practice,[3] this matter constitutes an exceptional case, and S&N is entitled to recover its reasonable and necessary attorneys' fees as a result.

## II.    ARGUMENT AND AUTHORITIES

### A.    This case is exceptional because CertusView asserted facially ineligible patent claims for more than a year and a half.

The Supreme Court recently lowered the previous "overly rigid" standard for what constitutes an "exceptional" case, holding that:

> [A]n "exceptional" case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014).   The Supreme Court also lowered the applicable burden of proof, so now litigants can prove their entitlement to fees by a preponderance of the evidence.   *Id.* at 1758.   Under that new standard, numerous patent cases have been deemed exceptional under 35 U.S.C. § 285.[4]   Several courts have held that a party who asserts patent claims that are plainly ineligible under pre- and post-*Alice* decisions is subject to an exceptional case finding.   *Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July 5, 2017);

---

[3] In the interest of brevity, S&N will not repeat the facts and legal grounds that constitute CertusView's litigation misconduct. But rather, S&N incorporates the following motions already on file with the Court by reference:  ECF Nos. 136, 139, 177, 258, 550.

[4] *See, e.g., Lumen View Tech. LLC v. Findthebest.com, Inc.*, 811 F.3d 479 (Fed. Cir. 2016);  *Intex Rec. Corp. v. Team Worldwide Corp.*, No. No. 04-1785 (PLF), 2015 U.S. Dist. LEXIS 2847 (D.D.C. Jan. 9, 2015);  *Bayer CropScience AG v. Dow AgroSciences LLC*, 851 F.3d 1302 (Fed. Cir. 2017);  *Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 U.S. Dist. LEXIS 168380 (N.D. Cal. Dec. 4, 2014);  *Yufa v. TSI Inc.*, No. 09-cv-01315-KAW, 2014 U.S. Dist. LEXIS 113148 (N.D. Cal. Aug. 14, 2014);  *Falana v. Kent State Univ.*, No. 5:08cv720, 2014 U.S. Dist. LEXIS 105777 (N.D. Ohio July 31, 2014);  *Cognex Corp. v. Microscan Sys.*, No. 13-cv-2027 (JSR), 2014 U.S. Dist. LEXIS 91203 (S.D.N.Y. June 29, 2014);  *Intellect Wireless, Inc. v. Sharp Corp.*, No. 10 C 6763, 2014 U.S. Dist. LEXIS 73653 (N.D. Ill. May 30, 2014);  *Classen Immunotherapies, Inc. v. Biogen Idec*, No. WDQ-04-2607, 2014 U.S. Dist. LEXIS 67169 (D. Md. May 14, 2014).

*Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232 (S.D.N.Y. 2016); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, No. 14-448-GMS, 2016 U.S. Dist. LEXIS 70345, at *8-9 (D. Del. May 31, 2016); *Source Search Techs. LLC v. Kayak Software*, No. 11-3388, 2016 U.S. Dist. LEXIS 43326, at *20-21 (D.N.J. Mar. 31, 2016); *Edekka LLC v. 3Balls Co.*, No. 2:15-cv-541, 2015 U.S. Dist. LEXIS 168610, at *11-17, (E.D. Tex. Dec. 17, 2015).

      *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, is a case on point.  The patent holder filed its lawsuit on April 8, 2014, long after *Bilski* and before the *Alice* decision.  The complaint asserted claims covering "a method for exchanging financial obligations using a computer system as a third-party intermediary and a computer readable medium containing program code for performing the method of exchanging obligations."  2016 U.S. Dist. LEXIS 70345, at *2.  The motion resulting in dismissal was filed seven months after *Alice* was decided.  *Id.* at *10.  The court held that the patent claims were drawn to an abstract idea, and that the claims "merely added a generic computer implementation," which was insufficient even under *Bilski* to establish patentability.  *Id.* at *5-6.  The court further held that, especially after the *Alice* decision, the patent owner "was on notice that its claims, much like the claims in *Bilski* and *Alice*, . . . were objectively ineligible under § 101."  *Id.* at *6-7.  The court noted that a party has continuing obligation to "reevaluate its case" in light of new case law.  *Id.* at *7 (citing *Taurus IP, LLC v. Daimler-Chrysler Corp.*, 726 F.3d 1306 (Fed. Cir. 2013) ("[A] party cannot assert baseless infringement claims and must continually assess the soundness of pending infringement claims.")).  Because the claims were objectively without merit, the court found that the patent owner's continued assertion of those claims warranted an exceptional case finding and award of attorneys' fees.  *Id.*  The same result is warranted in this matter.

