**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**NORFOLK DIVISION**

| | |
|---|---|
| CERTUSVIEW TECHNOLOGIES, LLC, | |
| PLAINTIFF | |
| vs. | Case No. 2:13-cv-00346-MSD-TEM |
| S&N LOCATING SERVICES, LLC and S&N COMMUNICATIONS, INC., | Jury Trial Demanded |
| DEFENDANTS | |

**CERTUSVIEW TECHNOLOGIES, LLC'S RESPONSE IN OPPOSITION TO DEFENDANTS' RENEWED MOTION FOR EXCEPTIONAL CASE FINDING AND ATTORNEYS' FEES**

## TABLE OF CONTENTS

Page

I.     **INTRODUCTION** ................................................................................. 1

II.    **LEGAL STANDARD** ......................................................................... 2

III.   **SUMMARY OF THE PROCEEDINGS** ........................................... 2

IV.   **ARGUMENT** ...................................................................................... 4

    A.    CertusView's patent eligibility positions were sufficiently strong and do not justify shifting fees under § 285 ............................................... 4

        1.    The Patent Office issued the asserted claims after the Supreme Court established the current two-step patent eligibility test in *Mayo* ............................................................................................ 5

        2.    CertusView's eligibility positions in the wake of *Alice* were not objectively unreasonable as shown by the Patent Office's eligibility determinations of similar claims and in view of the evolving § 101 law ......................................................................... 8

            a.    Issuance of related patents with similar claims after the Court's judgment and after *Alice* shows that CertusView's belief in patent eligibility was not unreasonable ............................ 8

            b.    CertusView's patent eligibility positions were not unreasonable amidst the rapidly-evolving § 101 jurisprudence ............................................................................ 11

               (1)    Unlike in *Inventor Holdings*, there were no governing precedents finding similar claims invalid ....... 13

               (2)    CertusView's positions on the issue of patentability remained consistent throughout the litigation, unlike the plaintiff in *Source Search Techs.* .............................. 14

               (3)    CertusView is not an extortionate troll and has not taken "completely untenable" § 101 positions ................. 15

    B.    CertusView's motion for reconsideration was not frivolous and does not render this case exceptional under § 285 ............................................ 16

    C.    CertusView's appeal does not render this case exceptional ................................ 17

    D.    CertusView's litigation conduct was not unreasonable ..................................... 20

        1.    The manner in which the parties' infringement and invalidity claims were narrowed does not show exceptionality .............................. 22

        2.    CertusView's position on privilege does not render this case exceptional ................................................................................. 24

    E.    The totality of the circumstances does not warrant a finding that this case is exceptional ................................................................................. 25

**TABLE OF CONTENTS**
(continued)

Page

1. S&N's discovery conduct shows the Court should not exercise its equitable discretion to shift fees ............................................................. 26

2. A decision finding this case exceptional—after S&N tried and failed to prove inequitable conduct—would be an extreme outlier ......... 26

F. S&N failed to properly substantiate its fee request ............................................. 27

**V. CONCLUSION** ............................................................................................................. **28**

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*,
134 S. Ct. 2347 (2014) .................................................................................. *passim*

*Asghari-Kamrani v. United Servs. Auto. Assoc.*,
No. 15-cv-478, 2017 WL 4418424 (E.D. Va. July 27, 2017) ................................4, 17, 21, 26

*buySAFE, Inc. v. Google, Inc.*,
765 F.3d 1350 (Fed. Cir. 2014) .........................................................................12

*Cal. Inst. of Tech. v. Hughes Comm'ns, Inc.*,
59 F. Supp. 3d 974 (C.D. Cal. 2014) ..................................................................11

*Calypso Wireless, Inc. v. T-Mobile USA Inc.*,
No. 2:08-cv-441-JRG-RSP, 2015 WL 1022745 (E.D. Tex. Mar. 5, 2015) ......................22, 25

*Cf. Alzheimer's Inst. of Am., Inc., v. Avid Radiopharmaceuticals*,
No. 10-6908, 2015 WL 1422337 (E.D. Pa. Mar. 20, 2015) ...................................................21

*Cf. CreAgri, Inc. v. Pinnaclife, Inc.*,
No. 11-cv-6635-LHK, 2014 WL 2508386 (N.D. Cal. June 3, 2014) ...................22, 25, 26, 27

*Cf. eDekka LLC v. 3balls.com, Inc.*,
No. 2:15-cv-541 JRG, 2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec. 17,
2015) ..............................................................................................................15, 16

*Cordis Corp. v. Boston Scientific Corp.*,
658 F.3d 1347 (Fed. Cir. 2011) .........................................................................20

*Credit Card Fraud Control Corp. v. Maxmind, Inc.*,
No. 3:14-cv-3262, 2016 WL 3355163 .................................................................13

*DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*,
No. 2:12-cv-764-WCB, 2015 WL 1284826 (E.D. Tex. Mar. 20, 2015) ..................................7

*Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*,
758 F.3d 1344 (Fed. Cir. 2014) .........................................................................12

*Enfish, LLC v. Microsoft Corp.*,
822 F.3d 1327 (Fed. Cir. 2016) .................................................................3, 16, 17

*Eon–Net LP v. Flagstar Bancorp*,
653 F.3d 1314, 1324–25 (Fed. Cir. 2011) ...........................................................24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Gametek LLC v. Zynga, Inc.*,
    No. CV 13-2546 RS, 2014 WL 4351414 (N.D. Cal. Sept. 2, 2014) ................................20, 21

*Garfum.com Corp. v. Reflections by Ruth*,
    No. 14-cv-5919, 2016 WL 7325467 (D. N.J. Dec. 16, 2016).........................................*passim*

*Gaymar Indust. v. Cincinnati Sub-Zero Prods.*,
    790 F.3d 1369 (Fed. Cir. 2015)..........................................................................................26

*Gust, Inc. v. AlphaCap Ventures, LLC*,
    226 F. Supp. 3d 232 (S.D.N.Y. 2016).............................................................................15, 16

*Hyatt v. Kappos*,
    625 F.3d 1320 (Fed. Cir. 2010)............................................................................................5

*I/P Engine, Inc. v. AOL Inc.*,
    576 Fed. App'x 982 (Fed. Cir. 2014) (Mayer, J., concurring).................................................12

*Intellectual Ventures I LLC v. Capital One Financial Corp.*,
    No. 1:13-cv-0740, 2015 WL 7283108 (E.D. Va. Nov. 17, 2015) ..........................5, 13, 21, 26

*Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*,
    No. 2:13-cv-04160-NKL, 2017 U.S. Dist. LEXIS 160700 (W.D. Mo. Sept. 29,
    2017) ......................................................................................................................11, 13, 20

*Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*,
    No. 14-cv-448-GMS, 2016 WL 3090633 (D. Del. May 31, 2016) ...................................13, 14

*Markman v. Westview Inst., Inc.*,
    52 F.3d 967 (Fed. Cir. 1995)..............................................................................................20

*Marx v. General Revenue Corp.*,
    133 S. Ct. 1166 (2013)........................................................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs, Inc.*,
    132 S. Ct. 1289 (2012).................................................................................................*passim*

*McRO, Inc. v. Bandai Namco Games Am. Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016).........................................................................................17

*Modine Mfg. Co. v. Allen Grp., Inc.*,
    917 F.2d 538 (Fed. Cir. 1990)...........................................................................................27

*Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*,
    726 F.3d 1359, 1367 (Fed. Cir. 2013)................................................................................24

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Octane Fitness, LLC v. ICON Health & Fitness, Inc.*,
    134 S. Ct. 1749 (2014) ................................................................ *passim*

*Planet Bingo, LLC v. VKGS LLC*,
    576 Fed. App'x 1005 (Fed. Cir. 2014) ........................................... 12

*In re Protegrity Corp.*,
    No. 3:15-md-02600, 2017 U.S. Dist. LEXIS 27300 (N.D. Cal. Feb. 27, 2017) ........................ 7

*Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*,
    946 F.2d 870, 876 (Fed. Cir. 1991) ................................................ 5

