**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION**

| | | |
|---|---|---|
| CERTUSVIEW TECHNOLOGIES, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 2:13-cv-346 (MSD) (RJK) |
| | § | |
| S&N LOCATING SERVICES, LLC and | § | |
| S&N COMMUNICATIONS, INC. | § | |
| | § | Jury Trial Demanded |
| Defendants. | § | |

**REPLY IN SUPPORT OF DEFENDANTS' RENEWED MOTION FOR EXCEPTIONAL
CASE FINDING AND ATTORNEYS' FEES**

**I.      INTRODUCTION**

Under *Octane Fitness*, a case is exceptional if, considering the totality of the circumstances, it stands out from others with respect to the substantive strength of a party's litigating position or the unreasonable manner in which the case was litigated. *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749, 1756 (2014). Here, CertusView asserted claims that were plainly unpatentable under *Bilski v. Kappos*, 561 U.S. 593 (2010), *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1294 (2012), and *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014). In particular, the claims asserted were, at their core, directed to nothing more than using generic computer equipment to place items on an electronic image or map. (ECF No. 250.) In view of the fact that the asserted claims are simply not directed to inventive subject matter, this Court twice found CertusView's claims to be ineligible, and the Federal Circuit agreed with this Court's conclusion on appeal—a fact that CertusView does not dispute. And, CertusView does not (and cannot) dispute that one of the Federal Circuit judges said during oral argument that he did not see how the concept of putting information on a

map as recited in CertusView's claims was eligible "under **_any_** of our precedent, under **_any_** of the Supreme Court precedent[.]" (Oral Argument Tr. 13:21-13:55, available at http://www.cafc.uscourts.gov/oral-argument-recordings (emphasis added).) Nor does CertusView dispute that the new claim construction arguments it advanced on appeal (in a last attempt to save its ineligible claims) were inconsistent with its claim construction arguments in this Court, which further shows the unreasonableness of CertusView's position. (*See* ECF No. 576 at 19-20.) These admissions, in and of themselves, make this case exceptional.

In addition to asserting objectively unreasonable claims, CertusView also engaged in an unreasonable manner of litigation from the outset. CertusView pursued a strategy of asserting a large number of mostly redundant claims and refusing to timely reduce the number of claims. This tactic was identified in a published article written by one of CertusView's lawyers, described as intended to "drastically increase the costs of litigation." (Ruben J. Rodrigues, *Limiting Patent Claims and Prior Art (with or without a Model Order)*, ECF No. 258-1.) Further, one of CertusView's witnesses, an officer of the company, made demonstrably false statements to the Court in an effort to conceal a key non-privileged document, and CertusView concealed numerous relevant documents and witnesses that S&N had to spend significant time and money to uncover. CertusView's witness's false statements under oath were backed up by a brief filed by CertusView that was replete with blatant false representations intended to support the false privilege status of the documents that had been withheld.

In view of the foregoing, CertusView's pursuit of objectively unreasonable claims and its unreasonable manner of litigation should not be encouraged but should be affirmatively deterred by an exceptional case finding under 35 U.S.C. § 285.

## II.   ARGUMENT AND AUTHORITIES

**A.   CertusView's assertion of claims directed to the ineligible abstract idea of drawing on an electronic map was objectively unreasonable.**

