UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

FEB - 9 2018

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

CERTUSVIEW TECHNOLOGIES, LLC,

      Plaintiff,

v.                    Civil Action No. 2:13cv346

S&N LOCATING SERVICES, LLC,
and
S&N COMMUNICATIONS, INC.,

      Defendants.

## OPINION AND ORDER

This matter is before the Court on "Defendants' Renewed Motion for Exceptional Case Finding and Attorneys' Fees," filed by S&N Locating Services, LLC and S&N Communications, Inc. (collectively "Defendants" or "S&N"). ECF No. 573. In their motion, Defendants request that the Court award them attorneys' fees because this is an "exceptional case" within the meaning of 35 U.S.C. § 285. The motion has been fully briefed. Because the Court finds that oral argument is not necessary, the matter is now ripe for decision.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, CertusView Technologies, LLC ("Plaintiff" or "Certusview") holds the five related patents, involving technology for prevention of damage to underground infrastructure, at issue in this matter: United States Patent

No. 8,340,359 ("'359 Patent"), United States Patent No. 8,265,344 ("'344 Patent"), United States Patent No. 8,290,204 ("'204 Patent"), United States Patent No. 8,532,341 ("'341 Patent"), and United States Patent No. 8,407,001 ("'001 Patent") (collectively, the "Patents-in-Suit"). August 2, 2016 Op. & Order, 17-18, ECF No. 542. The Patents-in-Suit issued in 2012 and 2013.

CertusView's products were developed as a means to improve record-keeping and documentation of "locate operations," id. at 23, that is, "the application of paint, flags, or some other marking object or material to indicate the presence of an underground facility," Joint Claim Construction Chart 2, ECF No. 101-2. Specifically, the Patents-in-Suit claim inventions related to CertusView's e-Sketch technology. ECF No. 542, at 24. Stated broadly, the e-Sketch technology allows locators to document a locate operation more accurately and to create a searchable electronic record that includes such documentation and additional specific data regarding the locate operation. Id.

On May 29, 2013, CertusView filed a patent infringement action in this Court against S&N. Compl., ECF No. 1. On December 6, 2013, CertusView filed an amended complaint, alleging infringement of the five Patents-in-Suit. See Am. Compl., ECF No. 55. On December 23, 2013, S&N filed an Answer

2

denying CertusView's allegations of infringement and asserting counterclaims against CertusView, seeking declaratory judgments of non-infringement and invalidity regarding all five Patents-in-Suit. S&N's Answer, Affirmative Defenses, Countercls., ECF No. 61.[1] After the Supreme Court issued its June 2014 _Alice_ decision, on October 28, 2014 -- following a _Markman_ hearing, issuance of a claim construction order, and a limitation on the number of asserted patent claims -- S&N filed a Motion for Judgment on the Pleadings, pursuant to Federal Rule of Civil Procedure 12(c), contending that the Patents-in-Suit were invalid as they did not claim patentable subject matter under 35 U.S.C. § 101. Mot. J., ECF No. 197. On January 21, 2015, the Court granted S&N's Motion for Judgment on the Pleadings and found that all of the asserted claims of the Patents-in-Suit were invalid for failure to claim patentable subject matter under 35 U.S.C. § 101. Sec. 101 Op. & Order, ECF No. 250.

On November 10, 2015, U.S. Patent 9,183,646 ("the '646 patent") issued. _Id._ at 1, ECF No. 576-3. "On the face of the '646 patent, under 'Related U.S. Application Date,' it shows that the '646 patent is [a] '[c]ontinuation of application No. 13/950,655, filed on Jul. 25, 2013, which is a continuation of

---

[1] S&N's Answer was amended two additional times after the Court issued its Section 101 Opinion and Order. _See_ S&N's First Am. Answer, Affirmative Defenses, and Countercls., ECF No. 253; S&N's Second Am. Answer, Affirmative Defenses, and Countercls., ECF No. 336.

application No. 13/796,487, filed on Mar. 12, 2013, now Pat. No. 8,532,341 . . . .'" Teja Aff. at 2, ECF No. 576-1. "U.S. Patent No. 8,532,341 ('the '341 patent') is the 'parent patent' to the 646 patent and was asserted in this litigation." Id. "The '646 patent is titled Apparatus, Systems and methods to Generate Electronic Records of Underground Facility Marking Operations Performed with GPS-Enabled Marking Devices." Id. at 1. The '341 patent is titled Electronically Documenting Locate Operations for Underground Utilities. Id. at 14, ECF No. 250. Because the '646 patent is a continuation of the '341 patent, "they share the same specification and are directed to the same invention, though there may be some variation in the scope of the subject matter claimed in the two patents." ECF No. 576-1, at 2; Transco Products Inc. v. Performance Contracting, Inc., 38 F.3d 551, 555-56 (Fed. Cir. 1994) ("A 'continuation' application claims the same invention claimed in an earlier application, although there may be some variation in the scope of the subject matter claimed. See MPEP § 201.07."). The '341 patent issued September 10, 2013, over three months after this suit was filed, but before the Alice decision of June 19, 2014. The '646 patent issued November 10, 2015, "over a year after Alice and after CertusView submitted this Court's § 101 [Opinion and] Order to the examiner." Pl.'s Resp. Opp'n at 9, ECF No. 576; ECF No. 576-1, at 2 (attaching exhibit showing Information Disclosure

4

Statement signed by Examiner Bhatnagar disclosing § 101 Order at entry C488).

On March 8, 2016, the matter proceeded to a five-day bench trial on S&N's declaratory judgment counterclaim against CertusView for inequitable conduct. The Court then took the matter under advisement pending submission of post-trial briefs. On June 15, 2016, after the conclusion of the bench trial, CertusView filed its Motion for Partial Reconsideration of Judgment of Patent Ineligibility under 35 U.S.C. § 101. Mot. Partial Recons., ECF No. 533. On August 2, 2016, the Court denied S&N's declaratory judgment counterclaim for inequitable conduct on each of the five grounds alleged. August 2, 2016 Op. & Order, ECF No. 542. On August 10, 2016, the Court denied CertusView's motion for partial reconsideration. Reconsid. Op. & Order, ECF No. 545. Final judgment was entered on August 10, 2016. Final Judg., ECF No. 547. On August 24, 2016, Defendants filed their second Motion for Exceptional Case Finding and Attorneys' Fees. ECF No. 549. By Order of November 21, 2016, the Court denied Defendants' second motion without prejudice to Defendants' right to refile their motion within fourteen (14) days after the United States Court of Appeals for the Federal Circuit issued a mandate finalizing judgment on the merits of the Plaintiff's pending appeal. Mem. Order, ECF No. 560. The Federal Circuit affirmed this Court's § 101 invalidity ruling on

August 11, 2017, ECF No. 570, and issued a mandate finalizing the judgment on September 18, 2017, ECF No. 571. S&N filed this renewed motion for exceptional case finding and attorneys' fees on October 2, 2017. Certusview opposes such motion. ECF No. 573.

## II. LEGAL STANDARD

Pursuant to Section 285 of the Patent Act, 35 U.S.C. § 285, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[2] Construing the word "exceptional . . . in accordance with [its] ordinary meaning," the Supreme Court recently explained that an exceptional case:

> is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is "exceptional" in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749, 1756 (2014).