This case, like *Inventor Holdings*, was filed after *Bilski* and before *Alice*. The motion for judgment on the pleadings in this case was filed in October 2014, four months after *Alice*, similar to the motion in *Inventor Holdings*, which was filed seven months after *Alice*. Like the court in *Inventor Holdings*, this Court found all the asserted claims unpatentable not only under *Alice* but also under the prior law, *Bilski*. (ECF No. 250 at 94-95, n.17.) As was found by the court in *Inventor Holdings*, at least as of the *Alice* decision, CertusView was on notice that the asserted claims "covered an abstract idea and that the introduction of a computer into the claims did not alter the analysis." *Inventor Holdings,* 2016 U.S. Dist. LEXIS 70345, at *6-7. And while CertusView may argue that *Inventor Holdings* is distinguishable because the abstract ideas in *Bilski* and *Inventor Holdings* were nearly identical, CertusView's claims did not need to be identical to the abstract idea in *Bilski* in order for *Bilski* to serve as a governing precedent to guide CertusView, as both this Court and the Federal Circuit have noted. (*See* ECF No. 250; Oral Argument Tr. 13:21-13:55.)

It is undisputed that the process claimed by the Patents-in-Suit, *i.e.*, recording a locate operation, was and could still be done by hand. (*See, e.g.*, United States Patent No. 8,290,204 (the "'204 Patent") col. 2:39-47, ECF No. 1-1.) Indeed, the Court held that the asserted claims are directed to the abstract idea of "taking input information, in the form of an image; displaying it; adding additional information to it—the representation of the physical locate marks; and storing such information in a computer readable file, as applied in the particular technological environment of conducting locate operations." (ECF No. 250 at 39.) The Court further held that the asserted claims were drawn to an abstract idea based on the Supreme Court's decision in *Bilski v. Kappos* from 2010, which itself quoted and relied upon precedent dating back over 20 years. (*Id.*;) *Bilski*, 561 U.S. 593, 604 (2010) (quoting *Diamond v. Diehr*, 450 U.S. 175, 191-92

(1981).)   Under the *Mayo* test, which also pre-dates the lawsuit, for an abstract idea to be

patentable, the claimed elements must transform it into something inventive, which takes more

than the disclosures simply adding the words "apply it."   (Ct.'s Op. & Order at 37, ECF No.

250;)   *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1294 (2012).

Implementing the abstract idea using a general purpose computer has also been consistently held

by the Supreme Court to be non-transformative for at least over 40 years.   *See Gottschalk v.*

*Benson*, 409 U.S. 63, 71 (1972).   These were well established and controlling legal concepts long

before this suit was filed.

Indeed, like the claims in *Alice*, CertusView's claims recite nothing more than generic

data-gathering steps performed by generic computer components:

- '204 Patent, claim 1:  "electronically receiving . . ."; "processing the source data so as to display . . ."; "electronically transmitting . . ."

- '204 Patent, claim 21:  "a communication interface"; "a display device"; "a memory to store processor-executable instructions"; "a processing unit . . ."

- '359 Patent, claim 1:  "electronically receiving . . ."; "adding to the displayed aerial image . . ."; "electronically transmitting and/or electronically storing . . ."

- '344 Patent, claim 13:  "electronically receiving . . .";  "combining the electronically received image with image-related information . . ."; "electronically transmitting . . ."

- '341 Patent, claim 1:  "displaying on a display device at least one digital image . . ."; "electronically transmitting and/or electronically storing . . ."

- '001 Patent, claim 1:  "a processor . . ."; "a display device . . ."

- "The communication interface 370 may include any transceiver-like mechanism that enables user device 210 to communicate with other devices and/or systems." (*E.g.*, '204 Patent, 18:15-17;  '359 Patent, 6:27-29;  '344 Patent, 6:23-25;  '341 Patent, 18:26-28.)

- "The memory 330 may include a random access memory (RAM), a read only memory (ROM), a memory card, a magnetic and/or optical recording medium and

its corresponding drive, or another type of memory device." (*E.g.*, '204 Patent, 17:37–40; '359 Patent, 5:54-57; '344 Patent, 5:50-53; '341 Patent, 17:48-51.)