*Roche Diagnostics Ops., Inc. v. Abbot Diabetes Care, Inc.*,
    No. CV 07-753-RGA-MPT, 2017 WL 4391735 (D. Del. Oct. 3, 2017) ................................. 16

*S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*,
    781 F.2d 198 (Fed. Cir. 1986) ....................................................... 27

*Sciele Pharma Inc. v. Lupin Ltd.*,
    684 F.3d 1253 (Fed Cir. 2012) ...................................................... 6

*SFA Sys., LLC v. Newegg Inc.*,
    793 F.3d 1344 (Fed. Cir. 2015) ............................................ 17, 19, 24

*Shipping & Transit, LLC v. Hall Enters.*,
    No. CV 16-06535, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July 5, 2017) ................... 15, 16

*Small v. Implant Direct Mfg. LLC*,
    No. 06-cv-683, 2014 WL 5463621 (S.D.N.Y. Oct. 23, 2014) ............................... 21

*Snap-on Inc. v. Robert Bosch, LLC*,
    No. 09-cv-6914, 2016 WL 1697759 (N.D. Ill. April 28, 2016) ........................... 21

*Source Search Techs., LLC v. Kayak Software Corp.*,
    No. 11-cv-3388, 2016 U.S. Dist. LEXIS 43326 ....................................... 14, 15, 19

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
    948 F.2d 1573 (Fed. Cir. 1991) ..................................................... 19

*Synopsys, Inc. v. Mentor Graphics Corp.*,
    No. 12-cv-6467-MMC, 2015 WL 4365494 (N.D. Cal. July 16, 2015) ......................... 11

*Thales Visionix Inc. v. U.S.*,
    850 F.3d 1343 (Fed. Cir. 2017) ..................................................... 17

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Therasense, Inc. v. Becton, Dickinson & Co.*,
    745 F.3d 513 (Fed. Cir. 2014)............................................................................19, 25

*Transco Products Inc. v. Performance Contracting, Inc.*,
    38 F. 3d 551 (Fed. Cir. 1994)....................................................................................9

*Veracode, Inc. v. Appthority, Inc.*,
    137 F. Supp. 3d 17 (D. Mass. 2015) .......................................................................13

*YYZ, LLC v. Pegasystems, Inc.*,
    No. 13-cv-581-SLR, 2016 WL 1761955 (D. Del. May 2, 2016)............................13

## I.      INTRODUCTION

The exceptional case doctrine is for the "rare" case that "stands out" from other suits due to the weakness of one party's litigation position or the unreasonableness of its litigation conduct. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1753 (2014). Neither the merits of CertusView's patent eligibility positions, nor its litigation strategy, motivation, or conduct "stands out," so this case is not exceptional.

The patents asserted in this lawsuit were issued by the Patent Office after the Supreme Court's *Bilski* and *Mayo* decisions. *Mayo* established the two-part test for patent eligibility that remains the law today. *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1294 (2012). It was not unreasonable for CertusView to conclude, based on the fact that its patents were examined and issued under *Mayo*, that they claimed patent-eligible subject matter. The Supreme Court decided *Alice* after this case was filed. Even then, the Patent Office allowed issuance of a closely related continuation patent of the e-Sketch patents-in-suit— underscoring that reasonable minds could differ regarding eligibility. It was not unreasonable for CertusView to conclude, based on the Patent Office's repeated allowances of e-Sketch patents after *Mayo*, and the allowance of another continuation patent after *Alice* was decided, that its patents claimed patent-eligible subject matter. CertusView's patents were later invalidated after *Alice* was decided while this suit was pending. But that fact does not make CertusView's lawsuit "exceptional," even if CertusView's position was ultimately incorrect.

Nor was there anything exceptional about the manner in which CertusView litigated this case. While S&N maintains that CertusView's claim narrowing and document production was so exceptional as to warrant fees, none of the egregious behavior that other courts have cited to support a fee award—such as obfuscation, bad faith, or conspiracy—exists in this case. When evaluating the totality of the circumstances, including S&N's litigation behavior and its complete

1.

failure on its yearlong pursuit of an inequitable conduct counterclaim (which had served as the primary basis for S&N's original fee motion, ECF No. 257-258), this case simply does not stand out from other hard-fought competitor patent cases.

S&N's motion should be denied because it is premised on nothing more than inaccurate hindsight reconstructions of the evolution of patent eligibility jurisprudence, misinterpretations of CertusView's legal positions, self-serving characterizations of discovery battles that were resolved years ago, and an associate lawyer's irrelevant blog post. Even when these unrelated items are considered together, there is no basis for concluding that this litigation was exceptional.

## II.    LEGAL STANDARD

Awards of attorneys' fees under § 285 are reserved for "exceptional" patent cases. *Octane Fitness*, 134 S. Ct. at 1746. Fees are awarded "not as a penalty for failure to win a patent infringement suit, but as appropriate only in extraordinary circumstances." *Id.* at 1753. The movant must prove that the case is a "rare" case that "stands out" from others regarding the substantive strength of a party's litigation position or the unreasonable manner in which the case was litigated. *Id.* A determination of exceptionality requires considering the totality of the circumstances, including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." *Id.* at 1756 n.6.

## III.    SUMMARY OF THE PROCEEDINGS

CertusView filed its complaint on May 29, 2013. (ECF No. 1.) S&N did not move to dismiss the complaint or otherwise allege the patents were invalid under § 101, rather answering and asserting counterclaims of non-infringement and invalidity for each patent. S&N moved to transfer the case to North Carolina and lost. (ECF Nos. 15, 34-35.) Discovery opened in November 2013. A claim construction order issued on May 16, 2014. (ECF No. 121.) In June 2014, the

Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank Int'l.*, 134 S. Ct. 2347 (2014). Discovery continued. The parties exchanged expert reports in September 2014. (ECF No. 96.) Claims of infringement and invalidity were narrowed in October. S&N did not file its motion for a judgment of patent-ineligibility until October 28, 2014. (ECF No. 197.) On January 21, 2015, the Court granted S&N's § 101 motion and entered judgment. (ECF Nos. 250, 251.)

Despite winning, S&N amended its answer and counterclaims to allege inequitable conduct. (ECF Nos. 252-253.) S&N moved for fees and a finding of an exceptional case based primarily on its unproven allegations of inequitable conduct. (ECF No. 258.) The Court denied S&N's fee motion without prejudice in light of CertusView's 2015 appeal of the § 101 judgment, which "involve[d] substantial—and novel—issues," and S&N's pending inequitable conduct counterclaims. (ECF No. 329 at 4-5.) At trial on the inequitable conduct counterclaims, S&N failed to prove materiality or intent on any claim. (ECF No. 542 at 68-115.)

CertusView moved for partial reconsideration of the Court's order granting S&N's § 101 motion in light of Federal Circuit developments (*Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016)) and evidence from trial. (ECF No. 533, 534.) The Court denied CertusView's motion and entered judgment (ECF Nos. 545, 547), which CertusView appealed (ECF No. 551).

S&N again moved for attorneys' fees under § 285. (ECF No. 549.) The Court again denied S&N's motion without prejudice in light of CertusView's pending appeal of the § 101 judgment, which "involve[d] substantial and novel issues about Plaintiff's patent infringement claims." (ECF No. 560 at 4-5.) The Federal Circuit issued its mandate finalizing judgment on CertusView's appeal of the § 101 eligibility determination, affirming this Court's order without an opinion. (ECF No. 570-71.) CertusView timely paid the court-awarded costs due as a matter of course to S&N for prevailing on the underlying infringement claim.

## IV.   ARGUMENT

S&N failed to prove this case is exceptional under § 285. CertusView's litigation position was not exceptionally weak as evidenced by the Patent Office's issuance of the patents-in-suit over *Mayo* and the issuance of the '646 patent (a continuation of the '341 patent-in-suit) over *Alice* and this Court's § 101 decision. Additionally, the unsettled legal landscape regarding patentability under the governing precedents shows reasonable minds could differ in interpreting the standard for patent eligibility. Indeed, this Court has already twice determined that the § 101 decision "involved substantial and novel issues." (ECF No. 329 at 4-5; ECF No. 560 at 4-5.) As other courts have found, it is not "exceptional" for a party to litigate substantial and novel issues.