CertusView's infringement claims were objectively unreasonable from the outset in light of the Supreme Court's clear guidance in *Bilski v. Kappos*, 561 U.S. 593 (2010) and *Mayo Collaborative Servs. v. Prometheus Labs, Inc.*, 132 S. Ct. 1289, 1294 (2012), both of which issued well before CertusView filed this action on May 29, 2013.  At that time, well-established and controlling legal authority made clear that claims are patent-ineligible if they are not "tied to a particular machine or apparatus" or do not "transform a particular article into a different state or thing."  *Bilski*, 561 U.S. at 604.  Well-established and controlling legal authority also made clear that, for an abstract idea to be patentable, the claimed elements must transform it into something inventive, which requires more than simply adding the words "apply it," and implementing an abstract idea on a general purpose computer will not suffice.  (Ct.'s Op. & Order p. 37, ECF No. 250;)  *Mayo*, 132 S. Ct. at 1294;  *Gottschalk v. Benson*, 409 U.S. 63, 71 (1972).  *Alice*, which issued after CertusView filed this action, confirmed the *Mayo* approach to determining patent eligibility.  *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014).  CertusView's claims squarely fall under the Supreme Court's consistent definition of patent-ineligible subject matter in *Bilski*, *Mayo*, and *Alice* since they describe nothing more than the abstract idea of electronically recording a locate operation as applied to a general purpose computer.  Indeed, CertusView  has  never argued that its claims were directed to anything other than a general purpose computer, and there is no dispute that its claims concern the electronic documentation of a locate operation—a process previously done by hand but now performed by computer.  (*See, e.g.*, U.S. Pat. No. 8,290,204 ("the '204 Patent") col. 2:39-47, ECF No. 1-1.)  Thus, CertusView's assertion of these particular patent claims after *Bilski* and *Mayo*, and its

continued assertion of these claims after *Alice*, was objectively unreasonable and makes this case stand out from others.

CertusView makes several arguments to support its position that its infringement claims were objectively reasonable, all of which are without merit. *First*, CertusView argues that its positions were objectively reasonable because the Patent Office issued its claims after *Bilski* and *Mayo*. (ECF No. 576 at 1, 5-8 ("The patents asserted in this lawsuit were issued by the Patent Office after the Supreme Court's *Bilski* and *Mayo* decisions.").) But the mere fact that the Patent Office issued its claims after *Bilski* and *Mayo* does not mean that it was objectively reasonable to conclude that those claims were eligible, particularly after *Alice*. *Inventor Holdings*, 2016 U.S. Dist. LEXIS 70345, at *7 (explaining that a party has a continuing obligation to "reevaluate its case" in light of new case law, specifically, as applied in *Inventor Holdings*, in light of *Alice*). Indeed, other courts have found cases to be exceptional in light of *Alice* even though the claims issued after *Bilski* and *Mayo*, and the same result is appropriate here. *See, e.g., Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232, 237 n.2, 241 (S.D.N.Y. 2016).

*Second*, CertusView further contends that its positions were objectively reasonable because the Patent Office found claims in a related continuation patent to be eligible after *Alice*. (ECF No. 576 at 8-10 ("The Patent Office's issuance of an e-Sketch continuation patent after the Supreme Court decided *Alice* is objective evidence that CertusView's eligibility positions were not baseless.").) Tellingly, CertusView does not provide any analysis comparing these other claims to those that were asserted here. Further, as one of CertusView's own cited authorities points out, claims in a continuation application have a different scope compared to the claims in the earlier application. (*See* ECF No. 576 at 9 (citing *Transco Prods. Inc. v. Performance Contracting, Inc.*, 38 F.3d 551, 555-56 (Fed. Cir. 1994) (quotation and internal citation

omitted).)  It remains that this Court has twice found that the asserted claims in the Patents-in-Suit are ineligible (*see* ECF Nos. 250 & 545), the Federal Circuit agreed, and the "related patents" are not before this Court.

Third, CertusView argues that its positions were objectively reasonable in view of the "rapidly-evolving § 101 jurisprudence."  (ECF No. 576 at 11.)  Although the law may have evolved in certain ways since *Alice*, there was never any question that claims like CertusView's were ineligible, as Judge Hughes pointed out during the Federal Circuit oral argument in this case.  (Oral Argument Tr. 13:21-13:55, available at http://www.cafc.uscourts.gov/oral-argument-recordings.)  Further, CertusView's "evolving case law" argument is belied by the fact that CertusView's patent claims were found to be ineligible under the well-established *Bilski* test as well as *Alice*.  (ECF No. 250.)  This argument is also belied by the fact that other courts have found cases to be exceptional where the plaintiff asserted objectively unreasonable infringement claims in light of § 101.  *See, e.g., Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, No. 14-448-GMS, 2016 U.S. Dist. LEXIS 70345, at *8-9 (D. Del. May 31, 2016); *Source Search Techs. LLC v. Kayak Software*, No. 11-3388, 2016 U.S. Dist. LEXIS 43326, at *20-21 (D.N.J. Mar. 31, 2016); *Edekka LLC v. 3Balls Co.*, No. 2:15-cv-541, 2015 U.S. Dist. LEXIS 168610, at *11-17 (E.D. Tex. Dec. 17, 2015).