Under the standard adopted in Octane Fitness, "a district court may award fees in the rare case in which a party's unreasonable conduct — while not necessarily independently sanctionable — is nonetheless so 'exceptional' as to justify an award of fees." Id. at 1757. When weighing the evidence to determine whether a case is exceptional, the court may "consider

---

[2] The parties do not dispute that S&N is the prevailing party.

6

a 'nonexclusive' list of 'factors,' including 'frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n. 19 (1994)) (noting a nonexclusive list of factors district courts may utilize in determining whether to award fees under similar provision in Copyright Act). Any such exceptional case determination must find support in a "preponderance of the evidence." Octane Fitness, 134 S. Ct. at 1758.

## III. DISCUSSION

Defendants S&N move for an exceptional case finding on the grounds that Plaintiff CertusView 1) asserted objectively unreasonable patent claims, and 2) conducted the litigation in an unreasonable manner. Defs.' Br. Support 1, ECF No. 574.

### A. Assertion of Objectively Unreasonable Patent Claims

S&N alleges that Plaintiff Certusview asserted objectively unreasonable patent claims when it "knowingly filed and maintained this action for infringement of patent claims drawn to the abstract idea of documenting a locate operation – a process that has long been performed by hand – even though its claims were facially ineligible from the outset." Id. S&N claims that, "[a]s a result, CertusView's continued assertion of

7

the claims-in-suit in the face of such authority was objectively unreasonable." Id. at 2. S&N argues that this case is also exceptional because CertusView knowingly asserted facially ineligible patent claims for more than a year and half. Id. at 3. S&N relies on Inventor Holdings, LLC v. Bed Bath & Beyond, Inc., No. 14-448-GMS, 2016 U.S. Dist. LEXIS 70345 at *6-7 (D. Del. May 31, 2016)[3] as a case on point, noting that the patent holder there filed suit after Bilski v. Kappos, 561 U.S. 593 (2010) and before Alice Corp. Pty. Ltd. v. CLS Bank Int'l, 134 S. Ct. 2347 (2014), and the court found that especially after Alice, the patent owner "was on notice that its claims, much like the claims in Bilski and Alice, . . . were objectively ineligible under § 101" so as to support an exceptional case finding. ECF No. 574 at 4. S&N concludes that, because CertusView has knowingly asserted claims that describe a manual process simply being implemented electronically using computing components, and because Supreme Court precedent before this suit and many opinions after filing have squarely rejected such claims as unpatentable, CertusView has asserted objectively baseless patent claims rendering this case truly exceptional. Id. at 9.

---

[3] This decision was affirmed by the Federal Circuit on December 8, 2017, after the close of briefing on this motion. Inventor Holdings, LLC v. Bed Bath & Beyond, Inc., 876 F.3d 1372 (Fed. Cir. 2017).

Certusview responds that its patent eligibility positions were sufficiently strong to overcome an exceptional case finding because it acted reasonably in bringing and maintaining this suit as "[i]t was not unreasonable for CertusView to conclude, based on the fact that its patents were examined and issued under [Mayo Collaborative Servs. v. Prometheus Labs, Inc., 566 U.S. 66 (2012)], that they claimed patent-eligible subject matter", and were entitled to a presumption of validity. ECF No. 576, p. 1, 4-5. CertusView asserts that the two-part test for patent eligibility established in 2012 in Mayo (prior to the filing of this suit), applied to the "law of nature" exception, and that such test was extended to the "abstract idea" exception to patentability in 2014 (after this suit was filed) by Alice, 134 S. Ct. 2347. ECF No. 576 at 1, 11. Certusview goes on to note that even after the Supreme Court's Alice decision, "the Patent Office allowed issuance of a closely related continuation patent of the e-Sketch patents-in-suit - underscoring that reasonable minds could differ regarding eligibility." Id. at 1. Certusview further argues that it was not unreasonable "to conclude, based on the Patent Office's repeated allowances of e-Sketch patents after Mayo, and the allowance of another continuation patent after Alice was decided, that its patents claimed patent-eligible subject matter." Id.

As support for this position, CertusView points to the evolving state of § 101 jurisprudence after Alice, and this Court having twice observed that the eligibility issues in this case were "substantial and novel" as evidenced by S&N's delay of seventeen months in raising a § 101 defense. Id. at 5. Certusview further posits that, notwithstanding the fact that its "patents were later invalidated after Alice was decided [and] while this suit was pending . . . that does not make CertusView's lawsuit 'exceptional,' even if CertusView's position was ultimately incorrect." Id. at 1.

In reply, S&N argues that "CertusView's infringement claims were objectively unreasonable from the outset in light of the Supreme Court's clear guidance in Bilski v. Kappos, 561 U.S. 593 (2010) and Mayo . . ., both of which issued well before CertusView filed this action on May 29, 2013." Defs'. Reply Br. at 3, ECF No. 577. Moreover, S&N argues, "[w]hile CertusView may claim some arguable uncertainty in the law under Bilski, by the time of Alice, CertusView was on ample notice that its claims covered an abstract idea and that the introduction of a computer did not alter the result that they were ineligible." Id. at 5-6.

### 1. Presumption Coupled with Post-Mayo Issuance

Section 282(a) of the Patent Act provides that "[a] patent shall be presumed valid," and that "[t]he burden of establishing

invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." 35 U.S.C. § 282(a). CertusView argues that "[w]hen [it] filed this case, [it] was entitled to rely on the presumption that the Patent Office did its job, and that patent claims issued under the current legal standards are valid when issued." ECF No. 576, at 5. CertusView concludes that, since each asserted patent issued after the Supreme Court's decisions in Bilski and Mayo, it was not unreasonable for it to conclude that patents issued by the Patent Office under the prevailing Mayo standard for patent eligibility were in fact eligible for patenting. Id. at 5-6. S&N does not question whether there is a presumption of validity in this context, instead responding that "the mere fact that the Patent Office issued its claims after Bilski and Mayo does not mean that it was objectively reasonable to conclude that those claims were eligible, particularly after Alice" and in light of CertusView's continuing obligation to reevaluate its case in light of new case law. ECF No. 577, at 4. The Court begins its analysis of this argument with the asserted presumption, and then moves on to the effect of such presumption on patents issued after Bilski and Mayo.

The statutory presumption of validity created by 35 U.S.C. § 282(a) is recognized by the Federal Circuit as a presumption of validity regarding issues of abstractness. CLS Bank Int'l.

v. Alice Corp. Pty. Ltd., 717 F.3d 1269, 1304 (Fed. Cir. 2014)(Lourie, J., Dyk, J., Prost, J., Reyna, J., Wallach, J.,) (concurring)("it bears remembering that all issued patent claims receive a statutory presumption of validity" . . . "[a]nd, as with obviousness and enablement, that presumption applies when § 101 is raised as a basis for invalidity in district court proceedings") (citation omitted); (Rader, C.J., Linn, J., Moore, J., O'Malley, J., concurring-in-part and dissenting-in-part)("Because we believe the presumption of validity applies to all challenges to patentability, including those under Section 101 and the exceptions thereto, we find that any attack on an issued patent based on a challenge to the eligibility of the subject matter must be proven by clear and convincing evidence."), aff'd, 134 S.Ct. 2347 (2014); see Tranxition, Inc. v. Lenovo (United States) Inc., 664 Fed. Appx. 968, 972 n. 1 (Fed. Cir. 2016)(explaining that although the district court relied on the concurrence in Ultramercial, Inc. v. Hulu, LLC, 772 F.3d 709, 720-21 (Fed. Cir. 2014) and held that the "presumption of validity does not apply to challenges under § 101," the court was not persuaded that the district court was correct that a presumption of validity does not apply); contra Ultramerical, 772 F.3d at 720-21 (Mayer, J., concurring)(concluding that because the United States Patent and Trademark Office applies an "insufficiently rigorous subject

12

matter eligibility standard, no presumption of eligibility should attach when assessing whether claims meet the demands of section 101"). Therefore, this Court begins with the proposition that the statutory presumption of validity that attaches to a patent does in fact apply to the determination of abstractness under § 101. Moreover, "[a] patent holder has the right to vigorously enforce its presumptively valid patent." Homeland Housewares LLC v. Sorensen Research & Dev. Trust, 581 Fed. Appx. 877, 881 (Fed. Cir. 2014).