- "The processors 500 and 1340 can be general purpose computers. Alternatively, they can also be special purpose computers, programmed microprocessors or microcontrollers and peripheral integrated circuit elements, ASICs or other integrated circuits, hardwired electronic or logic circuits such as discrete element circuits, programmable logic devices such as FPGA, PLD, PLA or PAL or the like. In general, any device capable of executing code can be used to implement processors 500 and 1340. Local memories 400 and 1345 can be implemented with any type of electronic memory and/or storage device using any type of media, such as magnetic, optical or other media." ('001 Patent, 7:42-53.)

Additionally, the Patents-in-Suit repeatedly make clear that no particular software or hardware is required to perform the disclosed inventions:

- "Thus, implementations described herein are not limited to any specific combination of hardware circuitry and software." ('204 Patent, 18:38-40 and 19:29-31; '359 Patent, 6:50-52 and 7:38-40; '344 Patent, 6:46-48 and 7:37-39; '341 Patent, 18:49-51 and 19:40-42.)

- "It will be apparent that aspects, as described above, may be implemented in many different forms of software, firmware, and hardware in the implementations illustrated in the figures.  The actual software code or specialized control hardware used to implement these aspects is not limiting of the description provided herein.  Thus, the operation and behavior of the aspects were described without reference to the specific software code—it being understood that software and control hardware can be designed to implement the aspects based on the description herein." ('204 Patent, 33:5–14; '001 Patent, 7:58-67; '359 Patent, 17:27-36; '344 Patent, 17:16-25; '341 Patent, 33:13-22.)

CertusView also freely admitted that there were no transformative elements in the asserted claims.  Specifically, in deposition, Curtis Chambers testified that any generic computer could be used to implement the abstract concept recited in the claims:

Q. So -- I appreciate that. The -- so the processor itself, are we talking like an Intel processor that's included in a laptop? I mean –

. . .

THE WITNESS: It's a generic processor.

(Chambers Dep. 213:16-218:3, Aug. 21, 2014, ECF No. 259-18.)

Similarly, CertusView's own expert testified repeatedly that CertusView did not invent any computer component for purposes of implementing the alleged invention, but that it could be implemented by applying it to generic computer equipment being used for its intended purpose:

Q. Okay. And, sir, Certusview did not invent digital maps; is that correct?
. . .
THE WITNESS: Certusview did not invent digital maps, I agree with that statement.

(Dymond Dep. 185:13-19, Nov. 18, 2014, ECF No. 259-57.)

Q. Sir, did Certusview invent annotating digital images?
. . .
THE WITNESS: No, they did not.
. . .
Q. Sir, did Certusview invent adding digital representations to digital images?
. . .
THE WITNESS: Adding digital representations on digital images, no.

(Dymond Dep. 186:7-17, Nov. 18, 2014, ECF No. 259-57.)

Q. Okay. And, sir, I'm just talking with regard to the patents at issue in this litigation and the ones that you have studied. What computer technology have they brought forward that did not exist previously?
. . .
THE WITNESS: Yeah, I don't think that the direction of the patents is towards an invention of a computer technology . . .

(Dymond Dep. 209:7-16, Nov. 18, 2014, ECF No. 259-57.)

Q. . . . Do the patents relate to a computer technology that was invented by Certusview?
. . .
THE WITNESS: . . . Certusview has not invented a particular computer technology. . . . So to answer your question, did Certusview invent computer technology? My answer is, no, they didn't invent a certain computer technology.

(Dymond Dep. 210:3-21, Nov. 18, 2014, ECF No. 259-57.)

Indeed, during claim construction, CertusView eschewed any attempt to tie the practice of the asserted claims to any type of instrumentality other than general purpose computer equipment, such as a laptop. (*E.g.*, ECF No. 121 pp. 67-76.) CertusView's expert, again, affirmed that position during his trial testimony:

Q. . . . So it was your opinion that S&N's software tool that their locators used on their laptops was all, in your opinion, that was needed to meet these claim elements across these 68 claims; is that correct?
A. That is what we were investigating.
Q. That was your opinion that you reached in your report, right?
A. To my -- the best of my recollection.

(Trial Tr. 1039:21-1040:3, ECF No. 502.)