S&N also failed to show CertusView engaged in any of the egregious litigation conduct found in other cases granting fees after *Octane Fitness*. Considering the totality of the circumstances—including the evolution of the law on patent eligibility and S&N's pursuit of costly and baseless inequitable conduct claims—this is not the "rare" case where the Court should exercise its equitable discretion and depart from the "bedrock principle known as the 'American Rule,'" that "each litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise." *Marx v. General Revenue Corp.*, 133 S. Ct. 1166, 1175 (2013).

### A.   CertusView's patent eligibility positions were sufficiently strong and do not justify shifting fees under § 285

This District has previously declined to award attorneys' fees in cases, similar to this one, that were indistinguishable from "the large category of cases where the ultimate merits must be determined through the rigors of the litigation process ... all to be considered in light of constantly evolving legal standards that, by their very nature, are highly conceptual and nuanced." *Asghari-Kamrani v. United Servs. Auto. Assoc.*, No. 15-cv-478, 2017 WL 4418424, at *12 (E.D. Va. July

27, 2017)[1] (quoting *Intellectual Ventures I LLC v. Capital One Financial Corp.*, No. 1:13-cv-0740, 2015 WL 7283108, at *5 (E.D. Va. Nov. 17, 2015)). While CertusView was ultimately unsuccessful in enforcing its patent rights, its eligibility positions were not baseless—even after *Alice*. The presumption that CertusView's patents, which issued after *Bilski* and *Mayo*, were valid; the successful prosecution of claims to the same invention, even after *Alice* and this Court's § 101 order; the evolving state of § 101 jurisprudence; this Court's twice observing the eligibility issues were "substantial and novel;" and S&N's delay of 17 months in raising a § 101 defense all refute S&N's argument that it was unreasonable for CertusView to bring suit and pursue its claims.

### 1.   The Patent Office issued the asserted claims after the Supreme Court established the current two-step patent eligibility test in *Mayo*

When it filed this case, CertusView was entitled to rely on the presumption that the Patent Office did its job, and that patent claims issued under the current legal standards are valid when issued. *See* 35 U.S.C. § 282(a); *Garfum.com Corp. v. Reflections by Ruth*, No. 14-cv-5919, 2016 WL 7325467, at *4 (D. N.J. Dec. 16, 2016)[2] (acknowledging that, even regarding § 101 determinations, district courts may "take cognizance of, and benefit from, the proceedings before the patent examiner") (quoting *Quad Envtl. Techs. Corp. v. Union Sanitary Dist.*, 946 F.2d 870, 876 (Fed. Cir. 1991)); *Hyatt v. Kappos*, 625 F.3d 1320, 1334 (Fed. Cir. 2010) (en banc) (recognizing deference owed to the Patent Office as "the knowledge agency charged with assessing patentability").

---

[1] For the Court's convenience, this case is included in the attached Appendix at Appx5-21.

[2] For the Court's convenience, this case is included in the attached Appendix at Appx22-28.

As shown below,[3] each asserted patent issued ***after*** the Supreme Court's decisions in *Bilski* and *Mayo*.[4] (ECF Nos. 51-2, 51-3.) It was not unreasonable for CertusView to conclude that patents issued by the Patent Office under the prevailing *Mayo* standard for patent eligibility *were* eligible for patenting.



While the asserted claims were being examined, the Patent Office was certainly aware of *Bilski* and *Mayo*—the latter established the two-step test used to evaluate § 101 eligibility today.[5] The five primary examiners and two assistant examiners who reviewed the patents-in-suit during prosecution were required to consider § 101 eligibility during prosecution, MPEP 2103-2016, and each examiner is presumed to have done his or her job. *See Sciele Pharma Inc. v. Lupin Ltd.*, 684

---

[3] The timelines and graphics included in this brief are also provided in larger format in the attached appendix at Appx2-4.

[4] The '344 patent issued September 11, 2012; the '204 patent issued October 16, 2012; the '359 patent issued December 25, 2012; the '001 patent issued March 26, 2013; and the '341 patent issued September 10, 2013. Each was after the Supreme Court's decisions in *Bilski*, on June 28, 2010, and *Mayo*, on March 20, 2012, but before the *Alice* decision on June 19, 2014.

[5] Even where the examiners did not expressly discuss § 101 explicitly during prosecution, the examiners are presumed to have considered the relevant law on eligibility. MPEP 2103-2016; *see also* Memo to Examining Corps Re Supreme Court Decision in *Mayo Collaborative Services v. Prometheus Laboratories, Inc.* (Mar. 12, 2012) (*available at* https://www.uspto.gov/sites/default/files/patents/law/exam/mayo_prelim_guidance.pdf).

F.3d 1253, 1258 (Fed Cir. 2012); *Garfum.com*, 2016 WL 7325467, at *4. It is undisputed that the Patent Office was entitled to deference regarding the validity of the issued claims, which the Court credited (and S&N did not dispute) when acknowledging S&N had to prove ineligibility by clear and convincing evidence. (*See* ECF No. 250 at 33-34, n.6; ECF No. 221 at 4-9.)

As other courts have found, it was not unreasonable for CertusView to rely on the qualified examiners at the Patent Office. *See, e.g.*, *Garfum.com*, 2016 WL 7325467, at *4; *DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc.*, No. 2:12-cv-764-WCB, 2015 WL 1284826, at *2 (E.D. Tex. Mar. 20, 2015) (fact that patent issued after Supreme Court § 101 decisions was *prima facie* evidence against argument patent was obviously invalid in view of those decisions); *In re Protegrity Corp.*, No. 3:15-md-02600-JD, 2017 U.S. Dist. LEXIS 27300, at *20 (N.D. Cal. Feb. 27, 2017) ("[patentee] owned presumptively valid patents, and *Alice* did not, as [defendant] urges, provide such clear-cut guidance that [patentee] should have voluntarily given that presumption up without a fight").

S&N offers no reasoned basis to disregard the work of the examiners or the presumption of validity. And while S&N now argues that *Bilski* "made clear" that CertusView's patents were ineligible under § 101 (ECF No. 574 at 2), S&N did not raise that allegedly clear basis for ineligibility with the Court in its motion for judgment on the pleadings. (*See* ECF No. 198.) In fact, S&N abandoned that argument, relying only on the *Alice* decision in the motion. (ECF No. 250 at 94 n.17 ("In their briefs, the parties presented no argument with respect to the machine-or-transformation test.").) In a footnote to the § 101 Order, the Court did find the machine-or-transformation test "did not alter its decision," but it made clear that its patent eligibility analysis was based on "the methodology that the Supreme Court applied in *Alice*"—and not *Bilski*. (*Id.* at 94-95 n.17.) S&N's only basis for awarding fees accrued from the filing of the complaint is that

the claims were so obviously invalid under *Bilski* and *Mayo* that the case is exceptional. But S&N did not show that CertusView's reliance on the Patent Office's examination of its patents under *Bilski* and *Mayo* was frivolous, and no ruling supports that position. Accordingly, S&N's request for a finding of exceptionality and fees since the filing of the complaint should be rejected.

      **2.    CertusView's eligibility positions in the wake of *Alice* were not objectively unreasonable as shown by the Patent Office's eligibility determinations of similar claims and in view of the evolving § 101 law**

It also was not exceptional for CertusView to maintain this lawsuit after the Supreme Court's decision in *Alice*. The Patent Office's issuance of claims in a continuation e-Sketch patent after *Alice* is objective evidence that CertusView's positions (and its reliance on the Patent Office's issuance of the patents-in-suit) were not unreasonable. Moreover, the rapidly-evolving state of the § 101 jurisprudence—evidenced by other district courts' conclusions on this issue—underscores that reasonable minds could (and did) differ over the proper application of the *Mayo/Alice* test.