In fact, CertusView's "evolving case law" argument is similar to the argument that was made and rejected by Judge Sleet in *Inventor Holdings*, 2016 U.S. Dist. LEXIS 70345, at *8-9. In that case, the court found that, while there may have been some arguable uncertainty under *Bilski*, "by the time of the *Alice* decision, [the patent holder] was on notice that its claims, much like the claims in *Bilski* and *Alice*, covered an abstract idea and that the introduction of a computer into these claims did not alter the analysis." *Id.*  The same is true in this case.  While

CertusView may claim some arguable uncertainty in the law under *Bilski,* by the time of *Alice*, CertusView was on ample notice that its claims covered an abstract idea and that the introduction of a computer did not alter the result that they were ineligible. Throughout this case, it was undisputed that what CertusView claimed in the asserted patents was using a computer, a generic computer, to carry out an operation (recording a locate operation) that had been long done by hand. As found in *Inventor Holdings*, any reasonable doubt on that point that may have existed under *Bilski* was obviated by *Alice*. That was true for the patentee in *Inventor Holdings*, and it was no less true for CertusView.

Moreover, CertusView's criticisms of S&N's cited cases where courts made an exceptional case finding after patents were found to be ineligible are unpersuasive. (ECF No. 576 at 13-16.) For example, CertusView argues that "unlike in *Inventor Holdings*, where the court found the claims 'objectively ineligible' because they were nearly identical to the financial business method claims that the Supreme Court rejected in *Bilski* and *Alice*, there were no governing precedents to guide CertusView that found nearly identical claims invalid." (ECF No. 576 (internal citation omitted).) But the abstract idea in CertusView's claims did not need to be identical to the abstract idea in the *Bilski* or *Alice* claims in order for *Bilski* or *Alice* to serve as a governing precedent to guide CertusView. And, the fact that the Court in this case readily found CertusView's claims patent-ineligible under *Bilski* as well as *Alice*, and the Federal Circuit summarily affirmed this conclusion, is further evidence of the objective unreasonableness of CertusView's position. (Ct.'s Op. & Order of Jan. 21, 2015, ECF No. 250 at 94-95 n.17.)

Next, CertusView contends that *Source Search Techs.* is distinguishable because "CertusView's positions on the issue of patentability remained consistent throughout the litigation, unlike the plaintiff in *Source Search Techs.*" (ECF No. 576 at 14-15.) While

CertusView's position that its claims were eligible may have remained consistent, CertusView itself does not (and cannot) dispute that it made inconsistent claim construction arguments on appeal compared to those it made before this Court in a futile attempt to salvage its ineligible claims before the Federal Circuit. (*See* ECF No. 576 at 19-20; *compare* CertusView's Opening Cl. Construction Br. at 11-12, ECF No. 67 (arguing to the trial court during *Markman* that location data could not be construed to mean geographic data because such a construction would be improperly narrow) *with* CertusView's Appellant's Br. at 36, ECF No. 574-1 (arguing to the Federal Circuit that the trial court erred in applying that construction in its § 101 analysis, and that the claims actually required the recording of specific "geographic coordinates").) Shifting positions like these are precisely what the court in *Source Search Techs.* found supported an exceptional case finding, and the Court should reach the same conclusion here.

*Finally*, CertusView argues that the *Shipping & Transit*, *Gust*, and *eDekka* cases are distinguishable because those cases were filed by non-practicing entities. (ECF No. 576 at 15-16 ("S&N's remaining cases . . . each involved a non-practicing entity asserting patents against multiple (if not hundreds) of defendants . . . ")). While it is true that those cases were filed by non-practicing entities, they do not stand for the proposition that fee awards are only available in cases filed by non-practicing entities. No court has so held. Rather, those cases stand for the proposition that a patentee's improper motivation in filing and maintaining an infringement lawsuit are important factors in the exceptional case determination. *Shipping & Transit, LLC v. Hall Enters.*, No. CV 16-06535-AG-AFM, 2017 U.S. Dist. LEXIS 109122 (C.D. Cal. July 5, 2017); *Gust, Inc. v. AlphaCap Ventures, LLC*, 226 F. Supp. 3d 232 (S.D.N.Y. 2016); *eDekka LLC v. 3balls.com, Inc.*, Nos. 2:15-cv-541-JRG & 2:15-cv-585-JRG, 2015 U.S. Dist. LEXIS 168610 (E.D. Tex. Dec. 17, 2015). Here, CertusView's documented motivation of seeking to