The Court must next consider the effect of this presumption on patents issued after Bilski and Mayo but before Alice, as S&N argues that in light of Bilski and Mayo it was objectively unreasonable for CertusView to have relied on the issuance of the patents, and presumably any consequent presumption of validity attaching to their issuance, when it filed and began prosecuting this suit in 2013. The Court finds that, as each of the asserted patents were issued after the Supreme Court's decisions in Bilski and Mayo, and as it was reasonable to assume that the Patent Office was aware of such Supreme Court decisions, it was not unreasonable for CertusView to begin its litigation analysis with the presumption of validity that initially attached to such patents. DietGoal Innovations, LLC v. Wegmans Food Mkts., Inc., 126 F. Supp.3d 680, 685 (E.D. Va. 2015)(observing that the first step in an exceptional case

finding analysis for § 101 is recognizing the presumption of validity which the patent holder has a right to vigorously enforce); DietGoal Innovations LLC v. Chipotle Mexican Grill, Inc., No. 2:12-cv-764, 2015 U.S. Dist. LEXIS 34782 at *8-9 (E.D. Tex. Mar. 20, 2015)(holding that the issuance of patent after Supreme Court's § 101 decisions constitutes prima facie evidence against argument patent was obviously invalid with reference to such decisions); Garfum.com Corp. v. Reflections by Ruth, Civ. No. 14-5919, 2016 U.S. Dist. LEXIS 174134 at *11 (D.N.J. Dec. 16, 2016)(discussing the level of deference owed to Patent Office). Moreover, S&N's decision to answer the complaint, file counterclaims, and engage in discovery and claim construction before filing its motion for judgment of patent-ineligibility - five months after CertusView filed its suit - undercuts the strength of its argument that it was objectively unreasonable for CertusView to assert the patents from the time suit was filed up to the issuance of Alice.

Finally, the Federal Circuit's recent decision in Inventor Holdings, LLC v. Bed Bath & Beyond, Inc., 876 F.3d 1372, 1379 (Fed. Cir. 2017), sheds additional light on S&N's assertion that CertusView's infringement claims were objectively unreasonable from the outset of the litigation in light of Bilski and Mayo. In explaining its exceptional case finding for maintaining a suit post-Alice, the Federal Circuit in Inventor Holdings, noted

14

that the claims were "dubious even before the Alice decision,"
but that "[p]rior to Alice, the state of the law for computer-
implemented business transaction inventions was less than clear,
given this court's divided en banc opinion in CLS Bank Int'l v.
Alice Corp. Pty, 717 F.3d 1269, 1273 (Fed. Cir. 2013)." Id. If
the state of the law pre-Alice was less than clear for computer-
implemented financial business transaction inventions, the same
seems true for CertusView's patents addressing a computer-
implemented method of organizing human activity traditionally
performed by hand. As CertusView pointed out in its brief when
it analyzed the district court's holding in Inventor Holdings,
"unlike in Inventor Holdings, where the court found the claims
'objectively ineligible' because they were nearly identical to
the financial business method claims that the Supreme Court
rejected in Bilski and Alice, there were no governing precedents
to guide CertusView that found nearly identical claims invalid,"
and in its § 101 Opinion, this Court did not "find the claims
identical to claims in any of the previously decided cases."
ECF No. 576, at 14 (citing Inventor Holdings, 2016 WL 3090633,
at *2-3). Moreover, S&N's delay in filing its motion for
judgment of patent ineligibility until four months after Alice
also militates against a finding that CertusView's continued
assertion pre-Alice of the claims-in-suit in the face of Bilski
and Mayo was objectively unreasonable.

15

## 2. Post-Alice Assertion and Issuance of
## Similar Claims After Alice

S&N argues that, even if CertusView's filing and prosecution of this suit was objectively reasonable before Alice, "at least as of the Alice decision, CertusView was on notice that the asserted claims 'covered an abstract idea and that the introduction of a computer into the claims did not alter the analysis,'" making this a truly exceptional case because of CertusView's continued assertion of objectively baseless patent claims. ECF No. 574, at 5-9 (quoting Inventor Holdings, 2016 U.S. Dist. LEXIS 70345, at *6-7). CertusView responds that the issuance of Alice did not significantly change the pre-Alice presumption of validity attaching to the patents, particularly since the USPTO issued the '646 e-Sketch continuation patent over a year after Alice issued and after the examiner was provided with this Court's § 101 opinion. ECF No. 576, at 8-9.

While it is true that, under the totality of the circumstances, this Court must consider CertusView's continuing obligation to reevaluate its case, Taurus IP, LLC v. Damler Chrysler Corp., 726 F.3d 1306, 1328 (Fed. Cir. 2013), that does not undermine CertusView's argument that it begins its evaluation of its case with the presumption of validity that attaches to a patent. Notwithstanding its obligation to

16

continually evaluate its litigation position, this presumption remained even after the Supreme Court's <u>Alice</u> opinion; though, from <u>Alice</u>'s issuance up to the time that the '646 continuation patent issued, the presumption was less compelling than after issuance of the '646 continuation patent. Moreover, with respect to any weakening of the presumption during this period between the June 2014 <u>Alice</u> opinion and issuance of the '646 continuation patent in November 2015, S&N waited until four months after the <u>Alice</u> opinion issued, and seventeen months after suit was filed, before seeking a determination of patent eligibility. This suggests some initial lack of clarity on S&N's part about whether it was objectively unreasonable for CertusView to maintain its suit post-<u>Alice</u> and the degree to which <u>Alice</u> changed the patent eligibility landscape.

Once the Patent Office issued claims in the '646 continuation e-Sketch patent, the patent eligibility landscape further changed. This change created the need for re-evaluation of CertusView's patents-in-suit, breathing new life into the presumption of validity attaching to such patents and providing objective evidence that CertusView's positions were not unreasonable. The '646 patent, which is a continuation of the asserted '341 patent-in-suit, issued on November 10, 2015, over a year after <u>Alice</u>, and **after** CertusView submitted this Court's § 101 patent ineligibility opinion to the examiner. ECF No.