Thus, CertusView has knowingly asserted claims that describe a manual process simply being implemented electronically using generic computing components. *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *6-7. Supreme Court precedent before this suit and a host of opinions after filing have squarely rejected such claims as unpatentable. *See Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014); *Bilski*, 561 U.S. 593 (2010); *buySAFE, Inc. v. Google*, Inc., 765 F.3d 1350, 1355 (Fed. Cir. 2014); *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 715-716 (Fed. Cir. 2014); *Content Extraction & Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1370-1371 (Fed. Cir. 2015); *OIP Techs., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363-1364 (Fed. Cir. 2015); *In re TLI Communs. LLC Patent Litig.*, 823 F.3d 607, 612-613 (Fed. Cir. 2016). As a result, CertusView has continued to assert objectively baseless patent claims, and this case is, therefore, truly exceptional. *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *6-7.

## B.   CertusView's motion for reconsideration was further evidence of its baseless § 101 position.

Over a year after the Court's order invalidating the asserted claims, CertusView filed a motion for reconsideration, seeking reversal as to just claim 1 of the '359 Patent. (Ct.'s Op. & Order of Aug. 10, 2016 at 1, ECF No. 545.) CertusView specifically argued that the Federal Circuit's holding in *Enfish LLC v. Microsoft Corp.*, constituted a controlling change in the law

because it held that claims directed to improving how a computer operates were not abstract. (*Id.* at 15.) CertusView then, by ignoring whole portions of the *Enfish* decision, argued that a new standard had been created, and that claims seeking to improve a problem in any industry were now patent eligible. (*Id.* at 15 n.6.) As the Court correctly held, however, "the *Enfish* decision specifically addresses improvements to computer functionality and such opinion cannot be stretched to support CertusView's suggestion." (*Id.*) Indeed, CertusView could not support an argument that its asserted claims were analogous to those at issue in *Enfish* because its own expert had already made clear that "I don't think that the direction of the patents is towards an invention of a computer technology." (Dymond Dep. 209:7-16, ECF No. 259-57.) It should also be noted that CertusView's current counsel of record was counsel of record for *Enfish LLC* and, thus, cannot claim ignorance of the scope or lack of application to this matter. *See Enfish LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016).

Moreover, CertusView's remaining arguments were either wholly without support or reiterated identical arguments and authorities the Court had already considered and rejected. (*See* Ct.'s Op. & Order of Aug. 10, 2016 at 21 n.7, 24-28, ECF No. 545;) *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) ("[C]ourts have awarded attorneys' fees under Section 285 where a party advances arguments that are particularly weak and lack support in the record or ***seek only to re-litigate issues the court has already decided***."); *Cognex Corp. v. Microscan Sys.*, No. 13-CV-2027 (JSR), 2014 U.S. Dist. LEXIS 91203, at *11 (S.D.N.Y. June 30, 2014) ("[D]efendants' post-trial motions simply relitigate issues that had already been decided by this Court during trial. . . . Defendants should be required to cover at least the portion of plaintiffs' attorneys' fees related to litigation tactics taken by defendants that have contributed unnecessarily to plaintiffs' expenses in defending its patent.") CertusView's

motion for reconsideration itself shows that less than due care was taken to "reevaluate" the merits of what was being argued.  The motion cited as a basis for reconsideration the *DDR Holdings* case, which was decided after briefing on the motion for judgment on the pleadings, as if *DDR Holding*s was new to the Court.  In fact, *DDR Holdings* was discussed in detail and distinguished in the Court's Opinion and Order ruling all asserted claims invalid under 35 U.S.C. § 101.  (ECF No. 250, at 59 n.15.)  This Court's careful treatment of *DDR Holdings* was ignored in the motion for reconsideration.  Further, as stated in this Court's ruling, which was sought to be reconsidered, the asserted claims were invalid not only under *Alice,* but also under the prior *Bilski* standard.   (ECF No. 250, at 94-95 n.17.)   CertusView's motion for reconsideration addressed, albeit without merit, ineligibility under *Alice*, but ignored the alternative holding of ineligibility under *Bilski*.

In sum, CertusView continued to assert baseless arguments in support of facially invalid patent claims, despite clear holdings from the Supreme Court and the Federal Circuit before and after the filing of this lawsuit that render those claims invalid.  *See Gottschalk*, 409 U.S. at 71; *Diamond*, 450 U.S. at 191-92;  *Bilski*, 561 U.S. at 604;  *Alice Corp. Pty. Ltd.*, 134 S. Ct. at 2355; *Ultramercial, Inc.*, 772 F.3d at 715-16.  For that reason alone, S&N is entitled to an exceptional case finding.  *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *6-7.