      **a.    Issuance of related patents with similar claims after the Court's judgment and after *Alice* shows that CertusView's belief in patent eligibility was not unreasonable**

The Patent Office's issuance of an e-Sketch continuation patent after the Supreme Court decided *Alice* is objective evidence that CertusView's eligibility positions were not baseless. *Garfum.com*, 2016 WL 7325467, at *4 (granting motion to reconsider and reversing exceptionality finding under § 285 based on evidence that the Patent Office's later allowance of similar claims belied earlier finding that it "should have been obvious" that claims were invalid under § 101). As illustrated below, Primary Examiner Anand Bhatnagar, an independent and objective expert with more than 15 years of Patent Office experience, issued continuation claims similar to those asserted in this case in U.S. Patent 9,183,646 ("the '646 patent"). (Ex. 1-3[6]; Teja Decl. at ¶¶ 2-10.) The

---

[6] Exhibits cited in this Opposition are the Exhibits to the Declaration of Joseph Teja, Jr., filed herewith.

examiner allowed the '646 patent to issue after the Supreme Court decided *Alice* and despite considering this Court's order finding the asserted claims ineligible under § 101. (Ex. 1-2.)



The '646 patent is a continuation of the asserted '341 patent-in-suit that issued on November 10, 2015, over a year after *Alice* and after CertusView submitted this Court's § 101 Order to the examiner. (Ex. 1 at 1, 19; Ex. 2 at CV0207819-824, CV0207976.) The '646 patent is a continuation application that claims "the same invention" claimed in the '341 patent, so its issuance is direct, objective evidence that CertusView was not unreasonable in believing that its e-Sketch patents-in-suit claimed patent-eligible subject matter even after *Alice* was decided. *See Transco Products Inc. v. Performance Contracting, Inc.*, 38 F. 3d 551, 555-56 (Fed. Cir. 1994) ("A 'continuation' application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed.") (citing MPEP § 201.07).

Recently, on a § 285 fee motion, a court in the District of New Jersey found dispositive that the Patent Office allowed claims similar to the claims the defendant contested under § 101, holding that the Patent Office's claim allowance was objective evidence showing the patent

owner's eligibility positions opposing the § 101 motion were not baseless. *Garfum.com*, 2016 WL 7325467, at *4. In that case, after the defendant filed a motion to dismiss based on § 101, the patentee executed a covenant not to sue and dismissed its claims. *Id.* at *1-2. The district court initially found the case exceptional because it "should have been obvious" that the claims had no inventive concept after *Alice* and awarded fees under § 285. *Id.* On reconsideration, the district court reversed its exceptionality finding, concluding the Patent Office's later allowance of similar claims belied the "should have been obvious" determination. *Id.* at *4. Acknowledging that the examiner of the subsequent application did not explicitly discuss § 101, the court credited the Patent Office's decision to issue the patent, finding it sufficiently persuasive that the patentee "provided all of its § 101 briefings filed in this case to the PTO, and that a month after the PTO received the briefings . . . the examiner issued [the allowance]." *Id.*

The Patent Office's issuance of continuation claims of the '341 patent in this case is similarly dispositive that ineligibility of the asserted claims was not "obvious." S&N argued (*e.g.* ECF No. 198 at 1-2), and the Court agreed (ECF No. 250 at 2-7), that the patents-in-suit were similar, directed to the same or related concepts, so the issuance of the '646 patent over *Alice* and the Court's § 101 Order was relevant to all the asserted claims. CertusView provided this Court's 96-page Order finding the asserted claims of the patents-in-suit ineligible under § 101 to Examiner Bhatnagar. And Examiner Bhatnagar allowed the claims. (Ex. 2 at CV0207976; Ex. 1 at 1, 19; *see also Garfum.com* 2016 WL 7325467, at *4.) While not dispositive of patentability, the examiner's decision to issue the claims is direct evidence that invalidity was not "obvious" and conclusively establishes that CertusView's positions were not unreasonable. *See id.*

        **b.**      **CertusView's patent eligibility positions were not unreasonable amidst the rapidly-evolving § 101 jurisprudence**

Patent eligibility has received considerable scrutiny in recent years. *See Synopsys, Inc. v. Mentor Graphics Corp.*, No. 12-cv-6467-MMC, 2015 WL 4365494, *4 (N.D. Cal. July 16, 2015) (noting the "inventive concept" characterization is a "developing area of the law"). The unsettled state of § 101 jurisprudence and continuing development of the law undercuts S&N's argument that CertusView was unreasonable in defending the patent-eligibility of its inventions. *See Intellectual Ventures II LLC v. Commerce Bancshares, Inc.*, No. 2:13-cv-04160-NKL, 2017 U.S. Dist. LEXIS 160700, at *23-24 (W.D. Mo. Sept. 29, 2017) (collecting cases observing § 101 law was "in flux" even after *Alice*).

Contrary to S&N's hindsight reconstruction, *Alice*'s ultimate impact was not immediately recognized. In fact, *Alice* was initially viewed as a case where the Supreme Court implicitly saved software patents. (*E.g.*, ECF No. 555-10 (noting the Supreme Court did not opine that you cannot patent a computer-implemented invention and observing that both sides declared victory); ECF No. 555-11 (observing "The Court did not wade into what is and is not an 'abstract idea,' and did not say that software-related inventions are presumed abstract or otherwise unpatentable"); ECF No. 555-12 (noting *Alice* was not "the death knell for software and business patents" and the Patent Office guidelines left "many avenues to present software and business method patents as patent-eligible subject matter").) The Supreme Court simply extended the two-step *Mayo* test (which these patents were examined under), originally applied to the "law of nature" exception, to the "abstract idea" exception to patentability. *Alice*, 134 S. Ct. at 2354-55.

Contemporaneous statements by other courts illustrate the unsettled state of the law after *Alice*. *E.g.*, *Cal. Inst. of Tech. v. Hughes Comm'ns, Inc.*, 59 F. Supp. 3d 974, 980, 984-86, 990 (C.D. Cal. 2014) (observing *Alice* was "opaque"; "Supreme Court decisions on § 101 often confuse

more than they clarify"; and "neither *Alice* nor any other Supreme Court precedent defines when software is patentable").

The uncertain state of the law in the months after *Alice* is confirmed by S&N's own actions. S&N did not move to dismiss this suit based on the eligibility of the claims under *Bilski* or even the two-part test in *Mayo*. Contrary to S&N's revisionist history, its delay shows that it was not obvious even to S&N that the patents were ineligible under § 101. Rather than immediately filing a motion for judgment on the pleadings when *Alice* was decided, S&N waited four months to file its § 101 motion, only moving for judgment under § 101 after subsequent cases illustrated that *Alice* had turned the tide on the eligibility of many software patents. S&N's delay in filing its motion after CertusView initiated this lawsuit further demonstrates that the ineligibility of the patents-in-suit was not "obvious" at all.

Nor were Federal Circuit opinions sufficiently on point to be dispositive regarding the application of *Alice* to the claims of the patents-in-suit. They addressed claims directed to combining two datasets,[7] computerized bingo games,[8] and third-party guarantee of sales transactions.[9, 10] At the time CertusView filed its Opposition to S&N's Motion for Judgment on the Pleadings, other district courts had denied similar § 101 ineligibility motions brought against software patents. (*See* ECF No. 207 at 9-10, 14-15, 18-20, 24 (citing favorable cases) and 25-27 (distinguishing S&N's cases).) Losing does not make an argument unreasonable. *Octane Fitness*,

---

[7] *Digitech Image Techs., LLC v. Elecs. for Imaging, Inc.*, 758 F.3d 1344 (Fed. Cir. 2014).
[8] *Planet Bingo, LLC v. VKGS LLC,* 576 Fed. App'x 1005 (Fed. Cir. 2014) (nonprecedential).
[9] *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014).
[10] *See also I/P Engine, Inc. v. AOL Inc.*, 576 Fed. App'x 982, 992 (Fed. Cir. 2014) (nonprecedential) (Mayer, J., concurring) (addressing *Alice* with respect to claims for internet searching systems).