obtain a large number of patents to assert against an "IP ignorant" industry and its strategy of asserting a large number of largely redundant claims to drive up litigation costs are precisely the kind of improper motivations that need to be deterred.

**B.      CertusView's motion for reconsideration was objectively unreasonable.**

CertusView argues that its motion for reconsideration was "based on a significant clarification in the law and trial evidence not available during prior briefing." (ECF No. 576 at 16.) With respect to the former argument, CertusView claims that the Court may have disagreed that *Enfish* was a contrary decision of law, but that does not make CertusView's argument baseless. (ECF No. 576 at 16.) But CertusView's argument was not baseless *because* this Court ultimately disagreed with it. Instead, it was baseless because this argument sought an application of *Enfish* that this Court (and numerous others) acknowledged "cannot be stretched to support CertusView's suggestion." (Ct.'s Op. & Order of Aug. 10, 2016, ECF No. 545 at 16 n.6.) In arguing for this application, CertusView ignored significant portions of the *Enfish* decision, even though its counsel was undoubtedly aware of those portions given that they were also counsel of record in the *Enfish* case. Indeed, because CertusView expert's testimony made clear that "I don't think that the direction of the patents is towards an invention of a computer technology" (Dymond Dep. 209:7-16, ECF No. 259-57), CertusView could not support an argument that the asserted claims were analogous to *Enfish*.

CertusView's request for reconsideration on the basis of new evidence was also objectively unreasonable given the Court's previous ruling that the asserted claims were patent-ineligible on the pleadings. When issuing its 96-page opinion, the Court explained:

> [A]s a general matter, given that patent eligibility under section 101 is a question of law, the Court can resolve such issue on the pleadings, if the eligibility of the subject matter of the patents-in-suit does not involve an underlying factual dispute.
> . . .

> [T]o resolve the claim-centric issue of section 101 validity, the Court finds that it need not rely on any factual matter other than that presented in the specifications of the patents-in-suit themselves[.]
> . . .
> Importantly, the Court further concludes that *there are no factual disputes that could affect the Court's analysis of section 101 validity*.

(ECF No. 250 at 27-30 (emphasis added).) In view of the Court's prior statements, it was objectively unreasonable for CertusView to expect the Court to later find that extrinsic evidence was necessary or somehow could change the result. For these reasons, CertusView's motion for reconsideration was objectively unreasonable, further supporting an exceptional case finding.

## C.    CertusView's arguments on appeal were objectively unreasonable.

Moreover, CertusView's arguments on appeal were objectively unreasonable, which further supports an exceptional case finding. After the district court twice rejected CertusView's arguments regarding patent eligibility , CertusView resorted to making new arguments on appeal in an effort to salvage its ineligible claims. In doing so, CertusView (1) distorted the trial record, and (2) advanced new, inconsistent claim constructions compared to those it had advocated for below. *Cf. Source Search Techs.*, 2016 U.S. Dist. LEXIS 43326, at *20-21.

Notably, CertusView does not even dispute that its claim construction arguments on appeal were inconsistent with its claim construction positions below. (*See* ECF No. 576 at 19-20.) Instead, CertusView contends that "the constructions [it] argued on appeal were *not* its own, crafted anew, but were based on the Court's application of the asserted claims in the post-trial judgment." (ECF No. 576 at 19 (emphasis in original).) But neither of the authorities that CertusView points to—*Markman* or *Cordis*—allow a party to advance inconsistent claim construction positions on appeal as long as they are not the party's own. Moreover, the district court did not re-construe any claims in its trial order as CertusView contends. Thus,

9

CertusView's objectively unreasonable and inconsistent arguments on appeal further support an exceptional case finding.