576, at 9. The '646 patent is a continuation application that claims the same invention claimed in the '341 patent. Notwithstanding the variation between the two patents in the scope of the subject matter claimed, the Patent Office's issuance of the '646 patent, after being aware of Alice and this Court's § 101 opinion, is objective evidence that CertusView was not unreasonable in believing that its e-Sketch patents-in-suit claimed patent-eligible subject matter even after Alice was issued by the Supreme Court. Garfum.com, 2016 U.S. Dist. LEXIS 174134, at *9 ("Plaintiff argues that the PTO's allowance of nearly identical claims in this '615 application belies the Court's determination it 'should have been obvious' to Plaintiff that there was no inventive concept in the '618 patent. The Court agrees. As Plaintiff explains, '[g]iven the USPTO's repeated allowance of nearly identical claims in the '615 Application, Plaintiff believed the strength of its § 101 arguments to be more than sufficient, and put those same arguments in its Response to Defendant's Motion to Dismiss.'"); see also My Health, Inc. v. ALR Techs., Inc., Case No. 2:16cv535, 2017 U.S. Dist. LEXIS 209273 at *15 (E.D. Tex. Dec. 19, 2017)(noting the "reluctance to find exceptionality, based in part on the presumption of validity, is not unreasonable when the examiner considered whether the patent was eligible under current §101 law, as the court in Garfum.com emphasized").

### 3. Evolution of § 101 Jurisprudence

S&N asserts that, "[t]hroughout this case, it was undisputed that what CertusView claimed in the asserted patents was using a computer, a generic computer, to carry out an operation (recording a locate operation) that had been long done by hand," and that the introduction of a computer into the claims did not alter the fact that the claims covered an abstract idea that was patent ineligible. ECF No. 577, at 6. S&N argues that the claims in the patents-in-suit were therefore objectively without merit both before and after Alice, and that such lack of merit was even more obvious after Alice. ECF No. 574, at 4. CertusView responds that "[c]ontrary to S&N's hindsight reconstruction, Alice's ultimate impact was not immediately recognized." ECF No. 576, at 11. In support of this response, CertusView states that Alice was initially viewed as a case where the Supreme Court implicitly saved software patents, citing numerous articles for such proposition. See ECF Nos. 555-10, 555-11, 555-12. CertusView also argues that:

> The uncertain state of the law in the months after Alice is confirmed by S&N's own actions. S&N did not move to dismiss this suit based on the eligibility of the claims under Bilski or even the two-part test in Mayo. Contrary to S&N's revisionist history, its delay shows that it was not obvious even to S&N that the patents were ineligible under § 101. Rather than immediately filing a motion for judgment on the pleadings when Alice was decided, S&N waited four months to file its § 101 motion, only moving for judgment under § 101 after subsequent cases

19

> illustrated that *Alice* had turned the tide on the
> eligibility of many software patents. S&N's delay in
> filing its motion after CertusView initiated this
> lawsuit further demonstrates that the ineligibility of
> the patents-in-suit was not "obvious" at all.

ECF No. 576, at 12. Emphasizing this point, CertusView notes
that existing Federal Circuit opinions were not sufficiently on
point to be dispositive regarding the application of <u>Alice</u> to
the claims of the patents-in-suit, and that other district
courts had denied similar § 101 ineligibility motions brought
against software patents. <u>Id.</u> (citing brief containing case
citations). Acknowledging that some district courts had made
exceptional case findings where patent claims were determined to
be ineligible both pre- and post-<u>Alice</u>, CertusView then
distinguishes such cases.

It is certainly true that courts were parsing the <u>Alice</u>
decision in the months immediately after its issuance. <u>See</u>
<u>Intellectual Ventures II LLC v. Commerce Bancshares, Inc.</u>, No.
2:13cv04160, 2017 U.S. Dist. LEXIS 160700 at *23-24 (W.D. Mo.
Sept. 29, 2017)(collecting cases observing § 101 law was in flux
even after <u>Alice</u>). And the delay of S&N in filing its § 101
motion does suggest that it was similarly trying to come to
grips with the impact of <u>Alice</u> on the patents-in-suit. When
viewing this Court's January 21, 2015 Opinion and Order against
this backdrop, it lends support to CertusView's assertion that

reasonable minds could (and did) differ over the proper application of the Mayo/Alice test. ECF No. 576, at 8.

In deciding whether it was objectively reasonable for CertusView to continue prosecuting this suit even after the Supreme Court issued its Alice decision, the Court looks to the two-step Alice test: 1) "whether the claims at issue are directed to . . . [the] patent-ineligible concept[]" of an abstract idea, and 2) if so, do the claims limitations, both individually and as an ordered combination, transform each claim into a patent-eligible application of the abstract idea to which each claim is directed. With respect to step one, although CertusView did not specifically make such argument in its original opposition to S&N's motion for judgment on the pleadings, by the time it filed its motion for partial reconsideration of judgment of patent ineligibility, it clearly argued that it was objectively reasonable for it to conclude, based on the state of the law at the time, that the claims were directed to a specific technological solution as they improved the pre-existing technological process for documenting a locate operation. Pl.'s Opp'n Def.'s Mot. J. at 1, 20-21, ECF No. 207 ("S&N's motion should be denied because CertusView's patents are not directed to 'abstract ideas.' The patents do not improperly preempt 'recording location operations,' as S&N vaguely claims, they are firmly grounded in the real world, and they provide

specific advantages over prior art methods and systems."); Id. at 4 (the inventors "appreciated the need for new methods and systems to increase the accuracy and reliability of sketches"); Id. at 20-21 (claims are "narrowly tailored" to "methods and systems for generating electronic" records that include representations of physical locate marks applied to images or other representations of a dig area," not just directed to "recording locate operations" as S&N claims); Br. Supp. Mot. Partial Recons. at 14-15, ECF No. 534 ("The Supreme Court's observation[s] in Diamond v. Diehr were reiterated in Alice, where the Court noted that the claims in Diehr were patent-eligible because they 'solve[d] a technological problem in "conventional industry practice"' and 'because they improved an existing technological process.' Alice, 134 S. Ct. at 2358. The Supreme Court's rationales for finding claims patent-eligible in Diehr are equally applicable to Claim 1."); see also Enfish LLC v. Microsoft Corp., 822 F.3d 1327, 1335 (Fed. Cir. 2016) ("The Supreme Court has suggested that claims 'purport[ing] to improve the functioning of the computer itself,' or 'improv[ing] an existing technological process' might not succumb to the abstract idea exception." (quoting Alice, 134 S. Ct. at 2358-59) (alteration in original)).

With respect to step two, CertusView argued that the recited limitations, both individually and as a whole, contain

22

inventive concepts sufficient to establish patent eligibility.
Pl.'s Opp'n Def.'s Mot. J. at 22, ECF No. 207 ("Assuming, again
for the sake of argument only, that all of the claims are
directed simply to 'recording a locate operation,' and that
'recording a locate operation' is an abstract idea, the claims
are nonetheless patent eligible because, under the second *Mayo*
prong, they include inventive concepts that would transform an
otherwise abstract idea into something concrete and patentable.
In fact, the Patent Office expressly determined this to be the
case when it allowed the claims over the recording of
'conventional' locate operations, of which the Patent Office was
well aware"). Relying on evidence from the inequitable conduct
trial, see ECF No. 545, CertusView ultimately contended that the
limitations recite specific solutions that overcame problems
with conventional locate documentation 1) by using a high-
resolution manifest to document to scale, improving accuracy and
reducing error, and 2) by reciting the high-resolution manifest,
searchable electronic record, and geographical coordinate
limitations not previously disclosed, thereby solving industry
problems with paper-based locate manifests. See Br. Supp. Mot.
Partial Recons. at 7, ECF No. 534 ("Trial evidence showed that
it was novel to combine a high-resolution aerial image with
geographical coordinates corresponding to physical locate marks,
and that it was unheard-of to include geographical coordinate

23

data for locate marks in a paper manifest."). S&N responded generally that, with respect to step one of <u>Alice</u>, methods of organizing human activity are generally considered drawn to an abstract idea, and, with respect to step two, the addition of merely generic computer components does not turn the abstract idea into something patent-eligible.