**C.     The weakness of its position is further shown by CertusView's arguments on appeal, which contradicted its arguments in this Court,  and were summarily rejected by the Federal Circuit.**

CertusView's arguments on appeal are further evidence of the weakness of CertusView's position with respect to § 101.  In an attempt to salvage its ineligible claims on appeal, CertusView made new claim construction arguments before the Federal Circuit based on this Court's trial order.  (*E.g.*, CertusView's Principal Appeal Br. at 33-51, attached hereto as Ex. A.)

But this Court did not construe any claims in its trial order as CertusView contended, and CertusView's new narrow claim construction arguments on appeal contradicted the broad claim construction arguments that CertusView previously advocated for during *Markman*. *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-3388 (NLH/KMW), 2016 U.S. Dist. LEXIS 43326 (D.N.J. Mar. 31, 2016) (finding case exceptional where party took flip-flopping positions).

As one example, during claim construction, CertusView argued, with respect to claim 1 of the '001 Patent, that the term location data could not be construed to mean geographic data because such a construction would be improperly narrow. (CertusView's Opening Cl. Construction Br. at 11-12, ECF No. 67.) In other words, CertusView argued to this Court that location data could include many different types of data, not just geographic data, and certainly could not be limited to geographic coordinates. In fact, during the *Markman* hearing, CertusView proposed an alternative broad construction of "data that identifies a geographic location" for location data. (Ct.'s Order of May 16, 2014 at 44, ECF No. 121.) The Court adopted that construction as advocated by CertusView. Remarkably, on appeal, CertusView argued that the trial court somehow erred by applying that construction during its § 101 analysis—the very construction previously sought by CertusView and accepted by this Court. (CertusView's Appellant's Br. at 36, Ex. A.) Before the appellate court, using a narrower claim construction never argued before the trial court, CertusView contended that claim 1 of the '001 Patent was somehow inventive because it purportedly required the recording of specific "geographic coordinates." (*Id.* at 37.) CertusView's appellate arguments, which directly contradict the arguments made to this Court, are indicative of the frivolous and untenable legal footing on which it maintained this suit, making it exceptional. Indeed, at oral argument, one of

the Federal Circuit judges even said that he did not see how the concept of putting information

on a map was eligible "under any of our precedent, under any of the Supreme Court precedent":

> **Judge Hughes**: . . . If they're all just adding information to a map, and we start from a
> premise that putting information on a map isn't an eligible idea, then it doesn't matter
> how many different steps or how you combine them, it's all just putting information on a
> map . . .

> **Tom Friel**: It's new information, so in Thales it was . . .

> **Judge Hughes**: But it's still information. It could be the newest information in the
> world, but putting information on a map is not an eligible concept. ***I don't see how
> under any of our precedent, under any of the Supreme Court precedent, that's at all
> eligible***. I mean you could add the local bar on this map because after they finish all their
> work they want to get a beer. That's new information. I bet nobody's ever put that kind
> of information on a map, but that can't make it a patent-eligible concept, can it?

> **Tom Friel**: I would agree with your honor . . .

(Oral Argument Tr. 12:43-14:09 (emphasis added).) Tellingly, the very next day after oral

argument, the Federal Circuit affirmed this Court's § 101 order without an opinion.

**D.     S&N is also entitled to an exceptional case finding in view of CertusView's
unreasonable litigation misconduct.**

CertusView's conduct during this litigation provides yet another basis for the Court to

find this case exceptional. *Octane Fitness*, 134 S. Ct. at 1756. CertusView's litigation and

discovery misconduct has been the subject of previous briefing on file with the Court. (*See, e.g.*,

ECF Nos. 258, 550.) Indeed, the Court held that CertusView improperly claimed privilege over

relevant documents that were clearly discoverable, and in the process of asserting a frivolous

privilege claim, CertusView made material misrepresentations to the Court. (*See, e.g.*, ECF Nos.

136, 139, 177, 258, 550.) It is worth noting again, however, that the documents improperly

withheld by CertusView included its corporate documents and assessments of relevant prior art.

In fact, knowing that S&N was asserting the TelDig references as prior art, CertusView withheld

its own documents concerning TelDig, in which its handsomely paid consultants concluded that

TelDig "appears similar to the eSketch concept," and "[a]t this time it does **appear** that TelDig is investing in solving problems that Dycom is interested in." (UQ0047791 (emphasis in original), ECF No. 258-7.)  CertusView's concealment of these, and other similar documents, is particularly egregious in this case given that CertusView, as noted above, was actively pursuing a very broad reading of the asserted claims.  (ECF Nos. 67, 90, 121; *see also* Trial Tr. 1039:21-1040:3, ECF No. 502.)  With such broad claim constructions being applied to the asserted claims, a jury could have certainly found that those were invalid in view of, among others, the TelDig prior art.  But had CertusView been successful in its efforts to conceal its documents, the jury potentially hearing its infringement claims would have never had the benefit of considering that evidence.  Such conduct certainly stands out from other matters that are properly litigated.  *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *6-7.