134 S. Ct. at 1756. Most courts addressing § 285 where a patent owner lost a § 101 dispute concluded the case was not exceptional and denied fees, *e.g.*:

- *Intellectual Ventures II*, 2017 U.S. Dist. LEXIS 160700, at *23-24 (finding the evolving legal landscape around § 101 precluded finding patent owner's § 101 positions were unreasonable and collecting cases finding the law post-*Alice* was in flux);

- *Credit Card Fraud Control Corp. v. Maxmind, Inc.*, No. 3:14-cv-3262, 2016 WL 3355163 at *2 (plaintiff's litigation position regarding § 101 "was not frivolous or objectively unreasonable");

- *YYZ, LLC v. Pegasystems, Inc.*, No. 13-cv-581-SLR, 2016 WL 1761955 (D. Del. May 2, 2016) ("the § 101 analysis is an evolving state of the law and a difficult exercise, which does not lend itself to, *e.g.*, shifting fees pursuant to 35 U.S.C. § 285");

- *Veracode, Inc. v. Appthority, Inc.*, 137 F. Supp. 3d 17, 101 (D. Mass. 2015) (finding case not exceptional where case arose "in a highly technical area of rapid growth and development" with shifting law).

S&N points to a handful of cases where exceptional case determinations were made (ECF No. 574 at 3-4), but as CertusView explains below, each of those cases is distinguishable. Rather, this case falls within the usual category of cases where the ultimate merits were determined through the rigors of the litigation process and considered in light of evolving legal standards that are highly conceptual and nuanced. *See, e.g.*, *Intellectual Ventures I*, 2015 WL 7283108, at *5.

### (1)    Unlike in *Inventor Holdings*, there were no governing precedents finding similar claims invalid

In *Inventor Holdings*, the district court found the asserted patent ("Method and System for Processing Payments for Remotely Purchased Goods," which issued before *Bilski* or *Mayo*) "dubious" after *Bilski* issued in 2010 because it concluded that "there is a strong argument that using a third-party intermediary to create a remote pay system is an abstract idea in light of *Bilski*." *Inventor Holdings, LLC v. Bed Bath & Beyond Inc.*, No. 14-cv-448-GMS, 2016 WL 3090633, at *2 (D. Del. May 31, 2016) (*appeal filed* No. 16-2442 (Fed. Cir. Aug. 9, 2016)). After *Alice*, the

13.

district court found the business method claims in the asserted patent were "objectively ineligible under § 101." *Id.* at *3 (awarding fees only after the date of *Alice* but not before).

This case is distinguishable from *Inventor Holdings*. The claims here issued after *Bilski* and *Mayo*, and were therefore entitled to a presumption of validity under the current legal standard for patent eligibility. Additionally, the claims here are not directed to financial business methods or fundamental economic concepts. As discussed above in Part IV.A.2.b, unlike in *Inventor Holdings*, where the court found the claims "objectively ineligible" because they were nearly identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*, there were no governing precedents to guide CertusView that found nearly identical claims invalid. *See Inventor Holdings*, 2016 WL 3090633, at *2-3. Nor did this Court find the claims identical to the claims in any of the previously decided cases. (*See* ECF No. 250.) The court in *Inventor Holdings* also found important that the patent owner stipulated to dismissal with prejudice to avoid findings of invalidity, *id.* at *3, a tactic absent here.

> **(2)    CertusView's positions on the issue of patentability remained consistent throughout the litigation, unlike the plaintiff in *Source Search Techs.***

In *Source Search Technologies*, after the court granted summary judgment of patent invalidity, the defendant moved for fees based on the plaintiff's unreasonable changes in position on the issue of patentability. *Source Search Techs., LLC v. Kayak Software Corp.*, No. 11-cv-3388, 2016 U.S. Dist. LEXIS 43326, at *4, *15-16. Arguing the plaintiff's back-and-forth position rendered the case exceptional, the defendant pointed to three of plaintiff's differing arguments: (1) during reexamination, the plaintiff argued that a key point of novelty was a software interface; (2) during claim construction, to avoid an indefiniteness finding, the plaintiff reversed course and argued that the software interface was known to persons of skill in the art and would have been routine to develop; and (3) during § 101 briefing, the plaintiff reverted to the argument that the

14.

software interface was the key point of novelty and an improvement in computer technology. *Id.* at *15-20. Based on these inconsistencies, the district court concluded that the plaintiff's § 101 argument was objectively unreasonable in light of its admissions during claim construction. *Id.* at *20-21.

The present case bears no resemblance to *Source Search*. Even S&N does not complain that CertusView changed position on the patentability of its claims. (*See* ECF No. 574.) If anything, S&N complains that CertusView has remained consistent in its positions. (*See id.* at 3-13.) There are no facts in this case akin to the plaintiff's reversals of position that the court found exceptional in *Source Search*. 2016 U.S. Dist. LEXIS 43326, at *20-21. Converse to S&N's argument here, the *Source Search* court observed that the patentee did not have "an affirmative duty to immediately drop their case once the Supreme Court decided *Alice*," and did not cite *Alice* as the sole reason for finding exceptionality. *Id.*

### (3)     CertusView is not an extortionate troll and has not taken "completely untenable" § 101 positions

S&N's remaining cases also involved extreme facts not present here: each involved a non-practicing entity asserting patents against multiple (if not hundreds) of defendants to extract low-level nuisance settlements. *Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122, at *2, *19-21 (C.D. Cal. July 5, 2017) (NPE sued hundreds of companies for infringing vehicle location monitoring patents for low-value license offers); *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232 (S.D.N.Y. 2016) (NPE sued "every major entity that provides internet crowdfunding services" in ten patent suits offering nuisance settlements of less than $50,000); *eDekka LLC v. 3balls.com, Inc.*, No. 2:15-cv-541 JRG, 2015 U.S. Dist. LEXIS 168610, at *9-10, *12-13, *18 (E.D. Tex. Dec. 17, 2015) (NPE sued over 200 defendants for infringing patents over online "shopping carts") to extract "nuisance value

settlements") (citations omitted). The improper motivation found in these cases—exploiting the high cost of patent litigation to extract nuisance value settlements from multiple defendants—was key to each finding of exceptionality.

In this case, CertusView filed suit against a competitor who CertusView reasonably believed was infringing its patent rights. There is no evidence of nuisance tactics. *Cf. eDekka*, 2015 U.S. Dist. LEXIS 168610, at *17; *Shipping & Transit*, 2017 U.S. Dist. LEXIS 109122, at.*21; *Gust*, 226 F. Supp. 3d at 245. And while disagreeing on the merits, the Court did not find CertusView's § 101 positions "untenable," "insupportable," or "conclusory." (*See* ECF No. 250; *cf. eDekka*, 2015 U.S. Dist. LEXIS 168610, at *14-16.) None of *Shipping & Transit*, *Gust*, or *eDekka* support a finding of exceptionality or fee shifting in this case.