**D. CertusView's litigation conduct was objectively unreasonable.**

CertusView's litigation conduct was objectively unreasonable, and CertusView's contention that "none of the egregious behavior that other courts have cited to support a fee award—such as obfuscation, bad faith, or conspiracy—exists in this case" (ECF No. 576 at 1) is belied by the facts.

Specifically, CertusView's knowingly unfounded privilege assertions, multiple misrepresentations to the Court under oath, and concealment of numerous important documents and witnesses set this case apart from others. (*See* ECF No. 550 at 11-15.) CertusView cannot hide from the fact that its witness, Curtis Chambers, submitted a demonstrably false declaration to the Court in an effort to support a false claim of privilege. (*Id.*; DX-0091.) Nor can CertusView ignore that it failed to disclose the existence of multiple relevant witnesses, and instead drove up costs by admittedly requiring S&N to "sift through the documents that they requested and we produced to find people." (Hr'g Tr. 24:4-25:7, Nov. 19, 2014, ECF No. 259-36.) CertusView also cannot dispute that it concealed the existence of many documents that were unquestionably relevant, not privileged, and not included on a privilege log, and forced S&N to engage in significant motion practice in order to uncover their existence. (*See* ECF No. 550 at 11-14.)

In addition, CertusView's strategy of waiting over eight months to assert a large number of "largely redundant" claims from multiple patents to "drastically increase the costs of litigation" and subsequent refusal to timely limit the number of claims was in bad faith and sets this case apart from others. (*See* Ruben J. Rodrigues, *Limiting Patent Claims and Prior Art (with or*

*without a Model Order)*, (emphasis added), ECF No. 258-1.)  CertusView contends that the blog

post that S&N cites from CertusView's former counsel, Ruben Rodrigues, regarding this type of

strategy to increase litigation costs "has nothing to do with this case—and in any event, there is

no basis for attributing Mr. Rodrigues' blog post to CertusView."  (ECF No. 576 at 23.)  But

CertusView does not dispute that it originally asserted a large number of redundant patent claims

and did not reduce the number of claims until after expert reports, even though it told the Court it

could have proceeded with less than half of those claims well before then.  And CertusView does

not dispute that Mr. Rodrigues—who knew that such a tactic would "drastically increase the

costs of litigation"—represented CertusView at the time it was asserting so many claims and

refusing to reduce them.  Where a plaintiff engages in such tactics to drive up fees and burden

the Court and the parties, and does so knowing that such tactics "drastically increase the costs of

litigation," as CertusView's attorneys did here, such behavior sets the case apart from others and

should be deterred.  *See, e.g.*, *Pure Fishing, Inc. v. Normark Corp.*, No. 10-cv-2140-CMC, 2014

U.S. Dist. LEXIS 153272, at *13 (D.S.C. Oct. 28, 2014).

    Moreover, CertusView cannot explain away the fact that it represented to S&N and the

Court that it would reasonably reduce the number of asserted patent claims at the appropriate

time, but then was unwilling to make a reduction when that time came, resulting in significant

and unnecessary additional expense to S&N.  (Pl.'s Resp. to S&N's Mot. to Limit at 10, ECF No.

77 ("CertusView is not unwilling to limit claims at the appropriate point . . ."); Pl.'s Resp. to

S&N's Mot. to Limit at 1, ECF No. 77.)   While CertusView admitted that it could have

proceeded with 30 claims in July 2014 and 20 claims in August 2014, it did not limit its claims at

all until October, and only after S&N had to file a renewed motion to limit.  Because of its delay,