In considering whether it was objectively reasonable for CertusView to continue prosecuting the suit after <u>Alice</u>, the Court looks primarily to the second step of <u>Alice</u> because it seems that is where the issue is joined with greatest force on S&N's motion. <u>See</u> Recons. Op. & Order at 17, ECF No. 545 ("While the Federal Circuit 'sometimes incorporates claim limitations into its articulation of the idea to which a claim is directed,' consideration of the specific claim limitations should be deferred to the <u>Alice</u> step two analysis when 'the claims and their specific limitations do not readily lend themselves to a step [ ] one finding that they are directed to a nonabstract idea.' [<u>Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC</u>, 827 F.3d 1341 (Fed. Cir. 2016)] (citing <u>Enfish</u>, 822 F.3d at 1339, as an example of a case that <u>did not</u> present a 'close call[] about how to characterize what the claims are directed to'"). In much of its ineligibility analysis of this point in its § 101 Opinion, this Court focused on the fact that a claim directed to an abstract idea is not transformed into

patent-eligible subject matter by merely requiring generic computer implementation. ECF No. 250, at 43 n.9, 43-60, 63-70,73-75, 81-89, 91-95; see also Inventor Holdings, LLC, 876 F.3d at 1379 (noting use of generic computer technology does not support eligibility). In other words, after Alice, when determining transformation into patent eligible subject matter, the Court must ask whether the insufficiency of generic computer implementation in this context was so obvious that continued litigation by CertusView was objectively unreasonable. Of course, the Court declined to revisit this issue, and CertusView's refined and targeted arguments on this issue based on Enfish, in its Opinion on CertusView's motion for partial reconsideration, because "Enfish did not discuss step two of the Alice framework . . . ." ECF No. 545 at 21, n.7. However, the Court notes that several of the cases discussing and clarifying inventive concept jurisprudence were not decided until after briefing was completed on S&N's motion for judgment on the pleadings. See DDR Holdings LLC v. Hotels.com, L.P., 773 F.3d 1245, 1248, 1259 (Fed. Cir. 2014), BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC, 827 F.3d 1341, 1350 (Fed. Cir. 2016); Amdocs (Israel) Ltd. v. Openet Telecom, Inc., 841 F.3d 1288, 1300-01 (Fed. Cir. 2016) (discussing inventive concept grounded in providing technological solution to technological problem).

The Court is also mindful, as noted above, that the Federal Circuit recently observed, with respect to computer-implemented business transaction inventions, that the state of the law was less than clear prior to _Alice_. _Inventor Holdings_, 876 F.3d at 1379. In finding that the ineligible computer-implemented business transaction claims at issue in that case were directed to a fundamental economic practice, the Federal Circuit observed that while _Alice_ made clear such claims are, without more, outside the patent system, it also observed that "it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in _Mayo_." _Id._ As CertusView noted in its brief when commenting on the district court's opinion in _Inventor Holdings_, "unlike in _Inventor Holdings_, where the court found the claims 'objectively ineligible' because they were nearly identical to the financial business method claims that the Supreme Court rejected in _Bilski_ and _Alice_, there were no governing precedents to guide CertusView that found nearly identical claims invalid." ECF No. 576, at 14. Though S&N acknowledges this absence of governing precedent addressing identical claims, it argues that CertusView's claims did not need to be identical to the abstract idea in _Bilski_ in order for it to serve as a governing precedent to guide CertusView. ECF No. 574 at 5. While this is true, the absence of similar precedents certainly militates against a

finding that CertusView acted in an objectively unreasonable manner in continuing to litigate its claims after Alice. Moreover, as explained above, the fact that CertusView lost on this § 101 motion does not make its argument unreasonable.

With the benefit of hindsight, and bearing in mind the evolution in CertusView's argument from its original opposition to S&N's motion for judgment on the pleadings to its motion for partial reconsideration, one can envision CertusView trying to navigate the complexities of innovative concept jurisprudence as it existed after Alice. It was understood post-Alice that in order to survive the innovative concept "inquiry, the claims must do more than employ a generic computer to perform a task that has been long-recognized. This was the thrust of Alice, in which the Supreme Court stated that a claim 'directed to [an] abstract idea' does not 'transform that abstract idea into a patent-eligible invention' by 'merely requir[ing] generic computer implementation.'" Veracode, Inc. v. Appthority, Inc., 137 F.Supp.3d 17, 48 (D. Mass. 2015) (alteration in original). However, "[d]espite this limitation on patent eligibility for claims involving computer implementation of abstract ideas or known mathematical algorithms, Alice left open the possibility that a method that 'purport[s] to improve the functioning of the computer itself' or 'effect an improvement in any other technology or technical field' could be patent-eligible." Id. at

27

48.    Therefore, a claimed method can "render[] the claimed invention more complex than what could be done by humans and transform[] the claimed invention from an abstract idea simply automated by a computer into an inventive concept." Id. at 51. CertusView's efforts to argue that its invention contained such an innovative concept do not strike this Court as objectively unreasonable at the time it was prosecuting this suit.  While it is true that "the addition of steps for implementing the abstract idea will not render the claim patent-eligible if the additional steps are routine and conventional, and therefore add nothing of practical significance to the underlying abstract idea or serve to limit it in some meaningful fashion," Id. at 49 (internal quotation marks and citation omitted), it is also understandable, notwithstanding the use of a generic computer, that CertusView struggled to determine whether its additional steps effected an improvement in technology or a technical field sufficient to satisfy the Alice test.   While it may have been more clear post-Alice that no innovative concept existed because the claims do not involve a "unique computing solution that addresses a unique computing problem," it was arguably less clear that the claimed methods did not render the claimed invention more complex than what could be done by humans and simply automated by a computer. Id. at 50-51.

The Court acknowledges that patent eligibility law of the type involved here was evolving after Alice and while the § 101 issues in this case were being litigated. In fact, this Court described these issues as "substantial and novel" when denying without prejudice S&N's prior exceptional case motions on June 1, 2015 and November 21, 2016. ECF Nos. 329, 560. While it is tempting in hindsight, and with the benefit of three and a half years of further case law from the Federal Circuit, to say that CertusView acted unreasonably in continuing to litigate this suit after Alice, an examination of post-Alice opinions from the Federal Circuit reflect continued development in this nuanced area of patent law, and this Court, like other district courts, recognizes such evolution. See Asghari-Kamrani v. United Servs. Auto Ass'n, Civ. No. 2:15cv478, 2017 U.S. Dist. LEXIS 168065, * 38-39 (E.D. Va. July 27, 2017)(noting "although Plaintiffs perhaps should have known after Alice that their patent was invalid, Plaintiffs also point to case law following Alice in which computer-related patents were still being litigated and resolved" and the "Court cannot conclude, in light of the evolving jurisprudence stemming from Alice, see, e.g., Enfish, LLC, 822 F.3d 1327, 2016 WL 2756255, that Plaintiffs' litigating position was so baseless as to render this case exceptional"); Garfum.com, 2016 U.S. Dist. LEXIS 174134, at *13-16 (listing

29

post-<u>Alice</u> computer-based patent eligibility cases). Therefore, the continued evolution in the governing case law with respect to these type of claims, when considered in conjunction with the Patent Office's issuance of a similar continuation patent post-<u>Alice</u>, militates against an exceptional case finding.