It is also worth noting again that CertusView executed a litigation strategy that its own counsel acknowledged to be inappropriate.  (*See* Ruben J. Rodrigues, *Limiting Patent Claims and Prior Art (with or without a Model Order*, ECF No. 258-1 (emphasis added).)  CertusView, as reflected in the motion practice on file with the Court, asserted an inordinate amount of claims initially, and importantly, refused to reasonably limit the number of asserted claims despite representing to the Court that it would do so.  The Court, in fact, expressly admonished CertusView for its improper conduct.  (ECF No. 159 ("[D]espite this direction from the Court, CertusView failed to reasonably limit its claims prior to the deadline for S&N to file its opening invalidity expert report.").)

While additional details concerning CertusView's litigation misconduct are already on file with the Court and incorporated herein by reference, ECF Nos. 136, 139, 177, 258, 550, CertusView's conduct throughout this proceeding has been far from normal.  To the contrary,

CertusView has knowingly maintained frivolous claims for years, and in the improper pursuit of its allegations, it has conducted itself in a manner that can only be described as exceptional.  This matter represents and exceptional case warranting an award of reasonable costs and attorneys' fees to S&N as a result.  (*See, e.g.*, ECF Nos. 136, 139, 177, 258, 550.)

### III.   CLAIM FOR ATTORNEYS FEES

Under Rule 54(d)(2)(B)(iii), a motion for attorneys fees must "state the amount sought or a fair estimate of it."  S&N seeks the following reasonable and necessary attorneys' fees:  (1) fees that S&N incurred defending against CertusView's objectively unreasonable claims from the time that CertusView filed suit until the Court granted S&N's Motion for Judgment on the Pleadings, excluding the fees already awarded to S&N in the Court's Order at ECF No. 364, (2) fees incurred in connection with responding to CertusView's motion for reconsideration, and (3) fees incurred in defending against CertusView's appeal of the Court's § 101 order.  The total fees incurred and paid for these items is approximately $3.8 million.

These fees were incurred by S&N as a result of CertusView's decision to assert a large number of claims from its facially ineligible patents, followed by its refusal to timely reduce the number of claims before expert reports as it had promised the Court it would.  CertusView knowingly engaged in such conduct for the purpose of driving up fees, using the following strategy touted by CertusView's prior counsel:

> Savvy plaintiffs can leverage the complexity of a large number of patents which may themselves have a large number of claims . . . to ***drastically increase the costs of litigation***. ***This can often be the case even when the scope of the asserted claims is largely redundant.***

(Ruben J. Rodrigues, *Limiting Patent Claims and Prior Art (with or without a Model Order*, ECF No. 258-1 (emphasis added).)

Thus, S&N should be awarded its reasonable and necessary attorneys' fees, and, if this Motion is granted, as it should be, S&N will provide to the Court necessary documentation to recover all or a portion of those fees. *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *11.

## IV.   CONCLUSION

Considering the totality of circumstances, this case was not only litigated in a wholly unreasonable manner from the beginning, but it also stands out from the others with respect to CertusView's exceptionally weak litigation position. Accordingly, Defendants respectfully request that the Court grant their Renewed Motion for Exceptional Case Finding and Attorneys' Fees or order an evidentiary hearing as the Court deems appropriate.


Dated:  October 2, 2017

Respectfully submitted,
/s/ Brian L. Whisler
Brian L. Whisler (Lead Counsel)
Virginia Bar No. 30435
E-mail: brian.whisler@bakermckenzie.com
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 452-7019
Facsimile:  (202) 416-6937

Michael A. Duffy
E-mail: michael.duffy@bakermckenzie.com
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone:  (312) 861-8000
Facsimile:  (312) 861-2899

John G. Flaim
E-mail: john.flaim@bakermckenzie.com
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
Dallas, TX  75201
Telephone:  (214) 978-3000

Facsimile:  (214) 978-3099

ATTORNEYS FOR DEFENDANTS,
S&N LOCATING SERVICES LLC AND
S&N COMMUNICATIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of October 2017, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.


/s/  Brian L. Whisler