### B.   CertusView's motion for reconsideration was not frivolous and does not render this case exceptional under § 285

CertusView's motion for reconsideration was based on a significant clarification in the law and trial evidence not available during prior briefing. (ECF No. 533.) The clarification was the Federal Circuit's opinion in *Enfish*, which was significant because it was the first appellate court decision that clarified *Mayo/Alice* Step One. *Enfish*, 822 F.3d at 1334-36. While the Court ultimately disagreed with CertusView that *Enfish* was a "contrary decision of law" warranting reconsideration, that does not render CertusView's argument baseless; in fact, the Court recognized that *Enfish* clarified the § 101 analysis. (ECF No. 545 at 16-17.) Nor was CertusView's argument that its claims were patent-eligible under Step One because they were directed to "a specific implementation of a solution to a problem in the software arts" baseless or exceptional.[11]

---

[11] S&N's allegations that CertusView relied on *DDR Holdings* as a basis for reconsideration (ECF No. 574 at 11) is incorrect. As the Court recognized, CertusView cited *Enfish* and the new trial evidence in its request for reconsideration. That CertusView cited *DDR Holdings* in its motion—which had not issued and therefore was not addressed by either party during the § 101 briefing—does not evidence bad faith and was not objectively unreasonable. *See generally Roche*

*See SFA Sys., LLC v. Newegg Inc.*, 793 F.3d 1344, 1348 (Fed. Cir. 2015) ("A party's position on issues of law ultimately need not be correct for them to not stand out, or be found reasonable.") (quotations omitted). CertusView's interpretation of the *Enfish* Step One analysis was correct, as demonstrated by the precedent's subsequent application at the Federal Circuit. *E.g. Thales Visionix Inc. v. U.S.*, 850 F.3d 1343, 1348-49 (Fed. Cir. 2017) (citing *Enfish* and finding eligible under Step One "claims directed to a new and useful technique for using sensors to more efficiently track an object on a moving platform"); *McRO, Inc. v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1316 (Fed. Cir. 2016) (claim "directed to a patentable, technological improvement over the existing, manual 3–D animation techniques" was not directed to an abstract idea under Step One).

CertusView's second basis for seeking reconsideration—which S&N entirely ignores—was the new evidence from the trial on S&N's inequitable conduct claims. (*See* ECF 574 at 9-11.) While the Court decided the trial evidence did not show that reconsideration was warranted, that alone does not render CertusView's arguments unreasonable. *See SFA Sys.*, 793 F.3d at 1348. Especially considering the unique procedural posture of this case, where patent claims were found ineligible and then a trial occurred, CertusView's argument that the record evidence was relevant to the § 101 determination was not "frivolous." *See Asghari-Kamrani*, 2017 WL 4418424, at *12-13 (finding case was not exceptional where patent owner lost § 101 challenge but won on the inequitable conduct counterclaim).

### C.   CertusView's appeal does not render this case exceptional

S&N newly argues that CertusView's appeal of the § 101 judgment provides an additional basis for a finding of exceptionality, but its arguments are unpersuasive.

---

*Diagnostics Ops., Inc. v. Abbot Diabetes Care, Inc.*, No. CV 07-753-RGA-MPT, 2017 WL 4391735, at *9 (D. Del. Oct. 3, 2017).

S&N asserts that the Federal Circuit's affirmance of the § 101 judgment without a written opinion is evidence that CertusView's arguments on appeal were not meritorious. The data on Rule 36 affirmances does not support S&N's argument. According to a recent study by Professor Jason Rantanen that was published on Patently-O, a majority of all Federal Circuit decisions of district court appeals during 2016 were decided under Rule 36:[12]



Rule 36 affirmances were the most common method used by the Federal Circuit for deciding appeals during 2016. And because the Federal Circuit invokes Rule 36 in lieu of a written opinion, they provide no basis for this Court to infer that an appeal was exceptionally weak or frivolous.

Despite failing to even raise the issue with the Federal Circuit, much less make any attempt to substantiate its claim, S&N inappropriately asks this Court to step into the shoes of the Federal

---

[12] *See* Data on Federal Circuit Appeals and Decisions at
https://patentlyo.com/patent/2016/06/circuit-appeals-decisions.html (last visited Oct. 12, 2017),
showing in 2016 the Federal Circuit issued over 40 Rule 36 affirmances, less than 40
precedential opinions, and less than 20 nonprecedential opinions.

Circuit to weigh whether CertusView's appeal arguments were meritorious. S&N's contention that CertusView's appeal was "frivolous and untenable" (Dkt. No. 574 at 12), comes too late and is made in the wrong court. *See SFA Sys.*, 793 F.3d at 1350 (affirming district court's refusal to conduct a "mini-trial" on frivolity for attorneys' fees purposes). The Federal Circuit has a rule for challenging an appeal that an appellee believes is frivolous. Fed. R. App. Pro. 38; *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1579 n.4 (Fed. Cir. 1991) (listing examples of sanctionable conduct). But the Federal Circuit did not *sua sponte* find CertusView filed a frivolous appeal, and S&N neither argued the issue in its appeal brief nor filed a Rule 38 motion. The only reasonable inference that can be drawn from S&N's failure to raise the issue before the Federal Circuit is that it had no good faith basis for doing so.

"Nor does the mere act of pursuing appellate review—available as a matter of right and frequently necessary to preserve future rights of appeal—by itself suggest an abuse of the legal system." *Therasense, Inc. v. Becton, Dickinson & Co.*, 745 F.3d 513, 517 (Fed. Cir. 2014). CertusView raised relevant arguments in its appeal that were supported by citations to law and evidence. And there is no evidence in this case of any of the types of conduct that have been found sanctionable in other cases, such as failing to cite authority, distorting case holdings and omitting language from quotes, misrepresenting facts and law, or making illogical arguments. *See State Indust.*, 948 F.2d 1579 n.4.

S&N stretches to analogize CertusView's actions to the position-shifting patentee in *Source Search Techs.*, alleging that CertusView made claim construction arguments on appeal that contradicted its previous positions. Its argument fails to acknowledge that the constructions CertusView argued on appeal were *not* its own, crafted anew, but were based on the Court's application of the asserted claims in the post-trial judgment. (*E.g.* 574-1 (S&N Ex. A) at 33-36

(identifying three portions of the trial order interpreting claims of the patents-in-suit); Ex. 4 at 4-5, 18-20 (arguing that the claim interpretations from the Court's trial order should have been, but were not, applied in the 101 Order).) There is nothing unusual or inappropriate about CertusView advocating for a position based on the Court's interpretations of the claims. *See Markman v. Westview Inst., Inc.*, 52 F.3d 967, 976, 979 (Fed. Cir. 1995) (explaining the first step in patent analysis is determining "the meaning and scope of the patent claims" and holding courts "ha[ve] the power and obligation to construe as a matter of law the meaning of language used in the patent claim"); *Cordis Corp. v. Boston Scientific Corp.,* 658 F.3d 1347, 1356 (Fed. Cir. 2011) (courts may interpret claims, or clarify interpretations, at any time during the case). Indeed, adopting and applying the court's claim interpretations is what *Markman* required CertusView to do after the court interpreted claim terms in the patents-in-suit differently than CertusView's interpretations during claim construction.

### D.    CertusView's litigation conduct was not unreasonable

Even after *Octane Fitness*, decisions awarding attorneys' fees for litigation misconduct are based on a finding of "egregious behavior," and S&N has not shown CertusView's behavior was egregious. *See Gametek LLC v. Zynga, Inc.*, No. CV 13-2546 RS, 2014 WL 4351414, at *3 (N.D. Cal. Sept. 2, 2014) (collecting egregious cases and finding plaintiff's conduct showed "an aggressive litigation strategy" but was insufficient to justify fee-shifting).

S&N accuses (through incorporation by reference) CertusView of being a bad actor that used litigation tactics to conceal inequitable conduct and to increase costs to force an unjustified settlement. (ECF No. 574 at 13-15; *see also* ECF No. 550 at 8-10; ECF No. 258 at 3-4.) But none of the extenuating circumstances that courts have found in other cases—such as manufacturing evidence, perjury, witness tampering, obfuscation or bad faith—exists here. *E.g., Intellectual Ventures II*, 2017 U.S. Dist. LEXIS 160700, at *8 (collecting cases); *Garfum.com*, 2016 WL

20.