S&N was forced to serve interrogatory responses, and later expert reports, at great expense, on

all 68 originally asserted claims, and CertusView knew this because S&N was diligent about asking CertusView to reduce its claims in advance of the expert report deadline. (Email from A. Moore to B. Kelly of July 28, 2014, ECF No. 259-26; Email from A. Moore to B. Rankin of Aug. 6, 2014, ECF No. 259-27; S&N's Suppl. Obj. & Resp. to Interrog. No. 5, served Apr. 25, 2014, ECF No. 259-29; S&N's Suppl. Obj. & Resp. to Interrog. Nos. 1, 6, 7, & 8, served Apr. 29, 2014, ECF No. 259-30; Ltr. from B. Kelly to R. Rodrigues of July 15, 2014, ECF No. 259-31; Opening Expert Report of Ivan Zatkovich, Sept. 3, 2014, ECF No. 259-32.) Also, contrary to CertusView's assertions, S&N was willing to limit its invalidity arguments *after* CertusView identified its reduced number of claims, which is an approach that is both logical and common in patent cases. (*See* ECF No. 154 at 5-6.) Because CertusView's refusal to timely limit the asserted claims was in bad faith and significantly increased the cost of this litigation for S&N, as CertusView apparently intended, this further supports an exceptional case finding and attorneys' fees award.

**E.      An exceptional case finding is appropriate under the totality of the circumstances.**

CertusView's objectively unreasonable assertion of plainly ineligible claims and the many examples of CertusView's egregious conduct discussed herein render this case exceptional, and S&N's conduct during this litigation does not change that conclusion. (*See* ECF No. 576 at 25-26.) While courts can consider the conduct of the movant as part of the totality of the circumstances, S&N's conduct during this litigation was reasonable.

CertusView contends that the Court should not award S&N its fees incurred in defending against CertusView's objectively ineligible claims and litigation misconduct because "the sort of discovery conduct S&N complains of occurred on both sides." (ECF No. 576 at 26.) CertusView claims that the fact that S&N was sanctioned under Rule 37 is an illustration of this.

(*Id.*)  But the circumstances surrounding S&N's sanctions were significantly different from the circumstances surrounding CertusView's.   CertusView brought a motion to compel non-infringement contentions in response to its Interrogatory No. 5, as well as detailed claim-by-claim, element-by-element invalidity contentions.  (ECF Nos. 68-69.)  S&N agreed to provide the detailed invalidity contentions sought by CertusView, but merely requested a proper interrogatory seeking that information and a reasonable amount of time to provide what undisputedly amounted to 5,644 separate invalidity analyses.  (ECF No. 97.)  While the Court granted CertusView's motion to compel, S&N reasonably relied on uncontroverted case law from multiple districts to support its opposition to Interrogatory No. 5.  (ECF No. 116.)  In addition, fees were only awarded as a result of the mandatory language in Rule 37.  *See* FED. R. CIV. P. 37(a)(5)(A) ("If the motion is granted . . . the court must . . . require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees.");  (ECF No. 116 at 5.)

CertusView, on the other hand, was sanctioned after one of the named inventors, Curtis Chambers, made demonstrably false statements under oath to the Court to support a false claim of privilege, and concealed the existence of a large number of relevant documents that should have been produced in response to S&N's prior discovery requests or included on a privilege log but were not.  (*See* ECF Nos. 138, 199, 220, 254, 364.)  Concealing the existence of relevant documents from opposing counsel and making untrue statements to the Court to support a false claim of privilege are not the type of things that occur in the run of the mill patent case, and are a far cry from the circumstances surrounding S&N's sanctions.  Indeed, when it eventually came to light that Mr. Chambers' statements to the Court were untrue, the Magistrate Judge said, "I

guess I've been lied to more than anybody else in the room right now after 41 years as a prosecutor and a judge." (Hr'g Tr. at 15:22-24, Nov. 19, 2014, ECF No. 223.)