### 4. <u>Inventor Holdings</u>

When arguing that the legal standards in this area of the law were clear pre-<u>Alice</u>, and even clearer post-<u>Alice</u>, S&N relies heavily on the District Court's opinion in <u>Inventor Holdings</u> as a case on point for this argument. CertusView argues that the District Court's opinion in <u>Inventor Holdings</u> is distinguishable from the facts of this case, and that our "case falls within the usual category of cases where the ultimate merits were determined through the rigors of the litigation process and considered in light of evolving legal standards that are highly conceptual and nuanced." ECF No. 576, at 13. Because both parties look to <u>Inventor Holdings</u>, and because the Federal Circuit issued its opinion affirming the district court after the conclusion of briefing in this case, the Court will carefully address such arguments here.

The patent holder in <u>Inventor Holdings</u> filed its lawsuit in April 2014, after <u>Bilski</u> and before <u>Alice</u>. <u>Inventor Holdings</u>, 2016 U.S. Dist. LEXIS 70345 at *2-5. The asserted patent in <u>Inventor Holdings</u> covered a method and system for processing

payments for remotely purchased goods, and sought to 1) offer customers more payment options in connection with remote orders, and 2) process those payments without having to provide credit card information over the internet, phone, or mail. Id. at *3. Finding that those two problems related to conventional business practices, the district court concluded that "the core invention embodied by the '582 patent is a 'fundamental economic [or] conventional business practice[] and therefore an abstract idea." Id.

Assessing the state of the law post-Alice, the Inventor Holdings district court noted that the claims in Alice covered "a method for exchanging financial obligations using a computer system as a third-party intermediary and a computer readable medium containing program code for performing the method of exchanging obligations." Id. at *2. Therefore, the district court noted, the Supreme Court concluded that the claims were "directed to a patent-ineligible concept of intermediary settlement" and that "the method claims, which merely require generic computer implementation, fail to transform that abstract idea into a patent-eligible invention." Id. (citing Alice, 134 S. Ct. at 2350). Comparing the state of the law post-Alice with the claims at issue, the Inventor Holdings district court held that "by the time of the Alice decision, IH was on notice that its claims, much like the claims in Bilski and Alice, covered an

abstract idea and that the introduction of a computer into these claims did not alter the analysis," meaning that the business method claims were objectively ineligible under § 101 by the time of Alice. Id. at *6-7. Since Inventor Holding's claims were objectively ineligible following Alice, the district court found the case to be exceptional and awarded attorneys' fees from the time that the Alice decision issued. Id. at *9-12.

In affirming the district court, the Federal Circuit concluded that the district court "acted within the scope of its discretion in finding [the] case to be exceptional based on the weakness of IH's § 101 arguments and the need to deter similarly weak arguments in the future." Inventor Holdings, 876 F.3d at 1377. After concluding that the claims at issue were "manifestly directed to an abstract idea," the Federal Circuit went on to conclude that the "only components disclosed in the specification for implementing the asserted method claims are unambiguously described as 'conventional'". Id. at 1378. Addressing the plaintiff's argument that an exceptional case finding was unwarranted because the § 101 issue involved an evolving area of the law, the Federal Circuit disagreed, finding that the patents were dubious even before Alice. Id. at 1379. Although the Federal Circuit recognized that the "state of the law for computer-implemented business transaction inventions was less than clear" prior to Alice, it noted that Alice "was a

significant change in the law," when considering claims directed to an economic arrangement implemented using generic computer technology. _Id._ Finally, the Federal Circuit noted that "while we agree with IH as a general matter that it was and is sometimes difficult to analyze patent eligibility under the framework prescribed by the Supreme Court in _Mayo_, there is no uncertainty or difficulty in applying the principles set out in _Alice_ to reach the conclusion that the '582 patent's claims are ineligible," because the "patent claims here are directed to a fundamental economic practice, which _Alice_ made clear is, without more, outside the patent system." _Id._ at 1379.

CertusView's brief addressing the district court opinion first argues that, unlike in _Inventor Holdings_ where the patent issued **before** _Bilski_ and _Mayo_, the claims here issued **after** _Bilski_ and _Mayo_, "and were therefore entitled to a presumption of validity under the current legal standard for patent eligibility." ECF No. 576, at 14. Second, CertusView argues that "unlike in _Inventor Holdings_, where the court found the claims 'objectively ineligible' because they were nearly identical to the financial business method claims that the Supreme Court rejected in _Bilski_ and _Alice_, there were no governing precedents to guide CertusView that found nearly identical claims invalid." _Id._

The Court finds that both of these CertusView arguments significantly distinguish Inventor Holdings and undercut the strength of S&N's reliance on such case. Moreover, there is an additional significant distinction in this case. Unlike in Inventor Holdings, in this case the Patent Office, after having been provided with this Court's § 101 decision, issued post-Alice continuation claims that were similar to the patents-in-suit. As district courts have observed, "the reluctance to find exceptionality, based in part on the presumption of validity, is not unreasonable when the examiner considered whether the patent was eligible under current § 101 law." My Health, 2017 U.S. Dist. LEXIS 209273 at *15 (citing cases). These distinctions support CertusView's claim that its actions in continuing to prosecute this suit after Alice were objectively reasonable.

## B. Conduct of Litigation in Unreasonable Manner

S&N argues that CertusView's motion for partial reconsideration as to Claim 1 of the '359 Patent, based upon Enfish LLC, 822 F.3d 1327 (Fed. Cir. 2016), and filed over a year after this Court's § 101 opinion, was evidence of its baseless § 101 position. ECF No. 574, at 9. S&N points out that CertusView "could not support an argument that its asserted claims were analogous to those at issue in Enfish because its own expert had already made clear that 'I don't think that the direction of the patents is towards an invention of a computer

34

technology.'"  Id. at 10.  CertusView responds that Enfish "was significant because it was the first appellate court decision that clarified Mayo/Alice Step One."  ECF No. 576, at 16. CertusView asserts that although this Court disagreed with its position, it agreed with CertusView that Enfish clarified the § 101 analysis.  Id. (citing ECF No. 545, at 16-17).  CertusView further asserts that its motion for reconsideration was not only based upon Enfish, it was also based upon "new evidence from the trial on S&N's inequitable conduct claims."  ECF No. 576, at 17. S&N responds that CertusView's argument regarding Enfish "was baseless because this argument sought an application of Enfish that this Court (and numerous others) acknowledged 'cannot be stretched to support Certusview's suggestion.'"  ECF No. 577, at 8.  S&N further responds that because this Court had previously stated in its § 101 opinion that there were no factual disputes that could affect its § 101 analysis, it was "objectively unreasonable for CertusView to expect the Court to later find that extrinsic evidence was necessary or somehow could change the result."  Id.

This Court issued its § 101 opinion on January 21, 2015. The '646 continuation patent issued on November 10, 2015.  On March 8, 2016, the Court began a five day bench trial on S&N's declaratory judgment counterclaim against CertusView for inequitable conduct.  After the Court took the matter under

advisement pending submission of post-trial briefs, the Federal Circuit issued the Enfish decision on May 12, 2016. CertusView filed a motion for partial reconsideration of the Court's § 101 opinion on June 15, 2016, and the Court denied such motion for reconsideration on August 10, 2016.