7325467 at *6 (same). This case is a competitor lawsuit; not a "troll" suit. *See Small v. Implant Direct Mfg. LLC*, No. 06-cv-683, 2014 WL 5463621, at *4 (S.D.N.Y. Oct. 23, 2014) (noting the "need for the deterrent impact of a fee award is greater where there is evidence that [patentee] is a 'patent troll'"). Nor is there evidence of manufacturing evidence, witness tampering, or perjury, or that CertusView brought this lawsuit in bad faith to harm S&N's business. S&N apparently abandoned that unsupportable claim after failing at trial to adduce any evidence to substantiate it. (*Compare* ECF No. 258 at 3-4 *with* ECF No. 575); *cf. Alzheimer's Inst. of Am., Inc., v. Avid Radiopharmaceuticals*, No. 10-6908, 2015 WL 1422337, at *3 (E.D. Pa. Mar. 20, 2015) (finding exceptionality where patentee brought suit knowing it was not the owner of the asserted patent ).[13]

As other courts have found, "an aggressive litigation strategy" by a patent holder is insufficient to justify an award of attorneys' fees. *E.g. Asghari-Kamrani*, 2017 WL 4418424, at *13; *Intellectual Ventures I*, 2015 WL 7283108, at *6; *Gametek*, 2014 WL 4351515 at *3. This was a contested case between two competitors, but even inefficient litigation tactics do not make a case exceptional, particularly where the blame is shared. *See Snap-on Inc. v. Robert Bosch, LLC*, No. 09-cv-6914, 2016 WL 1697759, at *5-6 (N.D. Ill. April 28, 2016) (parties' discovery disputes were not so clearly unreasonable to render the case exceptional); *Intellectual Ventures I*, 2015 WL 7283108, at *6 (denying finding case exceptional and noting "it is the Court's experience that aggressive patent infringement litigation is often de rigueur, particularly where, as here, both parties are fueled with substantial resources and an appetite to engage.") Other courts have also found when discovery issues can be attributed to both parties—as here—the case is less likely to

---

[13] By addressing these arguments CertusView does not concede that S&N has properly raised any of its litigation misconduct allegations incorporated by reference—in a string citation to five separate pleadings. S&N is required to prove its allegations supporting its fee motion by a preponderance of the evidence, and its incorporation by reference of arguments in other pleadings is insufficient to carry its burden of proof or to warrant granting its $3.8 million demand.

be found exceptional. *CreAgri, Inc. v. Pinnaclife, Inc.*, No. 11-cv-6635-LHK, 2014 WL 2508386, at *12-13 (N.D. Cal. June 3, 2014) (finding case not exceptional where the record showed both parties were "too aggressive with discovery positions" but plaintiff was not "willfully obstructive in bad faith"); *Calypso Wireless, Inc. v. T-Mobile USA Inc.*, No. 2:08-cv-441-JRG-RSP, 2015 WL 1022745, at *3-4 (E.D. Tex. Mar. 5, 2015) (concluding the case was not exceptional, considering the totality of the circumstances, including both parties' "conflicting versions of numerous events in the case and the motion practice that occurred").

### 1. The manner in which the parties' infringement and invalidity claims were narrowed does not show exceptionality

S&N argues that the number of patent claims that CertusView asserted in the lawsuit—68 of the 159 claims—shows CertusView litigated this case in an unreasonable manner. But there is nothing exceptional about a plaintiff initially asserting fewer than half of the claims in its asserted patents. And there is nothing exceptional about a patentee reducing clams during the suit or in asking for commensurate reductions in the number of asserted prior art references as CertusView did here. (*E.g.* ECF No. 141-1 at 1, 141-2 at 1.) A request S&N refused. (ECF No. 141 at 2-3.) CertusView's position—that it was willing to narrow its claims of infringement after obtaining the requisite discovery from S&N, so long as S&N proportionally narrowed its counterclaims of invalidity—reflected a standard practice in patent litigation, not an unreasonable litigation tactic. (*See generally* ECF No. 555 at 18-20 (detailing parties' exchange on claim narrowing); ECF No. 86 at 5 (Court order denying S&N's motion to limit number of asserted claims due to S&N's failure to produce relevant discovery); ECF No. 116 at 2-3 (noting S&N repeatedly refused to provide adequate discovery responses and compelling compliance in April 2014); ECF Nos. 116, 155 (finding S&N's refusal to serve invalidity charts or respond with non-infringement positions was not "substantially justified" and awarding CertusView sanctions).) Tellingly, the Court

22.

ultimately <u>agreed</u> with CertusView's position that parallel reductions in the number of asserted claims and the number of prior art references was appropriate and ordered a parallel-reduction process. (ECF No. 159 at 11, 14; *see also* 141-2.) Importantly, observing the parties had been negotiating an agreement, the Court <u>denied</u> S&N's request for sanctions based on this process. (*Id.* at 13 n.3.)

Furthermore, S&N offers no evidence to substantiate its argument that CertusView asserted a large number of patent claims in bad faith. The only evidence S&N proffers is irrelevant hearsay: a law firm blog post by Ruben Rodrigues, an attorney who was previously engaged as one of CertusView's counsel. (ECF No. 574 at 2, 14-15.) The blog post on which S&N so heavily relies was four paragraphs about the Federal Circuit Advisory Council's Model Order. (ECF No. 258-1.) The post acknowledges that "[s]avvy plaintiffs can leverage the complexity of a large number of patents which may themselves have a large number of claims" <u>and</u> "defendants can leverage a large number of prior art references to assert an excessive number of invalidity arguments" and observes <u>both</u> of these tactics can increase complexity and costs. (*Id.*) The post concludes "[a]ttempts to limit the asserted claims or prior art can be an effective way to limit costs going forward, while deflating attempts by the opposing party to create excessive pressure to settle in their favor." (*Id.*) Rodrigues' blog post has nothing to do with this case—and in any event, there is no basis for attributing Mr. Rodrigues' blog post to CertusView.

S&N's arguments about Rodrigues' blog post border on frivolous. It is not credible for S&N to argue, as it has (without any direct *or* circumstantial evidence) that Rodrigues' post revealed his playbook for unreasonably driving up S&N's costs of defense. Rodrigues was a junior associate outside counsel for CertusView. And Rodrigues never touted that tactic. There is no basis to impute Rodrigues' personal views to CertusView or to infer that he was driving CertusView's

litigation strategy in this case. In any event, there was no finding by the Court that CertusView's assertion of patent claims was egregious. S&N's resort to such speculative arguments underscores its failure to adduce any admissible evidence that CertusView's litigation tactics were exceptional.

### 2.       CertusView's position on privilege does not render this case exceptional

Allegations of concealed documents also do not support a finding of exceptionality or a fee award. First, the Court found that CertusView's initial position that Messrs. Crawford and Davis were the functional equivalent of its employees and therefore covered by the attorney-client privilege was supported by a reasonable basis in law and fact; thus CertusView's initial positions were not frivolous and do not support a finding of exceptionality. (ECF No. 296 at 15.) While the Court determined CertusView lacked sufficient evidence to support its continued assertion of attorney-client privilege, CertusView included in its privilege log relevant documents that identified Crawford and others by name. (ECF No. 259-38.). This was not a case where CertusView was hiding witnesses or concealing evidence. *See generally SFA Sys.*, 793 F.3d at 1350 (citing *Eon–Net LP v. Flagstar Bancorp*, 653 F.3d 1314, 1324–25 (Fed. Cir. 2011) (exceptional case found where patentee destroyed relevant documents and produced misleading extrinsic evidence) and *Monolithic Power Sys., Inc. v. O2 Micro Int'l, Ltd.*, 726 F.3d 1359, 1367 (Fed. Cir. 2013) (exceptional case where patentee filed claims against an accused infringer's customers only to drop them after extensive litigation had taken place, misrepresented the date of key evidence, and used motion practice to hide false evidence)).