In addition, CertusView argues that "S&N's total loss on the original basis for its fee motion cannot be overlooked." (ECF No. 576 at 26-27.) But just because CertusView was not found to have committed fraud on the Patent Office during prosecution of the Patents-in-Suit, this does not mean CertusView is somehow off the hook for filing objectively unreasonable infringement claims and engaging in an unreasonable manner of litigation, all of which needlessly drove of up the costs of this litigation. Indeed, S&N is aware of no authority that precludes an attorneys' fees award because a party lost on its inequitable conduct claims. Although attorneys' fees *can* be awarded on the basis of an inequitable conduct finding, this is certainly not the only basis for a fee award under *Octane Fitness*, which specifically provides for an exceptional case finding based on the manner of litigation and/or substantive strength of a party's litigating position. *See* 134 S. Ct. at 1756. Additionally, awarding fees in this case despite S&N's loss on its inequitable conduct claims would not make this case an outlier since other courts have awarded fees in similar circumstances. *See, e.g.*, *Pure Fishing*, 2014 U.S. Dist. LEXIS 153272, at *13. Indeed, CertusView's unreasonable manner of litigation and objectively unreasonable infringement claims certainly warrant such an award under the *Octane Fitness* standard as courts have held in similar cases. *See, e.g., Logic Devices, Inc. v. Apple Inc.*, No. C 13-02943 WHA, 2014 U.S. Dist. LEXIS 168380, at *12 (N.D. Cal. Dec. 4, 2014) ("This is also an exceptional case because it stands out from the others with respect to the substantive strength of Logic Devices' litigation position. Logic Devices' validity position was unsupported by the record[.]"); *Summit Data Sys., LLC v. EMC Corp.*, No. 10-749-GMS, 2014 U.S. Dist. LEXIS

138248, at *15 (D. Del. Sept. 25, 2014) ("[T]he court is convinced that an award of attorneys' fees in this case is necessary to deter this sort of reckless and wasteful litigation in the future.").

### III.   CLAIM FOR ATTORNEYS FEES

Attorneys' fees are warranted in this exceptional case because the type of conduct exhibited by CertusView must be deterred.  Specifically, CertusView's continued enforcement of "non-defensible patent[s]" that were clearly ineligible—based on pre- and post-*Alice* case law— warrants fees.  Other courts have found a plaintiff's enforcement of an objectively weak patent in view of *Alice* to warrant an award of fees, and the same result is appropriate here.  *See Inventor Holdings*, 2016 U.S. Dist. LEXIS 70345, at *8-9 (finding an award of attorneys' fees against a plaintiff enforcing patent claims that were objectively without merit in view of *Alice* to be necessary to deter wasteful litigation in the future).  In addition, CertusView's unreasonable manner of litigation, which significantly and needlessly drove up the costs of this litigation, warrants an award of fees to deter future litigants—including CertusView, who specifically sought to obtain many patents so it could assert them against an industry it perceived to be "IP ignorant"—from engaging in this type of conduct.

Finally, CertusView criticizes S&N for not providing documentation to substantiate its claim for $3.8 million in attorneys' fees, but S&N will do so at the appropriate time if this motion is granted, as it should be.  *See Inventor Holdings LLC*, 2016 U.S. Dist. LEXIS 70345, at *11.

### IV.   CONCLUSION

Considering the totality of circumstances, this case was not only litigated in a wholly unreasonable manner from the beginning, but it also stands out from the others with respect to CertusView's exceptionally weak litigation position.  Accordingly, Defendants respectfully request

that the Court grant their Renewed Motion for Exceptional Case Finding and Attorneys' Fees or

order an evidentiary hearing as the Court deems appropriate.

Dated:  October 23, 2017
Respectfully submitted,
/s/ Brian L. Whisler

Brian L. Whisler (Lead Counsel)
Virginia Bar No. 30435
E-mail: brian.whisler@bakermckenzie.com
BAKER & MCKENZIE LLP
815 Connecticut Avenue, NW
Washington, D.C. 20006
Telephone:  (202) 452-7019
Facsimile:  (202) 416-6937

Michael A. Duffy
E-mail: michael.duffy@bakermckenzie.com
BAKER & MCKENZIE LLP
300 East Randolph Street, Suite 5000
Chicago, Illinois 60601
Telephone:  (312) 861-8000
Facsimile:  (312) 861-2899

John G. Flaim
E-mail: john.flaim@bakermckenzie.com
BAKER & MCKENZIE LLP
2300 Trammell Crow Center
Dallas, TX  75201
Telephone:  (214) 978-3000
Facsimile:  (214) 978-3099

ATTORNEYS FOR DEFENDANTS,
S&N LOCATING SERVICES LLC AND
S&N COMMUNICATIONS, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on the 23rd day of October 2017, a true and correct copy of the foregoing document was filed with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

/s/  Brian L. Whisler