In the denial of the motion for reconsideration, this Court carefully explained why its prior finding that Claim 1 of the '359 patent, which is "directed towards the abstract idea of creating a computer-readable file to store information, as applied in the particular technological environment of conducting a locate operation," was "unchanged by the Enfish decisions." ECF No. 545, at 18-21. This Court also explained that CertusView failed to demonstrate that new evidence heard during the bench trial of S&N's inequitable conduct counterclaim was relevant to reconsideration, or that such trial produced evidence that was substantially different from the evidence that was available at the time the Court resolved S&N's Motion for Judgment on the Pleadings. Therefore, the Court concluded that reconsideration of the Court's judgment of patent ineligibility regarding Claim 1 of the '359 patent was unwarranted. Id. at 28-29.

While it might be argued that, **absent** the issuance of the '646 continuation patent, CertusView conducted the litigation in an unreasonable manner by filing the motion for reconsideration,

the issuance of the '646 continuation patent sufficiently breathed new life into the presumption of validity attached to the '359 patent that it cannot be said CertusView's filing of the motion for reconsideration was unreasonable. Moreover, the evolving nature of § 101 jurisprudence in this area, as discussed above, militates against a finding of unreasonableness.

## C. Filing of Appeal

S&N argues that CertusView's arguments on appeal are further evidence of the weakness of CertusView's position with respect to § 101. ECF No. 574, at 11. In support of such argument, S&N contends that, "in an attempt to salvage its ineligible claims on appeal, CertusView made new claim construction arguments before the Federal Circuit based on this Court's trial order." Id. CertusView responds that S&N "fails to acknowledge that the constructions CertusView argued on appeal were *not* its own, crafted anew, but were based on the Court's application of the asserted claims in the post-trial judgment." ECF No. 576, at 19. S&N replies that CertusView, in arguing that the constructions it argued on appeal were based on the Court's application of the asserted claims in the post-trial judgment, does not dispute that such claim construction arguments on appeal were inconsistent with its claim construction positions below. ECF No. 577, at 9. Moreover, S&N

posits, "neither of the authorities that CertusView points to - Markman or Cordis - allow a party to advance inconsistent claim construction positions on appeal as long as they are not the party's own," and even if they did, "the district court did not re-construe any claims in its trial order as CertusView contends." Id.

Even if there were merit to S&N's argument that CertusView made new claim construction arguments before the Federal Circuit, as CertusView points out, its argument comes late in the case and would carry more weight (and possibly have been addressed earlier) had it been made before the Federal Circuit. ECF No. 576, at 19. Such late argument militates against this Court finding that CertusView's argument was one that stands out from others with respect to the substantive strength of CertusView's litigating position or that the case was litigated in an unreasonable manner. See SFA Sys., LLC v. NEWEGG Inc., 793 F.3d 1344, 1348-49 (Fed. Cir. 2015)(citing Octane Fitness, 134 S. Ct. at 1756). "[T]he Federal Circuit did not sua sponte find CertusView filed a frivolous appeal, and S&N neither argued the issue in its appeal brief nor filed a Rule 38 motion [with the Federal Circuit]." ECF No. 576, at 19. Therefore, the Court finds S&N's argument, that CertusView took inconsistent claim construction positions before this Court and the Federal Circuit, does not merit further consideration as its lateness

suggests that CertusView's litigation position did not stand out from others with respect to its substantive strength or that such argument was asserted in an unreasonable manner. SFA Sys., 793 F.3d at 1348-50 (affirming district court's refusal to conduct a mini-trial on frivolity for attorneys' fees purposes).

### D. Unreasonable Litigation Misconduct

S&N argues that CertusView's unreasonable litigation and discovery misconduct merit an exceptional case finding. ECF No. 574, at 13.

### 1. Privilege and Discovery Misrepresentation

S&N argues that CertusView's improper claim of privilege over relevant documents (including corporate documents and assessments of relevant prior art) that were clearly discoverable, and making material misrepresentations to the Court in the process of asserting such privilege claim, is particularly egregious and stands out from other matters that are properly litigated. Id. at 13-14. CertusView essentially responds that the facts relied upon by S&N amount to, at most, an aggressive litigation strategy that was not egregious. ECF No. 576, at 21. CertusView first asserts that none of the extenuating circumstances that courts have found in other cases, such as manufacturing evidence, perjury, witness tampering, obfuscations or bad faith, exists here. Id. at 20. CertusView next responds that allegations of concealed documents do not

support a finding of exceptionality: 1) where this Court previously found that CertusView's initial assertion of privilege was supported by a reasonable basis in law and fact, and 2) where S&N fails to identify a particular document allegedly concealed, or instead inferentially relies on assertions of concealment outlined in a prior motion that do not amount to exceptional behavior. Id. at 22-25. Summarily relying on five pages of explanation in a previously-filed motion for attorneys' fees in this case, S&N replies that CertusView's knowingly unfounded privilege assertions, multiple misrepresentations to the Court under oath, and concealment of numerous important documents and witnesses, set this case apart from others. ECF No. 577, at 10.

This Court does not intend to relitigate in detail here the merits of each of the grounds asserted by S&N. Suffice it to say that, for the reasons cited by CertusView in its responsive brief, ECF No. 576, at 20-22, the Court finds such grounds to be examples of an aggressive litigation strategy by a patent holder against a competitor, and in some respects conduct worthy of condemnation and sanctions, but the Court finds in the exercise of its discretion that on these facts this is not the type of

egregious behavior justifying an award of attorneys' fees.  See

Intellectual Ventures I, 2015 U.S. Dist. LEXIS 155525 at *20.[4]

## 2. Number of Claims Asserted

S&N argues that CertusView "asserted an inordinate amount of claims initially, and importantly, refused to reasonably limit the number of asserted claims despite representing to the Court that it would do so." ECF No. 574, at 14.  CertusView responds that "there is nothing exceptional about a plaintiff initially asserting fewer than half of the claims in its asserted patents," and "there is nothing exceptional about a patentee reducing clams [sic] during the suit or in asking for commensurate reductions in the number of asserted prior art references as CertusView did here."  ECF No. 576, at 22. CertusView asserts that its "position - that it was willing to narrow its claims of infringement after obtaining the requisite discovery from S&N, so long as S&N proportionally narrowed its counterclaims of invalidity - reflected a standard practice in patent litigation, not an unreasonable litigation tactic."  Id. CertusView says that "[t]ellingly, the Court ultimately agreed

---

[4] This is not to say that the Court does not view some of CertusView's conduct with a particularly negative eye.  In fact, as a part of the inequitable conduct counterclaim trial, when S&N asked the Court to infer that misconduct during discovery supports a strong inference of deceptive intent before the PTO, the Court recognized the seriousness of such conduct, stating: "Thus, while CertusView's conduct during discovery is worthy of condemnation and sanction, such misconduct does not evidence the specific intent to deceive the PTO." ECF No. 542-1, at 75.  The Court addressed that litigation misconduct with sanctions. ECF No. 364.