Second, S&N fails to identify any particular document that CertusView allegedly concealed to render this case exceptional, and for that reason alone the argument should fail. (*See* ECF No. 574.) To the extent S&N relies on the treatment of the Market Intelligence Report ("MIR") the argument fails; S&N eventually agreed with CertusView that the MIR was not prior art (Trial Tr. at 1158:10) and the Court concluded it was not material prior art (ECF No. 542-1 at

76 n.22), indicating the MIR was not even responsive to S&N's first requests for production (*see* ECF No. 259-41). Similarly, to the extent S&N relies on CertusView's production of the Non-Disclosure Agreement between TelDig and Dycom ("TelDig NDA," ECF No. 259-37), the arguments fail; S&N's initial requests for production did not cover the TelDig NDA (*see* ECF No. 259-41) and, once the agreement was requested, the TelDig NDA was produced just four weeks after CertusView's initial responsive production and less than eight weeks after CertusView's objections and responses to the requests. (ECF No. 555-13 at 10, 12 (RFP No. 83 served September 9, 2014); ECF No. 555-14 (objections to RFP No. 83 served September 24, 2014); ECF No. 555-15 (showing the TelDig NDA, numbered CV0147743-48, was produced November 21, 2014); *see also* ECF No. 555 at 20-23; *Calypso Wireless*, 2015 WL 1022745, at *3-4 (defendant didn't show case was exceptional even where it alleged plaintiff was deficient in responding to discovery and withheld documents for months).)

Discovery simply does not render this case exceptional. *Cf. CreAgri*, 2014 WL 2508386, at *13 (finding plaintiff's discovery behavior did not support a finding of exceptionality where many issues were not one sided and there was no evidence the plaintiff was being willfully obstructionist); *Calypso Wireless*, 2015 WL 1022745, at *2-3 (allegations of last minute discovery and discovery motions, refusing to combine depositions, instruction not to answer based on privilege grounds, and improperly withholding documents did not make the case exceptional). Where ordered, both parties—CertusView and S&N—each reimbursed the other for fees associated with an isolated instance of discovery misconduct.

### E.     The totality of the circumstances does not warrant a finding that this case is exceptional

The case must be analyzed as a whole, not simply atomized into line items. *Therasense*, 745 F.3d at 516-17. Here, none of S&N's individual arguments warrant a fee award, and, when

considered in the context of the entire litigation—a hard-fought competitor litigation where both sides won and lost discovery battles and claims and counterclaims—there is no showing that the sum of the parts is sufficient to support the "rare" finding that this case "stands out" from others. *See Octane Fitness*, 134 S. Ct. at 1746; *Asghari-Kamrani*, 2017 WL 4418424 at \*12-13 (rejecting § 285 request in case with similar procedural posture).

### 1. S&N's discovery conduct shows the Court should not exercise its equitable discretion to shift fees

The Federal Circuit has stated that under the "totality of the circumstances" test in *Octane Fitness*, courts should consider the conduct of both parties—"including the conduct of the movant." *Gaymar Indust. v. Cincinnati Sub-Zero Prods.*, 790 F.3d 1369, 1373 (Fed. Cir. 2015). During this case, S&N was sanctioned under Rule 37 for its discovery misconduct. (ECF Nos. 116, 155.) This fact illustrates that the sort of discovery conduct S&N complains of occurred on both sides. *See CreAgri*, 2014 WL 2508386 at \*13 (noting "the manner in which the case was litigated is much more complicated than the picture [defendant] paints in its motions" and denying exceptionality). Considering the litigation strategy by ***both*** parties was similar, the totality of the circumstances does not support a finding that it should be deemed an "exceptional case." *Asghari-Kamrani*, 2017 WL 4418424, at \*12-13 (citing *Intellectual Ventures I*, 2015 WL 7283108, at \*6).

### 2. A decision finding this case exceptional—after S&N tried and failed to prove inequitable conduct—would be an extreme outlier

S&N's total loss on the original basis for its fee motion cannot be overlooked. ***After*** winning its judgment on the pleadings that the asserted claims were patent ineligible, S&N filed inequitable conduct counterclaims in hopes of garnering a fee award. (ECF No. 252.) Those allegations protracted this case for 18 months and were costly for both parties. Yet, at trial, S&N failed to prove a single element of any of its five inequitable conduct allegations—after abandoning several of its allegations immediately before and during trial without even attempting

to prove them. (ECF No. 542.) S&N's pursuit of its inequitable conduct claims, and its resort to exaggeration of the record to hide the weakness of its arguments, shows—as an equitable matter—that S&N is not entitled to its requested fee award. *See CreAgri*, 2014 WL 2508386, at *12-13 (noting defendant misstated the record to paint the plaintiff as obstructionist but concluding the record of the case was not exceptional). The balance of the equities as well as the totality of the circumstances—considering both parties' litigation positions and conduct—show that S&N is undeserving of relief. *See Octane Fitness*, 134 S. Ct. at 1756 (emphasizing the decision to award attorneys' fees is one of "equitable discretion").

### F.      S&N failed to properly substantiate its fee request

Even if the Court determines that portions of this case are exceptional, S&N is not automatically entitled to attorneys' fees. "[T]he decision whether or not to award fees is . . . committed to the discretion of the trial judge, and even an exceptional case does not require in all circumstances the award of attorney fees." *Modine Mfg. Co. v. Allen Grp., Inc.*, 917 F.2d 538, 543 (Fed. Cir. 1990). In this case, where both parties have had to bear "the burdens of litigat[ing]" the claims and counterclaims at issue, *S.C. Johnson & Son, Inc. v. Carter–Wallace, Inc.*, 781 F.2d 198, 201 (Fed. Cir. 1986), and where S&N has cited no considerations of compensation or deterrence warranting a fee award, *see Octane Fitness*, 134 S. Ct. at 1758 n.6, it is appropriate to deny S&N's entire $3.8 million request, which apparently includes fees for the entire lawsuit and appeal—before and after *Alice*—less S&N's fees for its failed inequitable conduct counterclaim. S&N's request does not account for CertusView's protected presumption of validity of the claims (*see supra* Part IV.A.1), the evolving state of the law and objective evidence that CertusView's eligibility positions were not baseless (*see supra* Part IV.A.2, IV.B-C), or the immense cost of the week-long trial CertusView had to incur opposing S&N's baseless inequitable conduct allegations that prolonged the case more than a year.

Moreover, S&N has not provided any documentation to substantiate its claim or demonstrate that its fee request is reasonable. (*See* ECF No. 574 at 15.) If the Court were to award S&N fees and allow it to later substantiate them, CertusView respectfully requests the opportunity to object to S&N's proffer. Fed. R. Civ. P. 54(d)(2)(C) (noting district court must give opportunity for adversary submissions).

## V.      CONCLUSION

S&N failed to establish that this case stands out from others. S&N has not proven that CertusView's litigation positions on patent eligibility were unreasonable in light of the issuance of its patents under the *Bilski* and *Mayo* precedents, the evolving § 101 precedents, and the Patent Office's grant of a continuing application over *Alice* and this Court's § 101 Order. And S&N has not shown that CertusView's litigation behavior included the type of egregious conduct that is required to substantiate a finding of exceptionality. S&N's Renewed Motion should therefore be denied. *Octane Fitness*, 134 S. Ct. at 1756.


Dated: October 16, 2017                      Respectfully submitted,


                                             */s/ Christopher C. Campbell*

                                             Christopher C. Campbell (VBN 36244)
                                             Cooley LLP
                                             One Freedom Square
                                             Reston Town Center
                                             11951 Freedom Drive
                                             Reston, Virginia 20190-5656
                                             Telephone: (703) 456-8000
                                             Facsimile: (703) 456-8100
                                             E-mail: ccampbell@cooley.com

Thomas J. Friel, Jr.
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111-5800
Telephone: (415) 693-2000
Facsimile: (415) 693-2222
E-mail: tfriel@cooley.com

Orion Armon (*pro hac vice*)
James P. Brogan (*pro hac vice*)
COOLEY LLP
380 Interlocken Crescent, Suite 900
Broomfield, CO 80021
Telephone: (720) 566-4000
Facsimile: (720) 566-4099
Email: oarmon@cooley.com
Email: jbrogan@cooley.com

*Counsel for Plaintiff CertusView Technologies, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2017, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing via electronic mail to all counsel of record.

*/s/ Christopher C. Campbell*

Christopher C. Campbell (VBN 36244)
Cooley LLP
One Freedom Square
Reston Town Center
11951 Freedom Drive
Reston, Virginia 20190-5656
Telephone: (703) 456-8000
Facsimile: (703) 456-8100
E-mail: ccampbell@cooley.com

151720869