41

with CertusView's position that parallel reductions in the number of asserted claims and the number of prior art references was appropriate and ordered a parallel-reduction process," ECF No. 576, at 23 (citing ECF No. 159, at 11, 14). Later, CertusView argues, "the Court denied S&N's request for sanctions based on this process" after observing that the parties had been negotiating an agreement. Id. Finally, CertusView responds "that S&N offers no evidence to substantiate its argument that CertusView asserted a large number of patent claims in bad faith," and further responds that the unrelated blog post by one of CertusView's former attorneys seemingly encouraging such behavior provides "no basis for attributing Mr. Rodrigues' blog post to CertusView." Id. at 23. S&N replies that "CertusView's strategy of waiting over eight months to assert a large number of 'largely redundant' claims from multiple patents to 'drastically increase the costs of litigation' and subsequent refusal to timely limit the number of claims was in bad faith and sets this case apart from others." ECF No. 577, at 10. Moreover, S&N replies, "contrary to CertusView's assertions, S&N was willing to limit its invalidity arguments *after* CertusView identified its reduced number of claims, which is an approach that is both logical and common in patent cases." Id.

This issue was discussed at length by the Court in its Opinion and Order filed on October 1, 2014. ECF No. 159. As

reflected there, the Court had previously expected CertusView to take the lead in reducing the initial number of claims asserted after receiving necessary discovery, and for S&N to correspondingly reduce the number of asserted prior art references. See ECF No. 86, at 4, 6. Of course, as indicated in the cases cited by the Court in its original order, upon a showing of good cause, CertusView could seek authorization from the Court to increase the number of claims after such initial reduction. Id. at 3. Although CertusView believed it needed additional discovery before making its initial reduction in the number of claims it asserted, it was nonetheless in the process of negotiating a resolution to the impasse at the time that S&N filed its motion to limit the number of claims CertusView could assert. For that reason, the Court denied S&N's request for sanctions. However, contrary to CertusView's view of the matter, the Court also concluded that CertusView had received sufficient discovery to allow it to make an initial reduction in the number of claims asserted. While it appears that CertusView failed to appreciate the Court's prior admonition to make an initial reduction in the number of claims it asserted, ECF No. 86, at 5-6, it was in the process of trying to negotiate a corresponding limitation on the number of prior art references S&N asserted. The problem was that, in the absence of such an agreement, the Court's prior order essentially envisioned

CertusView, as the party in the best position to narrow the dispute, ECF No. 159, at 8, proceeding to make its initial reduction in the number of claims asserted after receiving relevant discovery, even if it could not reach agreement with S&N on corresponding reductions in prior art references. CertusView failed to make its initial reduction, in spite of the fact that the Court concluded CertusView had received sufficient discovery to be able to do so. However, for the same reason that the Court denied S&N's sanctions request at the time, the Court also finds that CertusView's actions, though reflecting poor litigation judgment and an aggressive litigation strategy, were not egregious.

### E. Totality of Circumstances

S&N asserts that "[c]onsidering the totality of the circumstances, this case was not only litigated in a wholly unreasonable manner from the beginning, but it also stands out from the others with respect to CertusView's exceptionally weak litigation position." ECF No. 574, at 16. CertusView responds that "none of S&N's individual arguments warrant a fee award, and, when considered in the context of the entire litigation – a hard-fought competitor litigation where both sides won and lost discovery battles and claims and counterclaims – there is no showing that the sum of the parts is sufficient to support the 'rare' finding that this case 'stands out' from others." ECF

44

No. 576, at 26. CertusView goes on to argue that "the sort of discovery conduct S&N complains of occurred on both sides," and therefore "[c]onsidering the litigation strategy by **both** parties was similar, the totality of the circumstances does not support a finding that it should be deemed an 'exceptional case.'" Id. Finally, CertusView argues that after "winning its judgment on the pleadings that the asserted claims were patent ineligible, S&N filed inequitable conduct counterclaims in hopes of garnering a fee award," . . . "[y]et, at trial, S&N failed to prove a single element of any of its five inequitable conduct allegations," and therefore such "pursuit of its inequitable conduct claims, and its resort to exaggeration of the record to hide the weakness of its arguments, shows – as an equitable matter – that S&N is not entitled to its requested fee award." Id. at 26-27. S&N replies that, with respect to the argument that both parties had the same aggressive litigation strategy, "the circumstances surrounding S&Ns sanctions were significantly different from the circumstances surrounding CertusView's." ECF No. 577, at 13. S&N further replies that it "is aware of no authority that precludes an attorneys' fees award because a party lost on its inequitable conduct claims," and "[a]lthough attorneys' fees can be awarded on the basis of an inequitable conduct finding, this is certainly not the only basis for a fee award under Octane Fitness, which specifically provides for an

exceptional case finding based on the manner of litigation and/or substantive strength of a party's litigating position." Id. at 14.

The parties' sanctioned conduct involved here was different is scope and degree, in the Court's view; with the misconduct of CertusView exceeding that of S&N. However, it does reflect that both sides aggressively litigated the case. Each parties' behavior has already been the subject of a sanctions award. That is not to say that it cannot be considered here, but such fact does affect this Court's view about the manner in which it should exercise it discretion, and diminishes the overall need for deterrence. With respect to the argument that S&N's loss on the inequitable conduct counterclaims should somehow equitably preclude it from pursuing and prevailing on its exceptional case motion, the Court agrees that such outcome does not preclude S&N from pursuing such a motion, and finds that it is proper to consider all of the conduct associated with such trial in exercising its discretion.

Finally, with the totality of the circumstances in mind, the Court looks back to the nonexclusive list of factors that the Supreme Court said trial courts could consider in deciding whether a case is exceptional, and makes the following observations. Octane Fitness, 134 S. Ct. at 1756 n.6. First, with respect to frivolousness, the Court has made detailed

findings above as to why it concludes that specific actions of CertusView were not frivolous. The Court now concludes that the totality of all of these circumstances do not support a finding of frivolousness on the part of CertusView. Second, with respect to motivation, the Court has made findings above as to why it concludes that specific actions of CertusView were not driven by an improper motive. While it is true that CertusView has aggressively argued for patent eligibility in an evolving area of the law, the Court was not presented with any persuasive evidence that such arguments were improperly motivated. Moreover, there is a "presumption that an assertion of infringement of a duly granted patent is made in good faith," Medtronic Navigation, Inc. v. BrainLAB Medizinische Computersysteme Gmbh, 603 F.3d 943, 954 (Fed. Cir. 2010), and "motivation to implement the statutory patent right by bringing suit based on a reasonable belief in infringement is not an improper motive," as a "patentee's assertion of reasonable claims of infringement is the mechanism whereby patent systems provide an innovation incentive." Hopkins Mfg. Corp. v. Cequent Performance Prods., Case No. 14-CV-2208, 2017 U.S. Dist. LEXIS 107997, at *21 (D. Kan. July 5, 2017). Therefore, the Court now concludes that the totality of the circumstances do not support a finding of improper motive on the part of CertusView. Third, with respect to objective unreasonableness, both in the factual

and legal components of the case, the Court has made findings above as to why it concludes that specific actions of CertusView were not objectively unreasonable. The Court now finds, based upon a totality of the circumstances, that S&N has failed to show objective unreasonableness by CertusView in the factual and legal components of the case. Alternatively, to the extent that objective unreasonableness exists, the Court finds such conduct is not so exceptional as to justify an award of fees. For all of these reasons, the Court concludes, based upon the totality of the circumstances, that S&N has failed to show by a preponderance of the evidence that this is "the rare case in which a party's unreasonable conduct" is "so 'exceptional' as to justify an award of fees." Octane Fitness, 134 S. Ct. at 1757.

## IV.  CONCLUSION

For the reasons stated above, the Court **DENIES** Defendants' Renewed Motion for Exceptional Case Finding and Attorneys' Fees, ECF No. 573. The Clerk is REQUESTED to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
February  9  , 2018